## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation<br><br>This Filing Relates To: 4:08-cv-00254-ERW | Civil Action No.: 4:08-md-01907-ERW |

DIANE BENYA, PAUL BOWEN,
SHERRY BRICE LEIGH, LEVITTE CRUZ,
STEVEN JOEL CLARK, NOELLE
FINCHAM, BRENDA GALLARDO,
TAMMY GARDNER COSELLI,
ELIDA GOLLOMP, CARYN HUDSPETH,
HANS KUECK, LEONIE LLOYD, LISA
MEACHAM, DONITA LYNN ROBINSON,
SCOTT ROSS, JIM SNELL, MONA STILL,
APRIL SUBASHE, CLAIRE THEODORE,
VICKI TYSSELING-MATTIACE,
RACHEL VERNOOY, ODELIA WEISS,
LEONIE LLOYD, individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.                                 Civil Action No. 4:08-cv-00254-ERW

AURORA DAIRY CORPORATION
d/b/a Aurora Organic Dairy, QUALITY
ASSURANCE INTERNATIONAL, INC.,
COSTCO WHOLESALE CORPORATION,
SAFEWAY, INC., TARGET
CORPORATION, WAL-MART
STORES, INC., WILD OATS
MARKET, INC., and WHOLE FOODS
MARKET, INC.,

        Defendants.

## FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................1

II.     PARTIES ......................................................................................................2

        A.     Plaintiffs ........................................................................................2

        B.     Defendants .....................................................................................6

III.    JURISDICTION AND VENUE ....................................................................8

IV.     FACTUAL ALLEGATIONS .........................................................................9

        A.     Background of the Organic Food and Milk Industry ...............................9

        B.     Aurora Dairy .................................................................................13

        C.     QAI, Inc. .......................................................................................22

        D.     Private Label Organics ....................................................................26

               1.     Aurora's "High Meadow" Brand ..............................................27

               2.     Costco's "Kirkland" Brand ....................................................29

               3.     Safeway's "O Organics" Brand ..............................................32

               4.     Target's "Archer Farms" Brand ..............................................35

               5.     Wal-Mart's "Great Value" Brand ............................................37

               6.     Wild Oats' Store Brand .........................................................39

V.      CLASS ALLEGATIONS ............................................................................42

VI.    CAUSES OF ACTION ...........................................................................................50

    A.    Counts Against Aurora ............................................................................50

    COUNT 1: Violation of the Colorado Consumer Protection Act ........................50

    COUNT 2: Violation of State Consumer Protection Laws .................................53

    COUNT 3: Breach of Express Warranty ...........................................................58

    COUNT 4: Breach of Implied Warranty of Merchantability ...............................61

    COUNT 5: Negligence Per Se ..........................................................................64

    COUNT 6: Negligent Misrepresentation ...........................................................65

    COUNT 7: Unjust Enrichment ..........................................................................66

    B.    Counts Against Aurora With Respect to the High Meadow Label .......................67

    COUNT 8: Violation of the Colorado Consumer Protection Act ........................67

    COUNT 9: Violation of State Consumer Protection Laws .................................70

    COUNT 10: Breach Of Express Warranty .........................................................75

    COUNT 11: Breach Of Implied Warranty of Merchantability .............................79

    COUNT 12: Negligence Per Se ........................................................................81

    COUNT 13: Negligent Misrepresentation ..........................................................83

    COUNT 14:  Unjust Enrichment .......................................................................84

    C.    Counts Against Costco ............................................................................85

    COUNT 15: Violation Of The Washington Consumer Protection Act ................85

    COUNT 16: Violation Of State Consumer Protection Laws ...............................87

    COUNT 17: Breach Of Express Warranty .........................................................92

    COUNT 18: Breach Of Implied Warranty of Merchantability .............................94

    COUNT 19: Negligence Per Se ........................................................................95

    COUNT 20 Negligent Misrepresentation ...........................................................97

    COUNT 21 Unjust Enrichment .........................................................................98

D.      Counts Against Safeway ................................................................99

     COUNT 22: Violation of the California Unfair Competition Law,......................99

     COUNT 23:  Violation of the California Consumer Legal Remedies Act ..........102

     COUNT 24:  Violation of State Consumer Protection Laws..............................105

     COUNT 25:  Breach of Express Warranty .......................................................110

     COUNT 26:  Breach of Implied Warranty of Merchantability...........................112

     COUNT 27:  Negligence Per Se .....................................................................113

     COUNT 28:  Negligent Misrepresentation .......................................................114

     COUNT 29:  Unjust Enrichment .....................................................................116

E.      Counts Against Target ....................................................................117

     COUNT 30:  Violation of the Minn. Uniform Deceptive Trade Practices Act ...117

     COUNT 31:  Violation of State Consumer Protection Laws..............................119

     COUNT 32:  Breach of Express Warranty .......................................................124

     COUNT 33:  Breach of Implied Warranty of Merchantability...........................126

     COUNT 34:  Negligence Per Se .....................................................................127

     COUNT 35:  Negligent Misrepresentation .......................................................128

     COUNT 36:  Unjust Enrichment .....................................................................130

F.      Counts Against Wal-Mart................................................................131

     COUNT 37:  Violation of the Arkansas Consumer Protection Act,...................131

     COUNT 38:  Violation of State Consumer Protection Laws..............................133

     COUNT 39:  Breach of Express Warranty .......................................................138

     COUNT 40:  Breach of Implied Warranty of Merchantability...........................140

     COUNT 41: Negligence Per Se .....................................................................141

     COUNT 42:  Negligent Misrepresentation .......................................................142

     COUNT 43:  Unjust Enrichment .....................................................................144

G.    Counts Against Whole Foods as successor in liability to Wild Oats and/or Wild Oats ..................................................................................................................145

COUNT 44 Violation of the Colorado Consumer Protection Act......................145

COUNT 45:  Violation of State Consumer Protection Laws..............................148

COUNT 46:  Breach of Express Warranty .......................................................153

COUNT 47:  Breach of Implied Warranty of Merchantability...........................155

COUNT 48:  Negligence Per Se .....................................................................156

COUNT 49:  Negligent Misrepresentation.......................................................157

COUNT 50:  Unjust Enrichment ....................................................................158

H.    Counts Against QAI...........................................................................159

COUNT 51:  Violation of the California Unfair Competition Law,...................159

COUNT 52:  Violation of the California Consumer Legal Remedies Act ..........162

COUNT 53:  Violation of State Consumer Protection Laws..............................165

COUNT 54:  Negligence Per Se .....................................................................170

COUNT 55:  Negligent Misrepresentation.......................................................172

VII.    PRAYER FOR RELIEF ................................................................................174

Plaintiffs bring this action on their own behalf and on behalf of each of the Classes they seek to represent, based upon their own personal knowledge as to themselves and their own acts and upon information and belief and the investigation of their counsel as to all other matters, and allege as follows:

## I.   <u>INTRODUCTION</u>

1.      Defendant Aurora Dairy Corporation d/b/a Aurora Organic Dairy ("Aurora") did and does produce, market, and sell milk and milk products purporting to be organic to Plaintiffs and the other members of the Classes directly under its own "High Meadow" brand through retailer Publix Super Markets, Inc., ("Publix") and through, among others, Defendant Retailers Costco Wholesale Corp. ("Costco"), Safeway, Inc. ("Safeway"), Target Corp. ("Target"), Wal-Mart Stores, Inc. ("Wal-Mart"), and Wild Oats Markets, Inc. ("Wild Oats")[1] under their respective store-brand labels.  Plaintiffs and other members of the Classes pay more for organic milk than conventional milk.

2.      In fact, the milk and milk products produced by Aurora were not "organic," as that term is defined in the Organic Foods Production Act of 1990 ("OFPA" or the "Act"), 7 U.S.C. § 6501, *et seq*., and pertinent regulations enacted by the United States Department of Agriculture ("USDA").  From 2003 to at least August 23, 2007, Aurora produced its purportedly organic milk using processes which failed to comply with those requirements, including but not limited to failure to establish pasture appropriate for minimizing the occurrence and spread of diseases and parasites, failure to establish access to pasture, and failure to maintain records documenting compliance with the USDA requirements for use of an "organic" label.

---

[1] Costco, Safeway, Target, Wal-Mart, and Wild Oats may collectively be referred to herein as the Retailer Defendants.

1

3.     Indeed, Aurora's milk production was found by the USDA itself to involve over 14 willful violations of USDA regulations, including but not limited to failure to establish pasture appropriate for minimizing the occurrence and spread of diseases and parasites, failure to establish access to pasture and failure to maintain records documenting compliance with the USDA requirements for use of an "organic" label.

4.     By representing and selling milk and/or milk products as "organic" which were not, and otherwise misrepresenting and/or failing to disclose the conditions under which these products were produced, Defendants breached express and implied warranties, engaged in one or more unfair or deceptive acts or practices in violation of consumer protection laws, acted and failed to act in violation of standards established by the OFPA, and unfairly obtained a premium price for these products for their own benefit and to the detriment of Plaintiffs and the other members of the Classes.

5.     Plaintiffs seek damages arising from Defendants' acts and omissions regarding the production, marketing and sale of "organic" milk and milk products.

## II.     PARTIES

### A.     Plaintiffs

6.     Diane Benya is a resident of the State of Oregon.  During the relevant time period, Ms. Benya purchased one or more organic milk or milk products produced by Aurora and retailed by Defendants Safeway and Wild Oats in the State of Oregon.  Those products include Wild Oats' store brand and Safeway's "O Organics" brands.

7.     Paul Bowen is a resident of the State of Washington.  During the relevant time period, Mr. Bowen purchased one or more organic milk or milk products produced by Aurora and retailed by Defendants Costco, Safeway and Wal-Mart in the State of Washington.  Those

products include Costco's "Kirkland," Safeway's "O Organics" and Wal-Mart's "Great Value" brands.

8.     Sherry Brice Leigh is a resident of the State of Florida.  During the relevant time period, Ms. Brice Leigh purchased one or more organic milk or milk products produced by Aurora and retailed by, among others, Defendant Wal-Mart in the State of Florida.  Those products include Wal-Mart's "Great Value" brands.

9.     Steven Joel Clark is a resident of the State of Arkansas.  During the relevant time period, Mr. Clark purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Wal-Mart in the State of Arkansas.  Those products include Wal-Mart's "Great Value" brands.

10.     Plaintiff Levitte Cruz is a resident of the State of New Jersey.  During the relevant time period, Ms. Cruz purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Target in the State of New Jersey.  Those products include Target's "Archer Farms" brand.

11.     Noelle Fincham is currently a resident of the State of Kansas, but was a citizen and resident of Colorado during the relevant time period.  During the relevant time period, Ms. Fincham purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Safeway in the State of Colorado.  Those products include Safeway's "O Organics" brands.

12.     Brenda Gallardo is a resident of the State of California.  During the relevant time period, Ms. Gallardo purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Safeway in the State of California.  Those products include Safeway's "O Organics" brand.

3

13.     Tammy Gardner Coselli is a resident of the State of Texas.  During the relevant time period, Ms. Coselli purchased one or more organic milk or milk products produced by Aurora and retailed by Safeway in the State of Texas.  Those products include Safeway's "O Organics" brand.

14.     Elida Gollomp is a resident of the State of Connecticut.  During the relevant time period, Ms. Gollomp purchased one or more organic milk or milk products produced by Aurora and retailed by, *inter alia*, Defendant Costco in the State of Connecticut.  Those products include Costco's "Kirkland" and Aurora's "High Meadow" brands.

15.     Caryn Hudspeth is a resident of the State of Indiana.  During the relevant time period, Ms. Hudspeth purchased one or more organic milk or milk products produced by Aurora and retailed by Defendants Costco and Target in the State of Indiana.  Those products include Costco's "Kirkland" and Target's "Archer Farms" brands.

16.     Hans Kueck is a resident of the State of Washington.  During the relevant time period, Mr. Kueck purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Safeway in the State of Washington.  Those products include Safeway's "O Organics" brand.

17.     Leonie Lloyd is a resident of the State of Missouri.  During the relevant time period, Ms. Lloyd purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Costco in the State of Missouri.  Those products include Costco's "Kirkland" brand.

18.     Lisa Meacham is a resident of the State of Texas.  During the relevant time period, Ms. Meacham purchased one or more organic milk or milk products produced by Aurora

and retailed by Defendant Wal-Mart in the State of Texas.  Those products include Wal-Mart's "Great Value" brand.

19.     Donita Lynn Robinson is a resident of the State of North Carolina.  During the relevant time period, Ms. Robinson purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Target in the State of North Carolina.  Those products include Target's "Archer Farms" brand.

20.     Scott Ross is a resident of the State of Florida.  During the relevant time period, Mr. Ross purchased one or more organic milk or milk products produced by Aurora and retailed by Publix and Defendant Wild Oats in the State of Florida.  Those products include Aurora's "High Meadow" and Wild Oats' store brand.

21.     Jim Snell is a resident of the State of Tennessee.  During the relevant time period, Mr. Snell purchased one or more organic milk or milk products produced by Aurora and retailed by, among others, Defendant Wild Oats in the State of Tennessee.  Those products include Wild Oats' store brand.

22.     Mona Still is a resident of the State of Alabama.  During the relevant time period, Ms. Still purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Target in the State of Alabama.  Those products include Target's "Archer Farms" brand.

23.     April Subashe is a resident of the State of Utah.  During the relevant time period, Ms. Subashe purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Costco in the States of Arizona, Illinois, Indiana, Utah, Nevada and Massachusetts.  Those products include Costco's "Kirkland" brand.  During the relevant time period, Ms. Subashe also purchased one or more organic milk or milk products produced by

Aurora and retailed by Defendant Wild Oats in the States of Nevada and Utah.  Those products include Wild Oats' store brand.

24.     Claire Theodore is a resident of the State of California.  During the relevant time period, Ms. Theodore purchased one or more organic milk or milk products produced by Aurora and retailed by Defendants Wild Oats and Safeway in the State of California.  Those products include Safeway's "O Organics" and Wild Oats' store brands.

25.     Vicki Tysseling-Mattiace is a resident of the State of Illinois.  During the relevant time period, Ms. Tysseling-Mattiace purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Wild Oats, through Peapod Delivery Services, in the State of Illinois.  Those products include Wild Oats store brand.

26.     Rachel VerNooy is a resident of the State of Delaware.  During the relevant time period, Ms. VerNooy purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Wal-Mart in the State of Pennsylvania.  Those products include Wal-Mart's "Great Value" brand.

27.     Plaintiff Odelia Weiss is a resident of the State of New York.  During the relevant time period, Ms. Weiss purchased one or more organic milk or milk products produced by Aurora and retailed by Defendant Target in the States of Pennsylvania and New York.  Those products include Target's "Archer Farms" brand.

**B.     Defendants**

28.     Aurora Dairy Corporation d/b/a Aurora Organic Dairy ("Aurora") is a Delaware corporation headquartered in Boulder, Colorado. Aurora markets and sells its milk and milk products nationwide throughout the United States.  Aurora sells its milk directly under the brand name "High Meadow" and through retailers under the store-brand names stated below.

6

29.     Quality Assurance International, Inc. ("QAI") is a California corporation headquartered in San Diego, California.  QAI is the largest certifier of "organic" products in the United States and, as of March 23, 2006, approximately 66% of certified organic products on U.S. store shelves displayed QAI certification.  During the class period, QAI was (and remains) responsible for the certification of Aurora's Texas-based farms as well as Aurora's milk processing plant in Colorado.

30.     Costco is a Washington corporation with its principal place of business in Issaquah, Washington.  At the close of 2007, Costco operated 389 stores nationwide.  Costco did and does sell "organic" milk and/or milk products produced by Aurora under Costco's brand name "Kirkland."

31.     Safeway is a Delaware corporation with its principal place of business in Pleasanton, California.  Safeway is one of the largest food and drug retailers in North America. Safeway has various wholly-owned subsidiaries including Randall's Food Markets, Tom Thumb, Car-Gottstein Foods Co., Dominick's Supermarkets, Inc., Vons, and Genuardi's Family Markets, Inc. (which are divisions of, and/or whose policies, finances, business practices and other affairs are controlled by, Safeway) and through which Safeway operates in Texas, Alaska, Illinois, Southern California, Pennsylvania, New Jersey, and Delaware.[2]  As of September 8, 2007, Safeway operated 1,738 stores in the Western, Southwestern, Rocky Mountain, and Mid-Atlantic regions of the United States and in western Canada. Safeway did and does sell "organic" milk and/or milk products produced by Aurora under Safeway's brand name "O Organics."

32.     Target is a Minnesota corporation, having its principal place of business within the State of Minnesota. Target operates 1,613 stores in 47 states.  Target did and does sell

_____

[2] Throughout this Complaint, Safeway and its subsidiaries are referred to collectively as "Safeway."

"organic" milk and/or milk products produced by Aurora under Target's brand name "Archer Farms."

33.     Wal-Mart is a Delaware corporation with its principal place of business in Bentonville, Arkansas.  Wal-Mart is the largest retailer in the world, specializing in mass merchandising stores. Wal-Mart operates approximately 1,350 stores nationwide, as well as 1,700 Supercenters in the Western, Southwestern, Rocky Mountain, and Mid-Atlantic regions of the United States and in western Canada. Wal-Mart did and does sell "organic" milk and/or milk products produced by Aurora under Wal-Mart's brand name "Great Value."

34.     Wild Oats was a Delaware corporation with its principal place of business in Boulder, Colorado. Wild Oats, at its own stores or through a delivery service known as Peapod, sold "organic" milk and/or milk products produced by Aurora under Wild Oats' store name.

35.     Whole Foods is a Texas corporation with its principal place of business in Austin, Texas.  Whole Foods acquired Wild Oats in or about August 2007 and, on information and belief, assumed all liabilities of Wild Oats.

## III.     <u>JURISDICTION AND VENUE</u>

36.     This Court has diversity jurisdiction over this Class Action lawsuit pursuant to 28 U.S.C § 1332 as amended by the Class Action Fairness Act of 2005, because, upon information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this lawsuit is a class action in which some members of the Classes are citizens of states different than Defendants.  *See* 28 U.S.C. § 1332(d)(2)(A).

37.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein described occurred within this judicial district.  Venue is also proper in this judicial district pursuant to the Order of

the Judicial Panel on Multidistrict Litigation which transferred and centralized all related actions in this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

IV.   **FACTUAL ALLEGATIONS**

      A.   **Background of the Organic Food and Milk Industry**

      38.     Organic food products differ from conventional products in the way they are grown, produced, and handled.  Organic food is typically produced without pesticides, hormones, or other synthetic products, using techniques that promote traditional farming practices, foster more humane treatment of animals, and protect the environment.  Organic food products, which are becoming increasingly popular with consumers, typically sell at significant premiums over their conventional counterparts.

      39.     As with other organic products, purchasers are willing to pay – and do pay – premium prices for organic milk and/or milk products.  As of May 2005, the national average price for a half gallon of organic milk was $4.01, as compared to $2.02 for conventional milk. Based on this average, organic milk commands a price premium of ***98 percent*** in the national retail market:

**Price Premium of Organic Milk**



Carolyn Dmitri & Kathryn M. Venezia, *Retail and Consumer Aspects of the Organic Milk Market* (USDA Econ. Research Serv., LDP-M-155-01, May 2005), *available at* http://www.ers.usda.gov/publications/LDP/2007/05May/LDPM15501/ldpm15501.pdf

40.     Organic milk and milk products comprise a substantial part of the organic foods industry.  The market for organic milk or milk products has undergone explosive growth in the past two decades.  According to statistics maintained by the United States Department of Agriculture ("USDA"), retail milk and cream sales totaled approximately $17 billion in 2005, with organic milk and cream sales comprising approximately $1 billion, or six percent (6%) of that total – an increase of 25% from the previous year.

41.     In 1990, Congress passed the OFPA to, among other things, establish minimum national standards in order to refer to a product as "organic."

42.     Pursuant to the OFPA, the USDA issued regulations in March 2001 setting forth specific requirements that foods, including dairy products, must meet in order to be certified as

10

"organic" or "USDA organic." These regulations are contained at 7 CFR Part 205, and are implemented through the National Organic Program ("NOP").

43.     Under the OFPA, states may adopt their own organic programs, containing requirements that may be more, but not less, stringent than federal requirements. *See* 7 C.F.R. § 205.620.

44.     The OFPA provides, in part, that "a person may sell or label an agricultural product as organically produced only if such product is produced and handled in accordance with [the OFPA]." 7 U.S.C. § 6505(a)(1)(A).

45.     Similarly, the regulations adopted under OFPA provide that, in order to be sold as "organic," the producer's operation must be certified by an accredited certification agent and also must meet all other applicable requirements of 7 C.F.R. § 205. *See* 7 C.F.R. §§ 205.100(a), 205.102(a).

46.     If, but only if, a product meets these requirements, it may be represented as "organic" and actually marked, labeled and sold with the official "USDA Organic" seal:



47.     Among other requirements for milk and milk products to qualify as "organic," dairy cows must be pastured in a manner complying with OFPA requirements. "Pasture" is defined as "[l]and used for livestock grazing that is managed to provide feed value and maintain and improve soil, water and vegetative sources." 7 C.F.R. § 205.2.

48.     The "producer of an organic livestock operation must establish and maintain livestock living conditions which accommodate the health and natural behavior of animals

11

including . . . [a]ccess to the outdoors . . . [and] [a]ccess to pasture for ruminants." 7 C.F.R. § 205.239.  Dairy cows are ruminants.

49.     Organic livestock producers also "must establish and maintain preventative livestock health care practices, including . . . [e]stablishment of appropriate housing, pasture conditions, and sanitation practices to minimize the occurrence and spread of diseases and parasites; [and] [p]rovision of conditions which allow for exercise, freedom of movement, and reduction of stress appropriate to the species."  7 C.F.R. § 205.238.

50.     Such producers also "must provide livestock with a total feed ration composed of agricultural products, including pasture and forage."  7 C.F.R. § 205.237.

51.     Part of humane animal husbandry practices includes maintaining livestock living conditions and health care practices in a way that accommodates the health and natural behavior of the animals, including access to pasture on which the animals can graze freely and consume a substantial portion of their food.

52.     Pasturing cows is intended to ensure an organic production system that provides living conditions that allow the animals to satisfy their natural behavior patterns and provides preventative health care benefits.

53.     Pasturing contributes to preventive health care management by enabling ruminants to develop and reproduce under conditions that reduce stress, strengthen immunity, and deter illness.  Pasturing affords ruminants the freedom of choice to satisfy natural behavior patterns.  Pasturing assures a relationship between the animal and land that satisfies organic principles.

54.     Pasture management fulfills an integral role in nutrition, health care, and living condition requirements of organic ruminant production.

55.     Free grazing also produces a higher quality and more nutritious milk than cows that are confined to feed lots, even if the cows in the lots are fed organic grains.  Milk from pastured cows can contain up to five times more conjugated lineolic acid, an anti-oxidant shown to reduce cancer risks, as well as higher levels of beta-carotene, vitamin A, vitamin E, and omega-3 fatty acid than does milk from grain-fed cows.

56.     Defendants market the health benefits of drinking milk from pastured cows, which has been one of the major contributing factors to the increasing demand for organic milk.

57.     The organic label is intended to and does confirm to customers that the milk and milk products they purchase do in fact meet the requirements of the OFPA and accompanying regulations.

58.     In addition to the organic label, Defendants otherwise represent that the "organic" milk and milk products comply with applicable organic standards and principles, including proper pasturing of cows, through advertisements and marketing that, among other things, depicts cows grazing in tall grasses in bright green fields.

**B.     Aurora Dairy**

59.     Aurora was founded in 2003 by Marc Peperzak and Mark Retzloff, both veterans of the organic food industry.

60.     In 1983, Mr. Retzloff co-founded the Alfalfa's Markets chain of natural food grocery stores (now owned by Wild Oats).  In addition, Messrs. Peperzak and Retzloff were both instrumental in the creation and founding of Horizon Organic Dairy in 1991.  Horizon is now the largest organic dairy in the United States.  Messrs. Peperzak and Retzloff also participated in Congress's enactment of the OFPA and in the drafting of the NOP's organic dairy standards.

61.     Aurora's first and largest dairy farm is located in Platteville, Colorado, about 40 miles north of Denver.  At its peak, the Platteville farm had approximately 4,500 cows and a

13

capacity to produce twenty million gallons of milk per year.  Aurora also operates dairy farms in other locations in Colorado, as well as in Texas.

62.     Aurora processes all of its milk in a plant located next to its Platteville farm.  Milk from Aurora's other dairy farms is transported to its Platteville plant in refrigerated trucks.  Most of this milk is then pasteurized or ultra-pasteurized, processed into whole, 2%, 1%, and skim varieties, and packaged in half-gallon cartons.  Aurora also processes some of the milk into other milk products, including butter, cream, and non-fat dry milk.

63.     In some instances, on information and belief, Aurora packages the milk and milk products in cartons or other containers according to a retailer's instruction, and bearing the retailer's brand name, from its facility in Colorado.

64.     Aurora describes itself as a "steward" of the organic way of producing milk and milk products.

65.     Aurora represents that its "mission is to bring organic milk or milk products to mainstream America with highest quality and freshness, affordable pricing and increased availability for consumers."[3]

66.     Aurora represents that its cows are healthy, content and relaxed, all the while referring to pasturing:

> To us, a healthy cow is the following:
>
> - A contented cow that lives outdoors all year-round, with 24-hour access to water, and that is fed a nutritionally-balanced diet of organic pasture, organic mixed forages (such as alfalfa hay, grass hay and silages), organic grain (such as soymeal, ground corn,

---

[3] *See* Mission Statement at
http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=71&iCategoryID=1 (last visited July 17, 2008)

wheat, sunflower and flax seeds) and an organic vitamin and mineral supplement. Learn more about our <u>Organic Feed</u>.

- A cow free of infections, diseases and parasites that is never given antibiotics. If ever sick, the cow is treated in our "<u>Early Sick Cow</u>" program -– rest, fluids, homeopathic and probiotic treatments, with a focus on preventative healthcare and early recognition.

- Living as naturally as possible, a healthy cow gets pregnant on time, doesn't have problems during its birth and doesn't have reproductive constraints.

***

Relaxed cows:

- Have good <u>nutrition</u> so that there is no stress from food and so that their milk production does not unduly tax their body systems.

- Have access to pasture so that grazed forage is a part of the diet.[4]

67.    Aurora represents to consumers and the public that pasturing is the main source of food for cows, with other sources as "supplements," stating that "[b]y optimizing sustainable resources in our arid climates, we are able to provide our cows both pasture to feed upon as well as organic feed to supplement their nutrition."[5]

68.    Aurora depicts its cows foraging in open, grassy fields:

_____

[4] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=100&iCategoryID=8 (last visited July 17, 2008).

[5] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=98&iCategoryID=8 (last visited July 17, 2008)





*See generally* http://www.auroraorganic.com.

69.     Aurora represents that "[a]ll of Aurora's products are certified organic and are eligible to carry the 'USDA Organic' seal.  Our organic dairy farm and processing plant both follow the protocols of the National Organic Program, as do all of the company's suppliers of organic feed, materials, etc."[6]

70.     Aurora also claims that its "farms are models of organic principles applied on a large scale,"[7] and that "[t]he dairy maintains 100% traceability of all animals, crops and such, with a complete audit and certification of 100% of the system."[8]

---

[6] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=82&iCategoryID=2 (last visited July 17, 2008).

[7] http://www.auroraorganic.com/aodweb/site/itemcontent.aspx?icategoryid=3 (last visited July 17, 2008).

[8] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=122&iCategoryID=6 (last visited July 17, 2008).

16

71.     Although represented as "organic," the milk and milk products Aurora produced, marketed, and sold – including milk or milk products purchased by Plaintiffs and the other members of the Classes – were not organic, since Aurora failed to comply with, among other things, the requirements of the OFPA in at least the following ways:

a.      Aurora sold, labeled and/or represented its milk or milk products as being "organic" when, in fact, they were not produced and handled in accordance with applicable regulations, in willful violation of 7 C.F.R. § 205.102, 205.200 and 205.400(a);

b.      Aurora, intending to sell, label, or represent milk or milk products as "organic," failed to comply with the applicable provisions of C.F.R. Title 7, Part 205, Subpart C, in willful violation of 7 C.F.R. § 205.200;

c.      Aurora failed to comply with the Organic Foods Production Act of 1990 and applicable organic production and handling regulations of C.F.R. Title 7, Part 205, in willful violation of 7 C.F.R. § 205.400(a);

d.      Aurora failed to establish appropriate housing, pasture conditions, and sanitation practices for its dairy cows to minimize the occurrence and spread of diseases and parasites, in willful violation of 7 C.F.R. § 205.238(a)(3);

e.      Aurora failed to establish and maintain living conditions for its dairy cows which accommodate their health and natural behavior, in willful violation of 7 C.F.R. § 205.239(a);

f.      Aurora failed to provide its dairy cows with suitable access to the outdoors, shade, shelter, exercise areas, fresh air, and direct sunlight, in willful violation of 7 C.F.R. § 205.239(a)(1);

17

g.      Aurora failed to provide its dairy cows with proper access to pasture, in willful violation of 7 C.F.R. § 205.239(a)(2);

h.      Aurora failed to provide its dairy cows (which typically consume their own bedding) with appropriate clean, dry bedding which complies with the feed requirements of § 205.237, in willful violation of 7 C.F.R. § 205.239(a)(3);

i.      Aurora failed to provide shelter designed to allow for its dairy cows' natural maintenance, comfort behaviors, and opportunity to exercise, as required by 7 C.F.R. § 205.406(a)(4)(i);

j.      Aurora failed to provide its dairy cows with a total feed ration composed of agricultural products, including pasture and forage, that are organically produced and, where applicable, organically handled, in willful violation of 7 C.F.R. § 205.237(a);

k.      Aurora failed to maintain an accurate organic production or handling system plan that includes a description of practices and procedures to be performed and maintained, including the frequency with which they will be performed, in willful violation of 7 C.F.R. § 205.201(a)(1);

l.      Aurora failed to maintain an accurate organic production or handling system plan that included a description of the monitoring practices and procedures to be performed and maintained, including the frequency with which they will be performed, to verify that the plan is effectively implemented, in willful violation of 7 C.F.R. § 205.201(a)(3);

m.      Aurora, after an entire, distinct herd had been converted to organic production, failed to maintain all cows under continuous organic management from the last third of gestation, in willful violation of 7 C.F.R. § 205.236(a)(2)(iii);

n.      Aurora entered conventional dairy cows into organic milk or milk products before those cows completed a one-year period of continuous organic management, in willful violation of 7 C.F.R. § 205.236(a)(2).

o.      Aurora removed its dairy cows from an organic operation to a non-organic operation for management, and subsequently returned such cows to its Platteville facility for production of milk or milk products to be sold, labeled, or represented as organically produced, in willful violation of 7 C.F.R. § 205.236(b)(1) and/or § 205.236(a)(2)(iii);

p.      Aurora failed to maintain adequate records that disclosed all activities and transactions in sufficient detail to be readily understood and audited and to demonstrate compliance with the OFPA, in willful violation of 7 C.F.R. § 205.103(b);

q.      Aurora failed to immediately notify its certifying agent concerning changes to its operation regarding the termination and utilization of off-site facilities contracted by Aurora to provide pasture and/or livestock management services, in willful violation of 7 C.F.R. § 205.400(f)(2);

r.      Aurora failed to immediately notify its certifying agent concerning the application of a prohibited substance to its dairy cows, in willful violation of 7 C.F.R. § 205.400(f)(2); and

s.      Aurora failed to submit to its certifying agent an updated organic production or handling system plan that included a summary statement, supported by documentation, detailing deviations from, changes to, modifications to, or other amendments made to the previous year's organic system plan during the previous year in willful violation of 7 C.F.R. § 205.406(a)(1)(i).

72.     On or about March 7, 2007, the USDA itself found that Aurora had failed to comply with federal law regarding production of milk products labeled as organic in numerous respects.  Indeed, the USDA found the frequency and willfulness of the violations so significant that on or about April 16, 2007, it issued a "Notice of Proposed Revocation" to Aurora, stating: "Due to the nature and extent of these violations, the NOP proposes to revoke Aurora Organic Dairy's production and handling certifications under the NOP."  That revocation would have barred Aurora from selling products labeled as organic for five years into the future.

73.     Aurora's marketing extends to the point of purchase.  In an article published by Progressive Grocer in January, 2008, Sonja Tuitele, a spokesperson for Aurora,  was quoted as saying:

> 'The best way to merchandise and market any milk in the dairy case is to explain the benefits of that product to your consumers through point-of-purchase materials and side-panel information right on the milk carton.' . . .  'Consumers have a thirst for information about the products they purchase, where they come from, and who produced that product.  For organic milk specifically, consumers want to know that it came from cows that weren't given antibiotics or synthetic growth hormones, that pesticides weren't used in the feed, and that the animals are treated humanely.'
>
> In the case of private label, 'it's no different. The benefit of private label organic milk for consumers is a store brand will have superior quality and taste, but come at a more affordable price because that product doesn't rely on marketing to build its brand. This encourages trial and helps to expand the overall market for organic milk . . . We work with our retail customers to participate in their store-level demo programs, and when consumers taste the quality of their store-brand organic milk**,** it's one of the best ways to convert conventional milk drinkers to organic.'

Bridget Goldschmidt, *Milk: Cow Cash,* Progressive Grocer, Jan. 2008.

74.     From 2003 to the present, all of Aurora's milk and milk products have been represented to be, and labeled, "organic."

75.     By marketing, selling, or otherwise representing that its milk and milk products are "organic," Aurora represents that its production processes comply with the applicable statutory and regulatory standards.

76.     In fact, however, Aurora's production practices, from at least 2003 to August 23, 2007, did not comply with the standards it is required to follow in order to market and sell its milk and milk products as "organic."

77.     Indeed, from the outset, Aurora has applied business practices of conventional, large-scale, dairies contrary to its representations and in disregard of federal pasturing and other organic regulations.

78.     Thus, the milk or milk products Aurora has marketed and sold as "organic" were produced in large scale factory farms and otherwise failed to comport with the organic standards, laws, and regulations.

79.     In fact, Aurora's practice was to deny its cows access to pasture while they were lactating and to keep them in feedlots.

80.     When asked directly about the pasturing of Aurora's cows in an interview for the *Denver Post*, Mr. Retzloff admitted:

> We have a lot of open space, a lot of rangeland, but we don't have a lot of water that produces pasture.  Here in Colorado, we like to use our water to grow higher-value grains and proteins.  We keep our cows in outside, sheltered pens, and they eat high-quality organic feed.

Steve Raabe, *Organic Farm Under Fire Over Pasture Rules*,,Denver Post, Jan. 16, 2005.

81.     At all relevant times, Aurora milked its dairy cows three times per day, in order to maximize milk production per cow, even though most organic milk dairy farms only milk their cows up to twice per day.  As a result, Aurora's milk output per cow was substantially greater than the milk output per cow of other organic dairies.

82.     At a peak of over four thousand cows Aurora kept on its Platteville farm, it was a practical impossibility to both provide the cows with access to pasture in any meaningful sense, as required by national organic standards, and to milk them three times each day.

83.     Aurora has marketed and sold its "organic" milk or milk products in a manner designed to mislead purchasers – including Plaintiffs and the other members of the Classes – in that Aurora has represented its milk and milk products as "organic" when, in fact, they were not.

84.     Aurora has marketed and sold its "organic" milk and milk products in a manner designed to mislead purchasers – including Plaintiffs and the other members of the Classes – by otherwise representing that they conform to certain standards when they do not.

85.     Aurora is able to sell its organic milk at prices substantially higher than conventional milk and milk products for its own substantial benefit and to the detriment of purchasers, including Plaintiffs and the other members of the proposed Classes.

86.     The premium Aurora gained from the sale of its "organic" milk and milk products is significant, totaling millions of dollars per year.

87.     Having received non-organic milk because of Aurora's misconduct, instead of the organic milk for which they paid a price premium, Plaintiff and the members of the Classes were damaged and did not receive the benefit of their bargain.

88.     Among other things, Aurora's conduct constitutes one or more deceptive and unfair trade acts or practices, and has caused injury to the many thousands of purchasers of "organic" milk or milk products produced by Aurora, including Plaintiffs and the other members of the proposed Classes.

**C.     QAI, Inc.**

89.     QAI, which was founded in 1989, is the largest certifier of organic dairies in the United States.

90.     In order for milk to be designated "organic" and marketed with the official "USDA Organic" seal, that milk must be certified as "organic," along with meeting all applicable requirements of the NOP.  However, the USDA does not determine whether milk can be properly considered as "organic."  Instead, that process is performed by third parties known as "certifiers."  Thus, a milk producer or processor must seek out a certifier accredited by the USDA to certify their product as "organic."

91.     QAI is one such certifier under the NOP.  For a fee paid by its clients, including Aurora, QAI approves and certifies products and operations as "organic."

92.     QAI recognizes the significance of certification.  As stated by QAI:

Independent, third party certification of organic food systems has been the foundation of domestic and international organic food trade.  The evolution of this verification effort, which documents the authenticity of organic farming and various subsequent levels of handling, is mandatory under the USDA's Agricultural Marketing Service (AMS) and full implementation of the National Organic Program (NOP) Final Rule.  This rule requires certification of all products labeled as organic in the United States.

http://www.qai-inc.com/2_1_0_0.php (last visited July 17, 2008).

93.     QAI offers a number of reasons why certification is important:

**Why is "certification" important?**

- Provides for product differentiation

- Ensures product's value

- Protects consumers from fraud

- Boosts consumer confidence

- The National Organic Program REQUIRES certification of agricultural products making an organic label claim

- Assures Organic Integrity from seed to shelf

http://www.qai-inc.com/7_0_0_0.php (emphasis in original) (last visited July 17, 2008).

94.     QAI states that its role under the NOP "is to verify that organic integrity is maintained."[9]

95.     QAI utilizes a five-step program (the "QAI Certification Program") which purportedly is "designed to certify every step of the organic chain: from the land on which the product is grown; to the producers growing the product; to the post-harvest facilities preparing the product; to the processing and handling facilities transforming the product."[10]

96.     Once all forms are complete and QAI has received its fee, QAI's certification process takes approximately eight to ten weeks, with the option for rush certification services. At the end of the process, QAI states that its client "can now proudly display the QAI mark of excellence, considered the industry's most widely recognized certification mark, on [its] compliant certified organic products."[11]  More importantly, QAI's certification is a necessary step for QAI's clients, including Aurora, to display the "USDA Organic" seal and concomitantly, market and sell the product as "organic."

97.     At all times relevant, QAI certified Aurora's dairy farms in Texas and its milk processing plant in Colorado as "organic."

98.     QAI maintains a public listing on its website of all organizations it certifies as "organic."  With respect to Aurora, QAI lists each Aurora product certified, *e.g.*, "1% Lowfat Milk," representing compliance with the NOP and listing the date on which the product was added.[12]

---

[9] *See* QAI, The Global Leader in Organic Certification - Choose Quality (2008).
[10] *Id.*

[11] *Id.*

[12] *See generally* http://www.qai-inc.com/pdf/14171.pdf (last visited July 17, 2008).

99.     In addition, QAI requires that every carton of Aurora-produced milk identify QAI as the product's organic certifier: "Certified products in retail packaging that meets the 100% Organic, Organic or Made with Organic claim requirements and identifies the products as such <u>must</u> display the phrase "Certified Organic by QAI, Inc." on the information panel adjacent to the information about the handler or distributor of the product."  QAI, Program Policies for Organic System Plan Certification, *available at* http://www.qai-inc.com/pdfs/QAI_Policies.pdf (emphasis in original).

100.     The phrase, "Certified Organic by QAI, Inc.," or a similar variant, is displayed on all Aurora-produced milk cartons, regardless of individual brand.

101.     In addition, QAI permits and promotes use of the QAI "mark of excellence," which is displayed on products as a large "Q":



102.     QAI states that "[c]ertified organic producers and processors recognize the value of placing QAI's seal on their products, which assures them, and ultimately their consumers, that the organic integrity has been maintained."[13]

103.     Aurora promotes the fact that its "milk plant and Texas farms are certified organic by Quality Assurance International (QAI)," displaying QAI's "mark of excellence" in multiple locations on its website.[14]

---

[13] *See* http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=99&iCategoryID=8 (last visited July 17, 2008); http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=82&iCategoryID=2 (last visited July 17, 2008); http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=123&iCategoryID=6 (last visited July 18, 2008).

104.    The display of QAI's symbol and certifying role advertises and is to the benefit of QAI itself in promoting and increasing use of its services.

105.    As one of Aurora's certifiers, QAI was and is responsible for determining that certain of Aurora's operations were conducted in accordance with NOP requirements.

106.    However, as alleged above, Aurora was not operating in accordance with such requirements.

107.    QAI either knew or should have known of these violations of organic principles and federal regulations.  Despite this knowledge, QAI continued to certify that the milk and milk products produced, marketed and sold by Aurora were "organic" and produced in compliance with NOP requirements, violating 7 C.F.R. § 205.501(a)(3).  Nor, at any time, did QAI revoke or suspend Aurora's certification.

108.    In doing so, QAI failed to "[r]efrain from making false or misleading claims about …the nature and qualities of products labeled as organically produced."  7 C.F.R. § 205.501(a)(14).

109.    In addition, even though the milk produced, marketed and sold by Aurora and its retailers was not "organic," QAI represented, Aurora's milk and milk products as "organic."

**D.    Private Label Organics**

110.    Aurora sells some of its processed "organic" milk and milk products to consumers under its own "High Meadow" brand, including through Publix.  .  Aurora also sells milk and milk products to retailers, who then sell these products under their own private-label brands to consumers.  Such retailers include but may not be limited to Costco, Safeway, Target, Wal-Mart,

---

[14] *See id.*

and Wild Oats.  Aurora is the country's largest private-label producer of "organic" milk and milk products.

111.    All of the milk and milk products produced by Aurora and sold by the Defendant Retailers were and are labeled as, and represented to be, "organic" to consumers.

### 1.    Aurora's "High Meadow" Brand

112.    Aurora did and does sell "organic" milk and/or milk products produced by Aurora under the brand name "High Meadow."   The High Meadow label "organic" milk and/or milk products was and is contained in cartons that specifically represented that the milk was organic when it was not organic.

113.    During the relevant time period, High Meadow milk and/or milk products were retailed by Publix.

114.    The High Meadow label in bold letters states that the milk is "USDA organic" and depicts a bucolic scene that does not just give the grazing cows "access" to pasture but represents cows in the pasture, together with shade trees, flowers, rolling hills and mountains:



115.    Numerous other representations appear on the carton regarding the environment in which the milk is produced as follows:

> ***Thank you*** for choosing High Meadow organic milk.  Certified organic milk is one of nature's miraculous beverages.  It provides healthy nutrition with protein, vitamins and important minerals such as calcium.  And of course, the taste of organic milk is simply fabulous.  What's more, because our milk is certified organic, you and your family can be assured that it is produced by healthy, contented cows that have not been given antibiotics or synthetic hormones.
>
> **As producers of organic milk, our motto is "Cows First."**
>
> - We believe that animal welfare and cow comfort are the most important measures in organic dairy.
> - Maintaining excellent herd health is essential for the humane treatment of our animals.
> - We monitor the health of every cow in our herd to ensure that she gets the care she needs.
> - All of our cows receive a balanced diet of 100% organic feed, organic pasture and clean fresh water.
> - Our herds are always outside in the fresh air and sunshine.  In case of bad weather, they have available shelter but are never kept indoors.
>
> These cow care principles help to ensure that our cows live stress-free lives and produce excellent organic milk.  So lift a glass, toast the cows, and enjoy the cool fresh taste of High Meadow organic milk.  Your taste buds, your family's health and our contented cows will all thank you.
>
> To learn more, visit us at: www.auroraorganic.com.

116.    Based on the representation that the High Meadow milk products are "organic," Aurora and Publix charge, and purchasers pay, more for these products than conventional dairy products.

117.    However, the High Meadow milk was not organic according to federal law.  In fact, High Meadow "organic" milk was produced in large scale factory farms and otherwise failed to comport with requirements of the OFPA.

118.    The High Meadow milk and milk products did not comply with requirements of the OFPA.  Despite the violations of federal law and regulations, Aurora and Publix marketed

and sold the milk or milk products under the "High Meadow" brand representing that the milk was organic when it was not.

119.    Despite the violations of federal law and regulations, Aurora marketed and sold the High Meadow milk or milk products representing that the milk was organic, when it was not.

120.    Having received non-organic "High Meadow" milk because of Aurora's misconduct, instead of the organic milk for which they paid a price premium, Plaintiff and the members of the Classes were damaged and did not receive the benefit of their bargain.

121.    The conduct described above caused injury to Plaintiffs and the other members of the Classes who purchased High Meadow "organic" milk and/or milk products.

### 2.    Costco's "Kirkland" Brand

122.    Costco did and does sell "organic" milk and/or milk products produced by Aurora under the brand name "Kirkland."   The Kirkland label "organic" milk and/or milk products was and is contained in cartons that specifically represented that the milk was organic when it was not organic.

123.    Costco aggressively promotes its "organic" products.  For example, an article in a the *Costco Connection* newsletter of January 2006 is entitled "Going the Organic Way."[15]  It states:

> Organic foods, unlike natural foods, are certified and rated by the
> U.S. Department of Agriculture (USDA) with one of three seals on
> their label:  "100% ORGANIC" designates an all-organic product,
> "ORGANIC" is used when 95 percent or more of the product is
> organic and "MADE WITH ORGANIC INGREDIENTS" means at least
> 70 percent of the ingredients are organic.  ("Natural" foods, while
> processed minimally and often without artificial flavors or colors,
> sweeteners or preservatives, can be grown using conventional
> methods, which may include pesticides.)

---

[15] http://www.costcoconnection.com/connection/200601/?pg=107 (last visited July 17, 2008).

124.   The *Costco Connection* has a special section on organic milk called "Costco's Dairy Queens," with a prominent label entitled "USDA Organic."  It promotes the quality of Costco's Organic milk and the pasturing of cows used to produce that milk:

> When I was asked by Costco to learn about organic products, one question I had was "What makes organic milk so special?"  To answer this, I visited one of the farms that produced Costco's Kirkland Signature organic milk.
>
> The cows on the farm have quite the life.  They feed on a balanced organic vegan diet and have access to organic pastures for grazing. They have their own veterinarian, nutritionists and even a physical-therapy pool.
>
> Sandy Custer, the Costco buyer who accompanied me on my visit, notes, "There are a lot of farmers who do a great job with their animals and farms.  Organic farmers take it one step further.  They take extra care of their animals to keep them healthy – which means greater quality and quantities of milk without the need for antibiotics and additional hormones.  All processing and bottling is certified organic and done right on the farm."
>
> Costco organic milk, boxed as three half gallons, offers savings that range from 66 cents to $1.66 per half gallon.
>
> Good job, ladies.  Great job, Costco.—*PV*

125.   The label itself in bold letters states that the milk is "USDA organic" and depicts a bucolic scene that doesn't just give the grazing cows "access" to pasture but represents cows at pasture:



126.    Costco also represents the environment in which the milk is produced as follows:



127.    Based on its representation that the Kirkland milk products are "organic," Costco

charges, and purchasers pay more for these products than conventional dairy products.

128.    However, Costco's milk was not organic according to Federal law.  In fact, Costco's "organic" milk was produced by Aurora in large scale factory farms and otherwise failed to comport with OFPA requirements.

129.    Costco's representations about the environment in which Aurora cows are kept also were false.

130.    Costco represented to Plaintiffs and the Class Members purchasing Kirkland-brand milk and/or milk products that they were "organic" when they were not.

131.    Costco's representations were intended to, and did or had the potential to deceive Plaintiffs and the Class Members into believing that they were purchasing organic milk when they were not.

132.    Having received non-organic "Kirkland" milk because of Costco's misconduct, instead of the organic milk for which they paid a price premium, Plaintiff and the members of the Classes were damaged and did not receive the benefit of their bargain.

133.    Costco failed to conduct its own inspections and oversight to determine whether Aurora was complying with requirements of the OFPA and/or ignored Aurora's flagrant violations.  Despite the violations of federal law and regulations, Costco marketed and sold the milk or milk products under the "Kirkland" brand representing that the milk was organic when it was not.

134.    Costco's conduct caused injury to Plaintiffs and the other members of the Classes who purchased Kirkland "organic" milk and/or milk products.

**3.     Safeway's "O Organics" Brand**

135.    Safeway did and does sell "organic" milk and/or milk products produced by Aurora under the brand name "O Organics"   The milk and/or milk product was and is contained in cartons that specifically represented it as organic.

136.    By marketing, selling, or otherwise representing that its milk and/or milk products were "organic," Safeway represented that the product was produced in compliance with OFPA requirements and was "organic" when it was not.

137.    Safeway's "O Organics" label states in bold letters that the product is "USDA organic" and also depicts a bucolic scene with cows grazing in a green pasture:



138.    Safeway also represented on the cartons of its "O Organics" brand milk, in whole or in part, as follows:

**Description** :
Organic Fat Free Milk
**Ingredients :**
Organic Grade A Fat Free Milk, Vitamin A Palmitate, Vitamin D3.
**Product Attributes :**
Organic
Kosher
FatFree

**Product Details :**
Ultra-Pasteurized Vitamins A & D added. USDA Organic. Grade A; Ultra-Pasteurized; Homogenized. Organic from the Source. Certified Organic

139.   Safeway also states on the carton of its "O Organics" milk:

ORGANICS

*Organic from the Source*

There's a lot that goes into a good glass of milk.  It starts with the land.  Our dairy pastures are environmentally friendly, maintained with the use of recognized organic horticultural practices.  The dairy cows that produce *O* Organics Milk enjoy a healthy mix of fresh air, plenty of exercise, clean drinking water and a wholesome, 100% certified organic diet – and they are not given growth hormones or treated with antibiotics.

_____

All of these practices support sustainable farming, which is good for the environment, good for the cows and good for the milk.  That's why our *O* Organics Milk tastes like milk should – fresh and pure.

140.   The carton also states:

ORGANICS

organic

Fat Free Milk

Vitamins A & D Added
Grade A  •  Pasteurized  •  Homogenized

"To be certified organic, dairy cows, must be managed under organic livestock practices at least one year before milking.  Their feed must be grown on land that has been under organic cultivation practices for a minimum of three years."

141.   Based on its representation that the "O Organics" milk products are "organic," Safeway charges purchasers, and purchasers pay, more for these products than conventional dairy products.

142.    However, Safeway's milk was not organic according to federal law.  In fact, Safeway's "organic" milk was produced in large scale factory farms and otherwise failed to comport with requirements of the OFPA.

143.    Safeway's representations about the environment in which Aurora cows are kept also were false.

144.    Safeway represented to Plaintiffs and the Class Members purchasing "O Organics" brand milk and/or milk products that they were "organic" when they were not.

145.    Safeway's representations were intended to, and did or had the potential to deceive Plaintiffs and the other members of the Classes into believing that they were purchasing organic milk when they were not.

146.    Having received non-organic "O Organics" milk because of Safeway's misconduct, instead of the organic milk for which they paid a price premium, Plaintiff and the members of the Classes were damaged and did not receive the benefit of their bargain

147.    Safeway failed to conduct its own inspections and oversight to determine whether Aurora was complying with requirements of the OFPA and/or ignored Aurora's flagrant violations.  Despite the violations of federal law and regulations, Safeway marketed and sold the milk and/or milk products under the "O Organics" brand representing that the product was organic, when it was not.

148.    Safeway's conduct caused injury to Plaintiffs and members of the Classes who purchased "O Organics" "organic" milk and/or milk products.

**4.      Target's "Archer Farms" Brand**

149.    Target did and does sell "organic" milk and/or milk products produced by Aurora under the brand name "Archer Farms."   The milk and/or milk product was and is contained in cartons that specifically represented it as organic.

35

150.    By marketing, selling, or otherwise representing that its milk and/or milk products were "organic," Target represented that the product was produced in compliance with OFPA requirements and was "organic" when it was not.

151.    Moreover, Target's "Archer Farms" advertisements depicted green pastures with grazing cows.  For example:



152.    Similarly, its labels made representations regarding the benefits of organic milk, touting the environment in which the cows are raised:

> **BENEFITS**
> - Good for you. Reducing your intake of harmful pesticides and other additives is a good health habit.
> - Good for the earth.  Organic farming helps sustain soil quality, maintain essential biodiversity and reduce chemical run-off to help preserve the purity and quality of the water supply.
> - Good for animals.  Our milk comes from healthy cows that graze in organic pastures and eat wholesome organic feed.
>
> **The Nature of Organic**
> Archer Farms Organic – food that tastes great . . . naturally.
> Taste the pure, healthful goodness of a cool, fresh glass of milk produced without pesticides, antibiotics or artificial growth hormones.  Archer Farms delivers certified organic grade A milk, fortified with vitamins A and D, which helps in calcium absorption.

153.    Based on its representation that the "Archer Farms" milk products are "organic," Target charges purchasers, and purchasers paid, more for these products than conventional dairy products.

154.    However, Target's milk was not organic according to federal law.  In fact, Target's "organic" milk was produced in large scale factory farms and otherwise failed to comport with requirements of the OFPA.

155.    Target's representations about the environment in which the cows were kept also were false.

156.    Target represented to Plaintiffs and the other members of the Classes purchasing "Archer Farms" brand milk and/or milk products that they were "organic" when they were not.

157.    Target's representations were intended to, and did or had the potential to deceive Plaintiffs and the other members of the Classes into believing that they were purchasing organic milk when they were not.

158.    Having received non-organic "Archer Farms" milk because of Target's misconduct, instead of the organic milk for which they paid a price premium, Plaintiff and the members of the Classes were damaged and did not receive the benefit of their bargain.

159.    Target failed to conduct its own inspections and oversight to determine whether Aurora was complying with requirements of the OFPA and/or ignored Aurora's flagrant violations.  Despite the violations of federal law and regulations, Target marketed and sold the milk or milk products under the "Archer Farms" brand representing that the product was organic when it was not.

160.    Target's conduct caused injury to Plaintiffs and the other members of the Classes who purchased Archer Farms "organic" milk and/or milk products.

**5.    Wal-Mart's "Great Value" Brand**

161.    Wal-Mart did and does sell "organic" milk and/or milk products produced by Aurora under the brand name "Great Value."   The milk and/or milk product was and is contained in cartons that specifically represented it as organic.

162.    Wal-Mart represented, in whole or in part, that its "Great Value"-label organic milk sold at its stores "is produced without the use of antibiotics or pesticides and organic farmers are committed to the humane treatment of animals. Your family can enjoy milk produced without harmful chemicals." *See* http://livebetterindex.com/sustainability.html (last visited July 17, 2008).

163.    Based on its representation that the "Great Value" milk products are "organic," Wal-Mart charges purchasers, and purchasers pay, more for these products than conventional dairy products.

164.    By marketing, selling, or otherwise representing that its milk and/or milk products were "organic," Wal-Mart represented that the product was produced in compliance with OFPA requirements and was "organic" when it was not.

165.    Wal-Mart's milk was not organic according to federal law.  In fact, Wal-Mart's "organic" milk was produced in large scale factory farms and otherwise failed to comport with requirements of the OFPA.

166.    Wal-Mart represented to Plaintiffs and the other members of the Classes purchasing "Great Value" brand milk and/or milk products that they were "organic" when they were not.

167.    Wal-Mart's representations were intended to, and did or had the potential to deceive Plaintiffs and the Class Members into believing that they were purchasing organic milk when they were not.

168.    Having received non-organic "Great Value" milk because of Wal-Mart's misconduct, instead of the organic milk for which they paid a price premium, Plaintiff and the members of the Classes were damaged and did not receive the benefit of their bargain.

169.    Wal-Mart failed to conduct its own inspections and oversight to determine whether Aurora was complying with requirements of the OFPA and/or ignored Aurora's flagrant violations.  Despite the violations of federal law and regulations, Wal-Mart marketed and sold the milk or milk products under the "Great Value" brand representing that the product was organic when it was not.

170.    Wal-Mart's conduct caused injury to Plaintiffs and the other members of the Classes who purchased "Great Value" "organic" milk and/or milk products.

### 6.    Wild Oats' Store Brand

171.    Wild Oats sold "organic" milk and/or milk products produced by Aurora under its store-name.  The milk and/or milk product was contained in cartons that specifically represented it as organic.

172.    Wild Oats aggressively promoted its "organic" products. For example, Wild Oats claimed that it had "A Passion for Organic," stating "Foods with the Wild Oats Organic label are made with 95-100% certified organic ingredients from products grown by farmers who practice sustainable agriculture. No synthetic pesticides, herbicides, fertilizers or GMOs are used in organic farming."[16]

173.    Wild Oats also touted that "[o]ur dairy case is full of the best organic milk and cheese . . . ."[17]

174.    In advertising its organics product line, Wild Oats contended that "[b]ehind every label is a story," adding that "[l]ong before a Wild Oats product appears on the shelf, our buyers

---

[16]  http://www.wildoatsproducts.com/app/private/index?pageId=100905&p=page (last visited July 17, 2008).
[17]  http://www.wildoatsproducts.com/app/private/index?p=productcat&pt=Dairy (last visited July 17, 2008).

travel around the corner and across the world searching for artisan, organic and natural products that meet our standards for excellence, and yours for taste, quality and value."

175.    Wild Oats also claimed it was committed to ensuring that its products are held to the highest organic standards in the industry:

> **Standards**
>
> The Wild Oats commitment to quality is unparalleled in the grocery business. Using rigorous criteria based on scientific research, we ensure our stores feature a wide selection of products that are made naturally - without artificial flavors, colorings, preservatives or other synthetic additives. We feature products that contribute to your health and well-being and we partner with vendors that meet our environmental and social standards.
>
> The Wild Oats Standards Committee was created with the vision of enhancing the lives of our customers, our employees and the environment by maintaining the highest natural and organic standards in the industry. Our decisions are grounded on the most current, reliable scientific research relevant to the concerns of our customers.

176.    The Wild Oats organic milk labels themselves stated, in multiple places, that the milk was "organic." Examples follow:

 

40

177.     Based on its representation that the milk products were "organic," Wild Oats charged purchasers, and purchasers paid, more for these products than conventional dairy products.

178.     By marketing, selling, or otherwise representing that its milk and/or milk products were "organic," Wild Oats represented that the product was produced in compliance with OFPA requirements, and was "organic," when it was not.

179.     Wild Oats' milk was not organic according to federal law.  In fact, Wild Oats' "organic" milk was produced in large scale factory farms and otherwise failed to comport with requirements of the OFPA.

180.     Wild Oats represented to Plaintiffs and the other members of the Classes purchasing its store-brand milk and/or milk products that they were "organic" when they were not.

181.     Wild Oats' representations were intended to, and did or had the potential to deceive Plaintiffs and the other members of the Classes into believing that they were purchasing organic milk when they were not.

182.     Having received non-organic "Wild Oats" milk because of Wild Oats' misconduct, instead of the organic milk for which they paid a price premium, Plaintiff and the members of the Classes were damaged and did not receive the benefit of their bargain.

183.     Wild Oats failed to conduct its own inspections and oversight to determine whether Aurora was complying with requirements of the OFPA and/or ignored Aurora's flagrant violations.  Despite the violations of federal law and regulations, Wild Oats marketed and sold the milk or milk products representing that the product was organic when it was not.

184.    Wild Oats' conduct caused injury to Plaintiffs and the other members of the

Classes who purchased its "organic" milk and/or milk products.

## V.    CLASS ALLEGATIONS

185.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek

certification of the following Classes (or alternative Classes) defined as follows:

### Aurora Classes

> All persons in the United States who purchased "organic" milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Class"), asserting claims under nationwide application of the Colorado Consumer Protection Act and for negligent misrepresentation under the laws of 50 states, and/or such subclasses as the Court may deem appropriate.

> All persons who purchased, in the Consumer Protection States,[18] milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy (the "Aurora Consumer Protection Class"), and/or such subclasses as the Court may deem appropriate.

> All persons who purchased, in the Non-Privity Breach of Express Warranty States,[19] milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy (the "Aurora Breach of Express Warranty Class"), and/or such subclasses as the Court may deem appropriate.

> All persons who purchased, in the Non-Privity Breach of Implied Warranty States,[20] milk or milk products labeled as "organic" derived from

---

[18]    The Consumer Protection States are defined hereinafter to include only the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Virginia, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.

[19]  The Non-Privity Breach of Express Warranty States are defined hereinafter to include only the states of Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, or Wyoming, which do not require privity.

[20]    The Non-Privity Breach of Implied Warranty States are defined hereinafter to include only the states of Arkansas, Alaska, California, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas,

milk produced by Aurora Dairy (the "Aurora Breach of Implied Warranty Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Negligence Per Se States,[21] milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy (the "Aurora Negligence Per Se Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Unjust Enrichment States,[22] milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy (the "Aurora Unjust Enrichment Class"), and/or such subclasses as the Court may deem appropriate.

## Aurora High Meadow Classes

All persons in the United States who purchased "organic" milk or milk products derived from milk produced by Aurora Dairy and sold under the "High Meadow" brand ("High Meadow Purchaser Class"), asserting claims under nationwide application of the Colorado Consumer Protection Act and for negligent misrepresentation under the laws of 50 states, and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Consumer Protection States, High Meadows milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy (the "High Meadow Consumer Protection Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Non-Privity Breach of Express Warranty States, High Meadow milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy (the "High Meadow Breach of Express Warranty Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Non-Privity Breach of Implied Warranty States, High Meadow milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy (the "High Meadow Breach

---

Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, or Wyoming, which do not require privity.

[21]  The Negligence Per Se States are defined hereinafter to include the United States, except for the states of Arkansas, Florida, Kansas, Texas, and Wisconsin.

[22] The Unjust Enrichment States are defined hereinafter to include the United States, except for the states of California and Texas.

of Implied Warranty Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Negligence Per Se States, High Meadow milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy (the "High Meadow Negligence Per Se Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Unjust Enrichment States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed under the "High Meadow" (the "Aurora High Meadow Unjust Enrichment Class"), and/or such subclasses as the Court may deem appropriate.

## The Costco Classes

All persons in the United States who purchased "organic" milk or milk products derived from milk produced by Aurora Dairy and retailed by Costco under the "Kirkland" brand (the "Costco Purchaser Class"), asserting claims under nationwide application of the Washington Consumer Fraud Act and for breach of express warranty, breach of implied warranty and negligent misrepresentation under the laws of 50 states, and/or such subclasses as the Court deems appropriate.

All persons who purchased, in the Consumer Protection States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Costco under the "Kirkland" brand ("Costco Consumer Protection Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Negligence Per Se States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Costco under the "Kirkland" brand ("Costco Negligence Per Se Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Unjust Enrichment States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Costco under the "Kirkland" brand (the "Costco Unjust Enrichment Class"), and/or such subclasses as the Court may deem appropriate.

## The Safeway Classes

44

All persons in the United States who purchased "organic" milk or milk products derived from milk produced by Aurora Dairy and retailed by Safeway under the "O Organics" brand (the "Safeway Purchaser Class"), asserting claims under nationwide application of the California Consumer Legal Remedies Act and Unfair Competition Law, and for breach of express warranty, breach of implied warranty and negligent misrepresentation under the laws of 50 states, and/or such subclasses as the Court deems appropriate.

All persons who purchased, in the Consumer Protection States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Safeway under the "O Organics" brand ("Safeway Consumer Protection Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Negligence Per Se States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Safeway under the "O Organics" brand ("Safeway Negligence Per Se Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Unjust Enrichment States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Safeway under the "O Organics" brand (the "Safeway Unjust Enrichment Class"), and/or such subclasses as the Court may deem appropriate.

## **The Target Classes**

All persons in the United States who purchased "organic" milk or milk products derived from milk produced and sold by Aurora Dairy and retailed by Target under the "Archer Farms" brand (the "Target Purchaser Class"), asserting claims under nationwide application of the Minnesota Prevention of Consumer Fraud Act and Uniform Deceptive Trade Practices Act, and for breach of express warranty, breach of implied warranty and negligent misrepresentation under the laws of 50 states, and/or such subclasses as the Court deems appropriate.

All persons who purchased, in the Consumer Protection States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Target under the "Archer Farms" brand ("Target Consumer Protection Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Negligence Per Se States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Target under the "Archer Farms" brand ("Target Negligence Per Se Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Unjust Enrichment States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Target under the "Archer Farms" brand (the "Target Unjust Enrichment Class"), and/or such subclasses as the Court may deem appropriate.

## The Wal-Mart Classes

All persons in the United States who purchased "organic" milk or milk products derived from milk produced by Aurora Dairy and retailed by Wal-Mart under the "Great Value" brand (the "Wal-Mart Purchaser Class"), asserting claims under nationwide application of the Arkansas Deceptive Trade Practices Act, and for breach of express warranty, breach of implied warranty and negligent misrepresentation under the laws of 50 states, and/or such subclasses as the Court deems appropriate.

All persons who purchased, in the Consumer Protection States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Wal-Mart under the "Great Value" brand ("Wal-Mart Consumer Protection Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Negligence Per Se States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Wal-Mart under the "Great Value" brand ("Wal-mart Negligence Per Se Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Unjust Enrichment States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Wal-Mart under the "Great Value" brand (the "Wal-Mart Unjust Enrichment Class"), and/or such subclasses as the Court may deem appropriate.

## The Wild Oats Classes

All persons in the United States who purchased "organic" milk or milk products derived from milk produced and sold by Aurora Dairy and

retailed by Wild Oats under the "Wild Oats" brand (the "Wild Oats Purchaser Class"), asserting claims against Wild Oats/Whole Foods under nationwide application of the Colorado Consumer Protection Act, and for breach of express warranty, breach of implied warranty and negligent misrepresentation under the laws of 50 states, and/or such subclasses as the Court deems appropriate.

All persons who purchased, in the Consumer Protection States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Wild Oats under the "Wild Oats" brand ("Wild Oats Consumer Protection Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Negligence Per Se States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Wild Oats under the "Wild Oats" brand ("Wild Oats Negligence Per Se Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Unjust Enrichment States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and retailed by Wild Oats under the "Wild Oats" brand (the "Wild Oats Unjust Enrichment Class"), and/or such subclasses as the Court may deem appropriate.

## The QAI Classes

All persons in the United States who purchased "organic" milk or milk products derived from milk produced by Aurora Dairy and certified by QAI as "organic" (the "QAI Class"), asserting claims under nationwide application of the California Consumer Legal Remedies Act and Unfair Competition Law, and negligent misrepresentation under the laws of 50 states, and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Consumer Protection States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and certified by QAI as "organic" ("QAI Consumer Protection Class"), and/or such subclasses as the Court may deem appropriate.

All persons who purchased, in the Negligence Per Se States, milk or milk products labeled as "organic" derived from milk produced by Aurora Dairy and certified by QAI as "organic" ("QAI Negligence Per Se Class"), and/or such subclasses as the Court may deem appropriate.

186.    In defining these Classes, the persons purchasing the milk and milk products include those who purchased for personal, household, or family use and consumption, but not for commercial resale.

187.    Plaintiffs are informed and believe that the Classes consist of many thousands of persons throughout the United States, making individual joinder of all class members impracticable.

188.    Questions of law and fact are common to the Classes and predominate over questions affecting only individual members, including, among others, the following:

a.    Whether the alleged conduct by Defendants violated laws as alleged in this Complaint;

b.    Whether Defendants engaged in unfair, deceptive, or unlawful acts or practices;

c.    Whether Defendants violated federal and/or state laws by representing milk and milk products as organic when they, in fact, were not;

d.    Whether Defendants violated federal and/or state laws by failing to disclose that milk and/or milk products labeled as organic milk was not organic;

e.    Whether Defendants otherwise made misrepresentations about milk and/or milk products labeled as organic;

f.    Whether Defendants made affirmations of certain characteristics in representing that milk and/or milk products were organic when, in fact, they were not;

g.    Whether Defendants made and breached express or implied warranties to Plaintiffs and the other members of the Classes about the milk and/or milk products represented to be organic;

48

      h.       Whether Defendants obtained a benefit to the detriment of Plaintiffs and the other members of the Classes;

      i.       Whether Defendants were unjustly enriched by their deceptive practices;

      j.       Whether Defendants' acts and/or omissions caused injury to Plaintiffs and the other members of the Classes; and

      k.       Whether Plaintiffs and the other members of the Classes are entitled to damages.

189.    Plaintiffs' claims are typical of the claims of class members as described above; the claims arose from the same course of conduct by Defendants and the relief sought is common to Plaintiffs and the other members of the Classes.

190.    Plaintiffs will fairly and adequately represent and protect the interests of all class members.  Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

191.   Class certification is proper under Fed. R. Civ. P. 23(b)(3), because common issues of law or fact predominate over any questions affecting only individual class and subclass members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

192.    Furthermore, because the economic damages suffered by the individual class and subclass members may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for class and subclass members to seek redress individually for the wrongful conduct alleged herein.

# VI.   CAUSES OF ACTION

## A.   Counts Against Aurora

### COUNT 1: Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101 *et seq.* (Brought on behalf of the Aurora Class against Aurora)

192.     All Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.  Plaintiffs bring this claim on behalf of themselves and all other persons who purchased "organic" milk and/or milk products produced by Aurora nationwide, asserting claims under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

193.     Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1), Plaintiffs are:  (a) actual or potential consumers of Aurora's goods and were injured as a result of the deceptive trade practices described herein; (b) successors in interest to an actual consumer who purchased Aurora's goods; or (c) were injured by the deceptive trade practices described herein in the course of Aurora's business.

194.     The "organic" milk and/or milk products produced by Aurora are goods or products to which the Colorado Consumer Protection Act applies.

195.     Aurora is a "person" as defined by the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-102(6).

196.     Aurora in the course of its business engaged in one or more acts constituting "deceptive trade practice[s]" pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1), including:

        a.     Colo. Rev. Stat. § 6-1-105(1)(e):  "Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or

quantities of goods, food, services, or property or a false representation as to the

sponsorship, approval, status,, affiliation, or connection of a person therewith;"

      b.    Colo. Rev. Stat. § 6-1-105(1)(g):  "Represent[ing] that goods, food,

services, or property are of a particular standard, quality, or grade, or that goods are of a

particular style or model, if he knows or should know that they are of another;"

      c.    Colo. Rev. Stat. §6-1-105(1)(i): Advertises goods, services or property

with the intent not to sell them as advertised.

      d.    Colo. Rev. Stat. § 6-1-105(1)(u):  "Fail[ing] to disclose material

information concerning goods, services, or property which information was known at the

time of an advertisement or sale if such failure to disclosure such information was

intended to induce the consumer to enter into a transaction."

197.    Aurora's deceptive trade practices include, among other things:

      a.    labeling its products as "organic" when, in fact, they were not;

      b.    advertising and representing that its products are "organic" when they

were not;

      c.    misrepresenting the manner in which its dairy cows were raised and fed;

and

      d.    suppressing or omitting material facts regarding the production of its

"organic" milk or milk products, specifically that the milk or milk products are not

organic, that the dairy cows were not raised at pasture, that its milk or milk products are

industrially produced, and that its purportedly "organic" milk or milk products failed to

comply with organic production laws, standards, and regulations.

198.    Aurora's misrepresentations and omissions were deceptive and had the capacity to deceive reasonable consumers.

199.    Aurora's misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

200.    Aurora's above described deceptive trade practices significantly impacted the public, including Plaintiffs and the other members of the Class, as actual or potential consumers of Aurora's goods – namely its milk and/or milk products.

201.    Because Aurora is headquartered in Colorado and a substantial amount of the conduct giving rise to this action occurred in Colorado, the Colorado Consumer Protection Act should apply nationwide to this claim against Aurora.

202.    As a direct and proximate result of Aurora's use or employment of deceptive trade practices, Plaintiffs and the other members of the Class have suffered damages.

203.    Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiffs and the other members of the Class are entitled to the relief set forth below, as appropriate, including, but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this action.

204.    As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-113(2)(b)(2.3), Aurora has acted fraudulently, willfully, knowingly, or intentionally with respect to its injury  causing conduct, such that an award of punitive damages is appropriate.

## COUNT 2: Violation of State Consumer Protection Laws
### (Brought on behalf of the Aurora Consumer Protection Class)

205.    All Plaintiffs (except Snell and Still) incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased High Meadow brand milk and/or milk products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased High Meadow brand milk and/or milk products in states having similar consumer protection laws.

206.    Each of these Plaintiffs is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the "organic" milk and/or milk products produced and sold by Aurora.

207.    The consumer protection laws of the state in which each Plaintiff purchased the "organic" milk and/or milk products produced and sold by Aurora declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

208.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

      a.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

      b.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

      c.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

      d.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.       Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f.       Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.       District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h.       Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.       Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.       Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.       Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.       Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.       Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.       Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.       Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.       Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

54

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

209.     The milk and/or milk products produced and sold by Aurora constitute products to which these consumer protection laws apply.

210.     In the conduct of trade or commerce regarding its production, marketing and sale of "organic" milk and/or milk products, Aurora engaged in one or more unfair or deceptive acts or practices, including, but not limited to:

a.      labeled its products as "organic" when, in fact, they were not;

b.      advertised and represented its products as "organic" when, in fact, they were not;

c.      misrepresented the manner in which its dairy cows were raised and fed; and

d.      suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

211.    Aurora's labeling, statements, advertisements, representations and omissions were deceptive and likely to deceive.

212.    Aurora knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

213.    Aurora used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

214.    Plaintiffs and the other members of the Class did rely on such misrepresentations.

215.    Each Plaintiff and members of the Class purchased "organic" milk and/or milk products produced and sold by Aurora that were falsely represented for an amount higher than conventional milk and/or milk products.

216.    As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged.

217.    Aurora's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

## COUNT 3: Breach of Express Warranty
### (Brought on behalf of the Aurora Breach of Express Warranty Class against Aurora)

218.    Plaintiffs Benya, Bowen, Clark, Coselli, Cruz, Fincham, Gallardo, Gollomp, Hudspeth, Kueck, Lloyd, Meacham, Robinson, Snell, Subashe, Theodore, and Weiss, incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

219.    Aurora's representation that the milk and/or milk products are "organic" is an affirmation by Aurora that the milk and/or milk products comply with applicable standards, statutes and regulations, including USDA requirements.

220.    Aurora's statements and representations about the "organic" status of its milk and/or milk products is an affirmation by Aurora that the milk and/or milk products comply with federal law.

221.    Aurora's representations made to Plaintiffs and the members of the Class at the point of purchase, are part of the description of the goods, and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

222.    In addition or in the alternative, Aurora's representations made by Aurora to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to have relied) on said

representation as a material factor in his/her decision to purchase the "organic" products at a higher price than he/she would otherwise have paid for conventional milk and/or milk products.

223.     By its statements and representations, Aurora expressly warranted that the milk and/or milk products complied with applicable standards, statutes and regulations, including USDA requirements.

224.     The milk and/or milk products produced and sold by Aurora did not, in fact, comply with applicable standards, statutes and regulations, including USDA requirements.

225.     At all times relevant to this action, Aurora falsely represented its milk and/or milk products as "organic" when they were not produced in compliance with applicable standards, statutes and regulations, including USDA requirements, in breach of this express warranty in violation of state express warranty laws, including:

      a.      Ak. St. § 42.02.313;

      b.      Ariz. Rev. Stat. Ann. § 47-2313;

      c.      Ark. Code Ann. § 4-2-313;

      d.      Cal. Comm. Code § 2313;

      e.      Colo. Rev. St. § 4-2-313;

      f.      Conn. Gen. Stat. Ann. § 42a-2-313;

      g.      D.C. Stat. § 28:2-313;

      h.      Haw. Rev. Stat. § 490:2-313;

      i.      Ind. Code § 26-1-2-313;

      j.      Kansas Stat. Ann. § 84-2-313;

      k.      La. Civ. Code. Ann. Art. 2520;

      l.      11 Maine Rev. Stat. Ann. § 2-313;

m.      Mass. Gen. Laws Ann. 106 § 2-313;

n.      Minn. Stat. Ann. § 336.2-313;

o.      Miss. Code Ann. § 75-2-313;

p.      Missouri Rev. Stat. § 400.2-313;

q.      Mont. Code Ann. § 30-2-313;

r.      Neb. Rev. Stat. § 2-313;

s.      Nev. Rev. Stat. §104.2313;

t.      N.H. Rev. Stat. § 382-A:2-313;

u.      N.J. Stat. Ann. § 12A:2-313;

v.      N.M. Stat. Ann. § 55-2-313;

w.      N.Y. U.C.C. Law § 2-313;

x.      N.C. Gen. Stat. Ann. § 25-2-313;

y.      Okla. Stat. Ann. Tit. 12A, § 2-313;

z.      Or. Rev. Stat. § 72.3130;

aa.     Pa. Stat. Ann. Tit. 13, § 2313;

bb.     R.I. Stat. § 6A-2-313;

cc.     S.C. § 36-2-313;

dd.     S.D. Cod. Laws. § 57A-2-313;

ee.     Tenn. Code Ann. § 47-2-313;

ff.     Tex. Bus. & Com. Code Ann. § 2.313;

gg.     Ut. Code Ann. § 70A-2-313;

hh.     Vt. Stat. Ann. § 2-313;

ii.     Wa. Ann. § 62A.2-313;

   jj.  W. Va. Code § 46-2-313; and

   kk.  Wyo. Stat. § 34.1-2-313.

  226.  The above statutes do not require privity of contract to recover for breach of express warranty.

  227.  As a result of Aurora's conduct, Plaintiffs and the members of the Class have been damaged.

  228.  Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

**COUNT 4: Breach of Implied Warranty of Merchantability**
**(Brought on behalf of the Aurora Breach of Implied Warranty Class against Aurora)**

  229.  Benya, Clark, Cruz, Coselli, Fincham, Gallardo, Hudspeth, Lloyd, Meacham, Subashe, Theodore and VerNooy, incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

  230.  Plaintiffs and the members of the Class purchased "organic" milk and/or milk products produced by Aurora for the ordinary purposes of organic milk or milk products -- that it was, in fact, organic and was of merchantable quality as organic milk.

  231.  By representing that the milk and/or milk products were "organic," Aurora impliedly warranted that such products were, in fact, organic, complied with applicable

61

standards, statutes and regulations, including USDA requirements, and were of merchantable quality as organic.

232.    At all times material to this action, the milk and milk products produced and sold by Aurora were not, in fact, organic.

233.    As such, the milk and milk products produced and sold by Aurora were not fit for their ordinary purpose and could not pass without objection in the trade.

234.    Aurora's conduct breached its implied warranties regarding the "organic" milk produced and sold by Aurora under state implied warranty laws including:

    a.    Ark. Stat. § 7-2-314 and § 7-2-315;

    b.    Ak. St. § 45.02.314 and § 45.02.315;

    c.    Cal. Comm. Code § 2314;

    d.    Co. Rev. Stat. § 4-2-314 and § 4-2-315;

    e.    6 Del. C. § 2-314 and § 2-315;

    f.    D.C. Stat. § 28:2-314 and § 28:2-315;

    g.    Haw. Rev. Stat. § 490:2-314 and § 490:2-315;

    h.    Ind. Code § 26-1-2-314 and § 26-1-2-315;

    i.    Kan. Stat. Ann. § 50-639(b);

    j.    La. Civ. Code Ann. Art. 2524;

    k.    11 Maine Rev. Stat. Ann. § 2-314 and § 2-315;

    l.    Md. Com. Law Code Ann. § 2-314 and § 2-315;

    m.    Mass. Gen. Laws Ann. 106 § 2-314 and § 2-315;

    n.    Mich. Comp. Laws Ann. § 440.2314 and § 440.2315;

    o.    Minn. Stat. Ann. § 336.2-314 and §336.2-315;

p.      Miss. Code Ann. § 75-2-314 and § 75-2-315;

q.      Mo. Rev. Stat. § 400.2-314 and § 400.2-315;

r.      Mont. Code Ann. § 30-2-314 and § 30-2-315;

s.      Neb. Rev. Stat. § 2-314 and § 2-315;

t.      Nev. Rev. Stat. § 104.2314 and § 104.2315;

u.      N.H. Stat. Ann. § 382-A:2-314 and § 382-A:2-315;

v.      N.J. Stat. Ann. § 12A:2-314 and § 12A:2-315;

w.      N.M. Stat. Ann. § 55-2-314 and § 55-2-315;

x.      N.D. Stat. § 41-02-31 and § 41-02-32;

y.      Ohio Rev. Code Ann. § 1302.27 and § 1302.28;

z.      Okla. Stat. Ann. tit. 12A, § 2-314 and § 2-315;

aa.     O.R.S. § 72.8020;

bb.     Pa. Stat. Ann. tit. 13, § 2314 and §2315;

cc.     S.C. § 36-2-314 and § 36-2-315;

dd.     S.D. Cod. Laws. § 57A-2-314 and § 57A-2-315;

ee.     Tex. Bus. & Com. Code Ann. § 2.314 and § 2.315;

ff.     Ut. Code Ann. § 70A-2-314 and § 70A-2-315;

gg.     Va. Code Ann. § 8.2-314 and § 8.2-315;

hh.     W. Va. Code § 46-2-314 and § 46-2-315; and

ii.     Wyo. Stat. § 34.1-2-314 and § 34.1-2-315.

235.    These states do not require privity of contract to recover for breach of implied warranty.

236.    As a result, Plaintiffs and the members of the Class have been damaged.

237.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

**COUNT 5: Negligence Per Se**
**(Brought on behalf of the Aurora Negligence Per Se Class against Aurora)**

238.    All Plaintiffs (except Brice Leigh, Clark, Coselli, Meacham and Ross) incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

239.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which milk or milk products will be sold as organically produced shall be raised and handled in accordance with OFPA standards for not less than the twelve month period immediately prior to the sale of such milk or milk products.

240.    The OFPA, including 7 U.S.C. § 6509(e)(2), is intended to protect purchasers of organic milk or milk products, including Plaintiff and members of the Class.

241.    Aurora owed a duty to purchasers of its "organic" milk or milk products – including Plaintiff and the Class – not to produce, market and/or sell its milk or milk products as "organic" unless such products were produced in accordance with OFPA and other applicable laws.

242.    From at least December 2003 through August 23, 2007, Aurora produced, marketed, represented and sold its milk and milk products as "organic," when, in fact, they were

64

not.  Based on this and its other conduct as alleged above, Aurora breached its duty to Plaintiffs and the members of the Class.

243.    As a result of Aurora's conduct, Plaintiff and members of the Class have suffered damages.

244.    Aurora's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

## COUNT 6: Negligent Misrepresentation
## (Brought on behalf of the Aurora Class against Aurora)

245.    All Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

246.    Aurora owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its "organic" milk and milk products.

247.    Aurora negligently and recklessly made such representations and omitted to disclose material facts to potential customers and the general public through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Aurora.

248.    Aurora's representations and omissions regarding its "organic" milk and milk products were material.

249.     Aurora's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

250.     Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Aurora made regarding its "organic" milk and milk products.

251.     Aurora knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Aurora.

252.     Aurora's representations and omissions regarding its "organic" milk and milk products were false and misleading as alleged above.

253.     As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

254.     As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

### COUNT 7: Unjust Enrichment
### (Brought on behalf of the Aurora Unjust Enrichment Class against Aurora)

255.     All Plaintiffs (except Gallardo, Theodore, Coselli and Meacham) incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora in the same state as Plaintiff purchased such products and (b) all

other persons who purchased such products in states having similar laws regarding unjust enrichment.

256.    Aurora markets and promotes organic production as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk and/or milk products.

257.    Consumers pay a higher price for "organic" milk and milk products.

258.    Because consumers are willing to pay a higher retail price for "organic" milk and milk products, Aurora is able to sell such products to retailers for a price higher than it would otherwise obtain.

259.    Aurora received a benefit from Plaintiffs and the members of the Class in the form of the premium prices it charged to retailers for the "organic" milk and milk products it produced.

260.    Retailers then sell the "organic" milk and milk products to Plaintiffs and the members of the Class for prices higher than conventionally produced products.

261.    Under the circumstances, it would be inequitable for Aurora to retain the above-described benefit.

262.    As a result of Aurora's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Aurora's unjust enrichment.

**B.    Counts Against Aurora With Respect to the High Meadow Label**

### COUNT 8: Violation of the Colorado Consumer Protection Act
### Colo. Rev. Stat. § 6-1-101 et seq.
### (Brought on behalf of the High Meadow Purchaser Class against Aurora)

263.    Plaintiffs Brice Leigh, Gollomp and Ross incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the

Count(s) above, these Plaintiffs bring this Count on behalf of themselves and all other persons who purchased "organic" milk and/or milk products produced by Aurora and sold by Aurora under the "High Meadow" brand nationwide, asserting claims under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

264.     Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1), Plaintiffs are:  (a) actual or potential consumers of Aurora's goods and were injured as a result of the deceptive trade practices described herein; (b) successors in interest to an actual consumer who purchased Aurora's goods; or (c) were injured by the deceptive trade practices described herein in the course of Aurora's business.

265.     Aurora is a "person" as defined by the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-102(6).

266.     Aurora in the course of its business engaged in one or more acts constituting "deceptive trade practice[s]" pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1), including:

a.     Colo. Rev. Stat. § 6-1-105(1)(e):  "Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status,, affiliation, or connection of a person therewith;"

b.     Colo. Rev. Stat. § 6-1-105(1)(g):  "Represent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;"

c.     Colo. Rev. Stat. § 6-1-105(1)(i): Advertises goods, services or property with the intent not to sell them as advertised.

       d.      Colo. Rev. Stat. § 6-1-105(1)(u):  "Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclosure such information was intended to induce the consumer to enter into a transaction."

267.    Aurora's deceptive trade practices include, among other things:

       a.      labeling its products as "organic" when, in fact, they were not;

       b.      advertising and representing that its products are "organic," when they are not;

       c.      misrepresenting the manner in which its dairy cows were raised and fed; and

       d.      suppressing or omitting material facts regarding the production of its "organic" milk or milk products, specifically that the milk or milk products are not organic, that the dairy cows were not raised at pasture, that its milk or milk products are industrially produced, and that its purportedly "organic" milk or milk products failed to comply with organic production laws, standards, and regulations.

268.    Aurora's misrepresentations and omissions were deceptive and had the capacity to deceive reasonable consumers.

269.    Aurora's misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

270.    Aurora's above described deceptive trade practices significantly impacted the public, including Plaintiffs and the other members of the Class, as actual or potential consumers of Aurora's goods – namely its milk and/or milk products.

271.    Because Aurora is headquartered in Colorado and a substantial amount of the conduct giving rise to this action occurred in Colorado, the Colorado Consumer Protection Act should apply nationwide to this claim against Aurora.

272.    As a direct and proximate result of Aurora's use or employment of the deceptive trade practices described above, Plaintiffs and the other members of the Class have suffered damages.

273.    Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiffs and the other members of the Class are entitled to the relief set forth below, as appropriate, including, but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this action.

274.    As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-113(2)(b)(2.3), Aurora has acted fraudulently, willfully, knowingly, or intentionally with respect to its injury causing conduct, such that an award of punitive damages is appropriate.

### COUNT 9: Violation of State Consumer Protection Laws
### (Brought on behalf of the High Meadow Consumer Protection Class)

275.    Plaintiffs Brice Leigh, Gollomp and Ross incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased High Meadow brand milk and/or milk products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased High Meadow brand milk and/or milk products in states having similar consumer protection laws.

276.    Each of these Plaintiffs is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the "organic" milk and/or milk products produced and sold by Aurora.

277.    The consumer protection laws of the state in which each Plaintiff purchased the "organic" milk and/or milk products produced and sold by Aurora declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

278.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

      a.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

      b.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

      c.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

      d.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

      e.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

      f.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

      g.    District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

      h.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

      i.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480

1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised

Statutes §481A-1, *et seq.*;

j.        Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.        Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

§ 505/1, *et seq.*;

l.        Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et*

*seq.*;

m.       Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.        Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and

Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et*

*seq.*;

o.        Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et*

*seq.*;

p.        Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch.

93A, *et seq.*;

q.        Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.        Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et*

*seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §

325D.43, *et seq.*;

s.        Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.        Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*;

and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-

301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii. Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj. Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk. Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo. Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

279. The milk and/or milk products produced and sold by Aurora constitute products to which these consumer protection laws apply.

280. In the conduct of trade or commerce regarding its production, marketing and sale of "organic" milk and/or milk products, Aurora engaged in one or more unfair or deceptive acts or practices, including, but not limited to:

a. labeled its products as "organic" when, in fact, they were not;

b. advertised and represented its products as "organic" when, in fact, they were not;

c. misrepresented the manner in which its dairy cows were raised and fed; and

d. suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products

are conventionally produced.

281.    Aurora's labeling, statements, advertisements, representations and omissions were deceptive and likely to deceive.

282.    Aurora knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

283.    Aurora used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

284.    Plaintiffs and the other members of the Class did rely on such misrepresentations.

285.    Each Plaintiff and members of the Class purchased "organic" milk and/or milk products produced and sold by Aurora that were falsely represented for an amount higher than conventional milk and/or milk products.

286.    As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged.

287.    Aurora's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 10: Breach Of Express Warranty
### (Brought on behalf of the High Meadow Breach of Express Warranty Class)

288.    Plaintiff Gollomp incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced and sold by Aurora in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

289.    Aurora's representation that the milk and/or milk products are "organic" is an affirmation by Aurora that the milk and/or milk product comply with applicable standards, statutes and regulations, including USDA requirements.

290.    Aurora's representation that the milk and/or milk products are "organic" is made to Plaintiffs and the members of the Class at the point of purchase, is part of the description of the goods, and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

291.    In addition or in the alternative, Aurora's representation that the milk and/or milk products are "organic" are made by Aurora to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the "organic" product at a higher price than he/she would otherwise have paid for a conventional milk and/or milk products.

292.    By its statements and representations, Aurora expressly warranted that the milk and/or milk products complied with applicable standards, statutes and regulations, including USDA requirements.

293.    The milk and/or milk products produced and sold by Aurora did not, in fact, comply with applicable standards, statutes and regulations, including USDA requirements.

294.    At all times relevant to this action, Aurora falsely represented its milk and/or milk products as "organic" when they were not produced in compliance with applicable standards, statutes and regulations, including USDA requirements, and falsely represented the other descriptions about the products and the manner in which the products were produced in breach of these express warranties.

76

295.   At all times relevant to this action, Aurora falsely represented its milk and/or milk products as "organic" when they were not produced in compliance with applicable standards, statutes and regulations, including USDA requirements, in breach of this express warranty in violation of state express warranty laws, including:

     a.    Ak. St. § 42.02.313;

     b.    Ariz. Rev. Stat. Ann. § 47-2313;

     c.    Ark. Code Ann. § 4-2-313;

     d.    Cal. Comm. Code § 2313;

     e.    Colo. Rev. St. § 4-2-313;

     f.    Conn. Gen. Stat. Ann. § 42a-2-313;

     g.    D.C. Stat. § 28:2-313;

     h.    Haw. Rev. Stat. § 490:2-313;

     i.    Ind. Code § 26-1-2-313;

     j.    Kansas Stat. Ann. § 84-2-313;

     k.    La. Civ. Code. Ann. Art. 2520;

     l.    11 Maine Rev. Stat. Ann. § 2-313;

     m.    Mass. Gen. Laws Ann. 106 § 2-313;

     n.    Minn. Stat. Ann. § 336.2-313;

     o.    Miss. Code Ann. § 75-2-313;

     p.    Missouri Rev. Stat. § 400.2-313;

     q.    Mont. Code Ann. § 30-2-313;

     r.    Neb. Rev. Stat. § 2-313;

     s.    Nev. Rev. Stat. §104.2313;

t.      N.H. Rev. Stat. § 382-A:2-313;

u.      N.J. Stat. Ann. § 12A:2-313;

v.      N.M. Stat. Ann. § 55-2-313;

w.      N.Y. U.C.C. Law § 2-313;

x.      N.C. Gen. Stat. Ann. § 25-2-313;

y.      Okla. Stat. Ann. Tit. 12A, § 2-313;

z.      Or. Rev. Stat. § 72.3130;

aa.     Pa. Stat. Ann. Tit. 13, § 2313;

bb.     R.I. Stat. § 6A-2-313;

cc.     S.C. § 36-2-313;

dd.     S.D. Cod. Laws. § 57A-2-313;

ee.     Tenn. Code Ann. § 47-2-313;

ff.     Tex. Bus. & Com. Code Ann. § 2.313;

gg.     Ut. Code Ann. § 70A-2-313;

hh.     Vt. Stat. Ann. § 2-313;

ii.     Wa. Ann. § 62A.2-313;

jj.     W. Va. Code § 46-2-313; and

kk.     Wyo. Stat. § 34.1-2-313.

296.    The above statutes do not require privity of contract to recover for breach of express warranty.

297.    As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged.

298.     Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

### COUNT 11: Breach Of Implied Warranty of Merchantability
### (Brought on behalf of the High Meadow Breach of Implied Warranty Class Against Aurora)

299.     Plaintiff Gollomp incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased High Meadow "organic" milk and/or milk products produced and sold by Aurora in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such product in states having similar laws regarding implied warranty.

300.     Plaintiffs and the members of the Class purchased "organic" milk and/or milk products produced and sold by Aurora for the ordinary purposes of organic milk or milk products -- that it was, in fact, organic and of merchantable quality as organic.

301.     By representing that the milk and/or milk products were "organic," Aurora impliedly warranted that such products were, in fact, organic and complied with applicable standards, statutes and regulations, including USDA requirements, and were of merchantable quality as organic.

302.     At all times material to this action, the milk and/or milk products produced and sold by Aurora were not, in fact, organic and of merchantable quality as organic.

303.     As such, the milk and/or milk products produced and sold by Aurora were not fit for their ordinary purpose and could not pass without objection in the trade.

304.    Aurora's conduct breached its implied warranties regarding the "organic" milk produced and sold by Aurora under state implied warranty laws including:

     a.    Ark. Stat. § 7-2-314 and § 7-2-315;

     b.    Ak. St. § 45.02.314 and § 45.02.315;

     c.    Cal. Comm. Code § 2314;

     d.    Co. Rev. Stat. § 4-2-314 and § 4-2-315;

     e.    6 Del. C. § 2-314 and § 2-315;

     f.    D.C. Stat. § 28:2-314 and § 28:2-315;

     g.    Haw. Rev. Stat. § 490:2-314 and § 490:2-315;

     h.    Ind. Code § 26-1-2-314 and § 26-1-2-315;

     i.    Kan. Stat. Ann. § 50-639(b);

     j.    La. Civ. Code Ann. Art. 2524;

     k.    11 Maine Rev. Stat. Ann. § 2-314 and § 2-315;

     l.    Md. Com. Law Code Ann. § 2-314 and § 2-315;

     m.    Mass. Gen. Laws Ann. 106 § 2-314 and § 2-315;

     n.    Mich. Comp. Laws Ann. § 440.2314 and § 440.2315;

     o.    Minn. Stat. Ann. § 336.2-314 and §336.2-315;

     p.    Miss. Code Ann. § 75-2-314 and § 75-2-315;

     q.    Mo. Rev. Stat. § 400.2-314 and § 400.2-315;

     r.    Mont. Code Ann. § 30-2-314 and § 30-2-315;

     s.    Neb. Rev. Stat. § 2-314 and § 2-315;

     t.    Nev. Rev. Stat. § 104.2314 and § 104.2315;

     u.    N.H. Stat. Ann. § 382-A:2-314 and § 382-A:2-315;

    v.       N.J. Stat. Ann. § 12A:2-314 and § 12A:2-315;

    w.      N.M. Stat. Ann. § 55-2-314 and § 55-2-315;

    x.      N.D. Stat. § 41-02-31 and § 41-02-32;

    y.      Ohio Rev. Code Ann. § 1302.27 and § 1302.28;

    z.      Okla. Stat. Ann. tit. 12A, § 2-314 and § 2-315;

    aa.    O.R.S. § 72.8020;

    bb.    Pa. Stat. Ann. tit. 13, § 2314 and §2315;

    cc.    S.C. § 36-2-314 and § 36-2-315;

    dd.    S.D. Cod. Laws. § 57A-2-314 and § 57A-2-315;

    ee.    Tex. Bus. & Com. Code Ann. § 2.314 and § 2.315;

    ff.    Ut. Code Ann. § 70A-2-314 and § 70A-2-315;

    gg.    Va. Code Ann. § 8.2-314 and § 8.2-315;

    hh.    W. Va. Code § 46-2-314 and § 46-2-315; and

    ii.    Wyo. Stat. § 34.1-2-314 and § 34.1-2-315.

305.    These states do not require privity of contract to recover for breach of implied warranty.

306.    As a result, Plaintiffs and the members of the Class were damaged.

307.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

**COUNT 12: Negligence Per Se**
**(Brought on behalf of the High Meadow Negligence Per Se Class Against Aurora)**

308.    Plaintiff Gollomp incorporates by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, Plaintiff brings this Count on his/her own behalf under the law of the state in which he/she

purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced and sold by Aurora in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

309.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which milk or milk products will be sold as organically produced shall be raised and handled in accordance with OFPA for not less than the twelve month period immediately prior to the sale of such milk or milk products.

310.    The OFPA, including 7 U.S.C. § 6509(e)(2), is intended to protect purchasers of organic milk or milk products, including Plaintiff and members of the Class.

311.    Aurora owed a duty to purchasers of its "organic" milk or milk products – including Plaintiff and the Class – not to produce, market and/or sell its milk or milk products as "organic" unless such products were produced in accordance with OFPA, its accompanying regulations, and other applicable laws.

312.    From at least December 2003 through at least August 23, 2007 Aurora has produced, marketed, represented and sold its milk or milk products as "organic," when, in fact, they were not.  Based on this conduct, and its other conduct, as alleged above, Aurora breached its duty to Plaintiffs and the members of the Class.

313.    As a direct and proximate result of Aurora's conduct, Plaintiff and members of the Class have suffered damages in an amount to be proven at trial.

314.    Aurora's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

## COUNT 13: Negligent Misrepresentation
### (Brought on behalf of the High Meadow Purchaser Class Against Aurora)

315.    Plaintiffs Brice Leigh, Gollomp and Ross incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora under the High Meadow label and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and sold under the High Meadow label in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

316.    Aurora owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its "organic" milk and milk products.

317.    Aurora negligently and recklessly made such representations and omitted to disclose material facts to potential customers and the general public through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Aurora.

318.    Aurora's representations and omissions regarding its "organic" milk and milk products were material.

319.    Aurora's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

320.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Aurora made regarding its "organic" milk and milk products.

321.    Aurora knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Aurora.

322.    Aurora's representations and omissions regarding its "organic" milk and milk products were false and misleading as alleged above.

323.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

324.    As a result of Aurora' conduct, Plaintiffs and the members of the Class were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

### COUNT 14:  Unjust Enrichment
### (Brought on behalf of the Aurora High Meadow Unjust Enrichment Class)

325.    Plaintiffs Brice Leigh, Gollomp and Ross incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora under the High Meadow brand and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced and sold by Aurora under the High Meadow brand in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

326.    Aurora markets and promotes organic production as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk and/or milk products.

327.    Aurora charged, and consumers paid, a higher retail price for the "organic" milk and/or milk products produced and sold by Aurora than the price of conventionally produced milk and/or milk products.

328.    Aurora received a benefit in the form of the premium price charged by Aurora and paid by Plaintiffs and the members of the Class for the "organic" milk and milk products produced and sold by Aurora.

329.    Under the circumstances, it would be inequitable for Aurora to retain the above-described benefit.

330.    As a result of Aurora's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Aurora's unjust enrichment.

**C.     Counts Against Costco**

**COUNT 15: Violation Of The Washington Consumer Protection Act**,
**RCW 19.86 *et seq.***
**(Brought on behalf of the Costco Purchaser Class)**

331.    Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Class.

332.    The Washington Consumer Protection Act, Title 19, Chapter 86 of the Revised Code of Washington, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

333.    Plaintiffs and the members of the Class are purchasers, consumers or otherwise within the class of persons that the Washington Consumer Protection Act was intended to protect.

334.    The "organic" milk and/or milk products produced by Aurora and retailed by Costco are goods or products to which the Washington Consumer Protection Act applies.

335.    Costco is a seller or other person to whom the Washington Consumer Protection Act applies.

336.    Costco engaged in unfair or deceptive acts or practices in the conduct of the trade or commerce of its "organic" milk or milk products including, but not limited to:

        a.    labeled its products as "organic" when, in fact, they were not;

        b.    advertised and represented its products as "organic" when they were not;

        c.    misrepresented the manner in which the dairy cows producing the milk and milk products were raised and fed; and

        d.    suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

337.    Such misrepresentations were material.

338.    Costco's misrepresentations and omissions were deceptive and had the capacity or tendency to deceive a substantial portion of the public.

339.    Costco's misrepresentations and omissions were made for the purpose of, and did, induce Plaintiffs and the members of the Class who purchase Costco's "organic" milk and/or milk products for an amount higher than conventional milk and/or milk products.

340.    Plaintiffs and the other members of the Class relied (or should be presumed to have relied) on Costco's misrepresentations and omissions.

341.   Costco's conduct significantly impacted the public, including Plaintiffs and the other members of the Class as actual or potential consumers of the "organic" milk and/or milk products sold by Costco.

342.   Because Costco is headquartered in Washington, Costco made decisions regarding the labeling, marketing and sale of the "organic" milk and milk products in Washington, and other conduct giving rise to this action occurred in Washington, the Washington consumer protection laws should apply nationwide to this claim against Costco.

343.   As a direct and proximate result of Costco's wrongful conduct, Plaintiffs and the members of the Class have been damaged by, *inter alia,* paying a premium price for "organic" milk, when they received non-organic milk.

344.   Plaintiffs and the Class are entitled to compensatory damages, treble damages, attorneys' fees and cost of this suit.

345.   Because Costco's conduct impacts the public interest, an award of treble damages is appropriate, pursuant to Wash. Rev. Code § 19.86.090.

### COUNT 16: Violation Of State Consumer Protection Laws
### (Brought on behalf of the Costco Consumer Protection Class)

346.   Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd, and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Costco and on behalf of: (a) all other persons who purchased milk and/or milk products produced by Aurora and retailed by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

347.    The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the "organic" milk and/or milk products produced by Aurora and retailed by Costco declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

348.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

    b.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

    c.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

    d.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

    e.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

    f.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

    g.    District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

    h.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

    i.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.       Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.       Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.       Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.       Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.       Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.       Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.       Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.       Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.       Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.       Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.       Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.        New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.        New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.        New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.        New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.        North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.       North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.       Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.       Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.       Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.       Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.       Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.       South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.       South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.       Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.　　Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.　　Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.　　Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.　　West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.　　Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.　　Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

349.　　Each of these Plaintiffs and each member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the "organic" milk and/or milk products produced by Aurora and retailed by Costco.

350.　　Costco is a seller or other person to which these consumer protection laws apply.

351.　　The milk and/or milk products produced by Aurora and retailed by Costco constitute products to which these consumer protection laws apply.

352.　　In the conduct of trade or commerce regarding its production, marketing and sale of "organic" milk and/or milk products, Costco engaged in one or more unfair or deceptive acts or practices, including, but not limited to:

(a)　　labeled its products as "organic" when, in fact, they were not;

(b)　　advertised and represented its products as "organic" when they were not;

(c)　　misrepresented the manner in which dairy cows producing the products were raised and fed; and

(d)　　suppressed or omitted material facts regarding the production of its

"organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

353.   In the conduct of trade or commerce Costco's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

354.   Costco knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

355.   Costco used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

356.   Plaintiffs and the other members of the Class did rely (or should be presumed to have relied) on such misrepresentations.

357.   Each Plaintiff and member of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Costco that were falsely represented for an amount higher than conventional milk and/or milk products.

358.   As a result of Costco's conduct, Plaintiffs and the members of the Class were damaged.

359.   Costco's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 17: Breach Of Express Warranty
### (Brought on behalf of the Costco Purchaser Class)

360.   Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by

Aurora and sold at Costco and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Costco in the same state as Plaintiff purchased such product; and (b) all other persons who purchased such product in states having similar laws regarding express warranty.

361.    Costco's representation that the milk and/or milk products are "organic" is an affirmation by Costco that the milk and milk product complies with applicable standards, statutes and regulations, including USDA requirements.

362.    Costco's statements and representations about the environment in which the cows producing the milk are raised and fed also constitute an affirmation by Costco that the milk and/or milk products comply with such statements and representations.

363.    Costco's other statements and representations about the "organic" status of its milk and/or milk products also are affirmations by Costco that the milk and/or milk products comply with such statements and representations.

364.    Costco's representations are made to Plaintiffs and members of the Costco Purchaser Subclass at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

365.    In addition or in the alternative, Costco's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the "organic" products at a higher price than he/she would otherwise have paid for a conventional milk and/or milk products.

366.     By its statements and representations, Costco expressly warranted that the milk and/or milk products complied with applicable standards, statutes and regulations, including USDA requirements and complied with the other descriptions Costco made about the products and the manner in which they were produced.

367.     The milk and/or milk products produced by Aurora and retailed by Costco did not, in fact, comply with applicable standards, statutes and regulations, including USDA requirements, or the other descriptions Costco made about the products and the manner in which they were produced.

368.     At all times relevant to this action, Costco falsely represented its milk and/or milk products to be "organic" when they were not produced in compliance with applicable standards, statutes and regulations, including USDA requirements, and falsely represented the other descriptions about the product and the manner in which the product was produced in breach of these express warranties.

369.     As a result of Costco's conduct, Plaintiffs and the members of the Class were damaged.

370.     Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Costco on notice thereof.

### COUNT 18: Breach Of Implied Warranty of Merchantability
### (Brought on behalf of the Costco Purchaser Class)

371.     Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Costco on behalf of: (a) all other persons who purchased "organic" milk

and/or milk products produced by Aurora and retailed by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

372.    Plaintiffs and the members of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Costco for the ordinary purposes of organic milk or milk products -- that it was, in fact, organic and of merchantable quality as organic.

373.    By representing that the milk and/or milk products were "organic," Costco impliedly warranted that such products were, in fact, organic and complied with applicable standards, statutes and regulations, including USDA requirements.

374.    By representing the environment in which the cows producing such milk and/or milk products were raised and feed, Costco impliedly warranted that the milk and/or milk products were produced by cows raised and fed in such an environment.

375.    At all times material to this action, the milk and milk products produced by Aurora and retailed by Costco were not, in fact, organic and were not produced by cows raised and fed in the environment represented.

376.    As such, the milk and milk products produced by Aurora and retailed by Costco were not fit for their ordinary purpose and could not pass without objection in the trade.

377.    As a result, Plaintiffs and the members of the Class were damaged.

378.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Costco on notice thereof.

## COUNT 19: Negligence Per Se
### (Brought on behalf of the Costco Negligence Per Se Class)

379.    Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd and Subashe, incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the

alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Costco on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

380.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which milk or milk products will be sold as organically produced shall be raised and handled in accordance with OFPA for not less than the twelve month period immediately prior to the sale of such milk or milk products.

381.    The OFPA, including 7 U.S.C. § 6509(e)(2), is intended to protect purchasers of organic milk or milk products, including Plaintiff and members of the Class.

382.    Costco owed a duty to purchasers of its "organic" milk or milk products – including Plaintiff and the Class – not to produce, market and/or sell its milk or milk products as "organic" unless such products were produced in accordance with OFPA, its accompanying regulations, and other applicable laws.

383.    Costco has marketed, represented and sold its milk or milk products as "organic," when, in fact, they were not.  Based on this conduct, and its other conduct, as alleged above, Costco breached its duty to Plaintiffs and the members of the Class.

384.    As a direct and proximate result of Costco's conduct, Plaintiff and members of the Class have suffered damages in an amount to be proven at trial.

385.     Costco's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

### COUNT 20 Negligent Misrepresentation
### (Brought on behalf of the Costco Purchaser Class)

386.     Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Costco on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

387.     Costco owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its "organic" milk and/or milk products.

388.     Costco negligently and recklessly made such representations and omitted to disclose material facts to potential customers and the general public through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Costco or at its direction.

389.     Costco's representations and omissions regarding its "organic" milk and milk products were material.

390.     Costco's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

391.     Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Costco made regarding its "organic" milk and milk products.

392.     Costco knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Costco.

393.     Costco's representations and omissions regarding its "organic" milk and milk products were false and misleading as alleged above.

394.     As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

395.     As a result of Costco's conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

**COUNT 21 Unjust Enrichment**
**(Brought on behalf of the Costco Unjust Enrichment Class)**

396.     Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Costco on behalf of: (a) all other persons  who purchased "organic" milk and/or milk products produced by Aurora and retailed by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

397.     Costco markets and promotes organic production as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk and/or milk products.

398.     Costco charges, and consumers pay, a higher retail price for the "organic" milk and/or milk products produced by Aurora and retailed by Costco than the price of conventionally produced milk and/or milk products.

399.     Costco received a benefit in the form of the premium price charged by Costco and paid by Plaintiffs and the members of the Class for the "organic" milk and milk products produced by Aurora and retailed by Costco.

400.     Under the circumstances, it would be inequitable for Costco to retain the above-described benefit.

401.     As a result of Costco's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Costco's unjust enrichment.

**D.     Counts Against Safeway**

**COUNT 22: Violation of the California Unfair Competition Law,**
**Business And Professions Code §§17200 et seq.**
**(Brought on behalf of the Safeway Purchaser Class)**

402.     Plaintiffs Benya, Bowen, Coselli, Fincham, Kueck, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Safeway Purchaser Class.

403.     Safeway placed into the stream of commerce and intended for ultimate sale to consumers dairy products labeled as – and represented to be – "organic", and such placement is and has been "unlawful," "unfair," and "fraudulent" in violation of Cal. Bus. & Prof. Code §

17200 *et seq.*, which prohibits unfair competition defined as any "unlawful, unfair or fraudulent business act or practice ("Unfair Competition Law" or "UCL").

404.    Safeway placed into the stream of commerce and intended for ultimate sale to consumers dairy products labeled as – and represented to be – "organic", and such placement is and has been contrary to numerous provisions of federal and California law, including but not limited to the following provisions of the National Organic Program (Section 6517 of the Organic Foods Production Act of 1990), 7 U.S.C. Sec. 6501 et seq. and its implementing regulations(7 U.S.C. §§ 6504, 6505, 6506, 6509(e)(2), 6509(f), and 6511, and 7 C.F.R. §§ 205.236(a)(2), 205.236(b)(1), 205.237(a), 205.238(a)(3), 205.239(a)(2), and 205.239(a)(3)), the California Organic Products Act of 2003 (Cal. Health And Safety Code, §§110820, 110890 and 110956 and Cal. Food and Agricultural Code, §§46002, 46014.2(b), 46020, 46028), and the provisions of Cal. Food and Agricultural Code, §§36061 and 36062.  Additionally, California's False Advertising Law, California Business and Professions Code §§ 17500, *et seq.* ("FAL") makes it unlawful, in connection with the sale of goods or services, to make or disseminate "any statement, . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

405.    Plaintiffs and the members of the Class are purchasers, consumers or otherwise within the class of persons that the UCL was intended to protect.

406.    Safeway is a seller or other person to whom the UCL applies.

407.    Safeway, with the intent to dispose of its "organic" milk or milk products, made statements in its advertisements and labels concerning those milk or milk products that were untrue or misleading and which Safeway knew or in the exercise of reasonable care should have known were untrue or misleading, including:

a.     labeled its products as "organic" when, in fact, they were not;

b.     advertised and represented that its products were "organic" when they were not;

c.     misrepresented the manner in which the dairy cows producing the products were raised and fed; and

d.     suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

408.    Safeway's advertisements concerning its "organic" milk or milk products were deceptive and/or likely to deceive.

409.    Safeway's misrepresentations that its milk or milk products were "organic" were material.

410.    Safeway used or employed the unlawful, unfair, and/or deceptive practices described above with the intent that Plaintiffs and the members of the Class would rely thereupon.

411.    Plaintiffs and the members of the Class did rely (or should be presumed to have relied) thereon.

412.    As a result of Safeway's unlawful, unfair, deceptive, untrue, or misleading advertising and other conduct, Plaintiffs and the members of the Class have suffered injury in fact and have lost money or property, including having paid "organic" prices for non-organic milk and milk products.

413.    Safeway's conduct violates the California Business and Professions Code, §§17200, *et seq.*

414.    Because Safeway is headquartered in California, and because it made decisions and otherwise acted within the state of California regarding the advertisement, marketing and sale of its "organic" milk and milk products, the California unfair competition laws should apply nationwide to this claim against Safeway.

415.    Plaintiffs, on their own behalf and on behalf of the Class, request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair competition, as provided in Cal. Bus. & Prof. Code § 17203.

**COUNT 23:  Violation of the California Consumer Legal Remedies Act, California Civil Code §§1750, *et seq.*
(Brought on behalf of the Safeway Purchaser Class)**

416.    Plaintiffs Benya, Bowen, Coselli, Fincham, Kueck, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Class.

417.    Plaintiffs bring this claim on behalf of themselves and all other purchasers of Safeway's "organic" milk or milk products.

418.    The California Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), was enacted to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.  The CLRA is to be liberally construed and applied to promote those purposes.

419.     Plaintiffs and the members of the Class are purchasers, consumers or other persons to whom the CLRA is intended to apply.

420.     The milk and milk products produced by Aurora and retailed by Safeway are goods or products to which the CLRA applies.

421.     Safeway is a seller or other person to whom the CLRA applies.

422.     Safeway engaged in unfair or deceptive acts or practices in transactions which resulted in the sale of its  "organic" milk or milk products including, but not limited to:

a.      labeled its products as "organic" when, in fact, they were not;

b.      advertised and represented its products as "organic" when they were not;

c.      misrepresented the manner in which the dairy cows producing such products were raised and fed; and

d.      suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

423.     Theses policies, acts, and practices violated and continue to violate the CLRA in at least the following respects:

a.      In violation of §1770(5) of the CLRA, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ;"

b.      In violation of §1770(7) of the CLRA, "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and

c.      In violation of §1770(9) of the CLRA, "[a]dvertising goods or services with intent not to sell them as advertised."

424.    Safeway undertook the unfair or deceptive acts or practices with the intent that Plaintiff and the other members of the Class would rely upon such acts or practices in purchasing Safeway's "organic" milk or milk products.

425.    In purchasing Safeway's "organic" milk or milk products, Plaintiff and the other members of the Class relied (or should be presumed to have relied) upon Safeway's representation that the milk or milk products were, in fact, organic.

426.    Because Safeway is headquartered in California, and because it made decisions and otherwise acted within the state of California regarding the advertisement, marketing and sale of its "organic" milk and milk products, the CLRA should apply nationwide to this claim against Safeway.

427.    As a result of Safeway's wrongful conduct, Plaintiffs and the members of the Class sustained damages by paying a higher price for milk labeled as organic that was not organic.

428.    Safeway's conduct was oppressive, fraudulent or malicious and intended to cause harm to Plaintiff and the other members of the Class such that an award of punitive damages is appropriate.

429.    Safeway was timely notified by consumers of its involvement in transactions relating to the sale of milk and/or milk products labeled as "organic," but which in fact were not organic, as well as the classwide damage sustained by consumers as a result of such involvement.  Safeway has not corrected or otherwise rectified this situation prior to the filing of this Complaint.

## COUNT 24:  Violation of State Consumer Protection Laws
### (Brought on behalf of the Safeway Consumer Protection Class)

430.    Plaintiffs Benya, Bowen, Coselli, Fincham, Kueck, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Safeway on behalf of: (a) all other persons who purchased milk and/or milk products produced by Aurora and retailed by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

431.    The consumer protection laws of the state in which each Plaintiff and member of the Safeway Purchaser Subclass purchased the "organic" milk and/or milk products produced by Aurora and retailed by Safeway declare that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

432.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

a.      Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

b.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

c.      California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et*

*seq.*;

f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.    Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.    Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.    Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.    New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.    New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.    North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.    North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.    Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.    Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.    Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

433.    Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the "organic" milk and/or milk products produced by Aurora and retailed by Safeway.

434.    Safeway is a seller or other person to whom the consumer protection laws apply.

435.    The milk and/or milk products produced by Aurora and retailed by Safeway constitute products to which these consumer protection laws apply.

436.    In the conduct of trade or commerce regarding its production, marketing and sale of "organic" milk and/or milk products, Safeway engaged in one or more unfair or deceptive acts or practices, including but not limited to:

a)    labeled its products as "organic" when, in fact, they were not;

b)    advertised and represented its products as "organic" when they were not;

c)    Safeway  misrepresented the manner in which dairy cows producing the products were raised and fed; and

d)    suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

437.    Safeway's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

438.    Safeway knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

439.    Safeway used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

440.    Plaintiffs and the other members of the Class did rely on such misrepresentations.

441.    Each Plaintiff and member of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Safeway that were falsely represented for an amount higher than conventional milk and/or milk products.

442.    As a result of Safeway's wrongful conduct, Plaintiffs and the members of the Class were damaged.

443.     Safeway's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 25:  Breach of Express Warranty
### (Brought on behalf of the Safeway Purchaser Class)

444.     Plaintiffs Benya, Bowen, Coselli, Fincham, Kueck, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Safeway on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

445.     Safeway's representation that the milk and/or milk products are "organic" is an affirmation by Safeway that the milk and/or milk products comply with applicable standards, statutes and regulations, including USDA requirements.

446.     Safeway's statements and representations about the environment in which the cows producing the milk are raised and fed also are affirmations by Safeway that the milk and/or milk products complies with such statements and representations.

447.     Safeway's other statements and representations about the "organic" status of its milk and/or milk products also are affirmations by Safeway that the milk and/or milk products comply with such statements and representations.

448.     Safeway's representations are made to Plaintiffs and the members of the Class at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

449.     In addition or in the alternative, Safeway's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the "organic" products at a higher price than he/she would otherwise have paid for a conventional milk and/or milk products.

450.     By its statements and representations, Safeway expressly warranted that the milk and/or milk products complied with applicable standards, statutes and regulations, including USDA requirements and complied with the other descriptions Safeway made about the products and the manner in which they were produced.

451.     The milk and/or milk products produced by Aurora and retailed by Safeway did not, in fact, comply with applicable standards, statutes and regulations, including USDA requirements, or the other descriptions Safeway made about the products and the manner in which they were produced.

452.     At all times relevant to this action, Safeway falsely represented its milk and/or milk products as "organic" when they were not produced in compliance with applicable standards, statutes and regulations, including USDA requirements, and falsely represented the other descriptions about the product and the manner in which the product was produced in breach of these express warranties.

453.     As a result of Safeway's conduct, Plaintiffs and the members of the Class were damaged.

454.     Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Safeway on notice thereof.

## COUNT 26:  Breach of Implied Warranty of Merchantability
### (Brought on behalf of the Safeway Purchaser Class)

455.    Plaintiffs Benya, Bowen, Coselli, Fincham, Kueck, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Safeway on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

456.    Plaintiffs and the members of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Safeway for the ordinary purposes of organic milk or milk products, that is, that it was, in fact, organic.

457.    By representing that the milk and/or milk products were "organic," Safeway impliedly warranted that such products were, in fact, organic and complied with applicable standards, statutes and regulations, including USDA requirements.

458.    By representing the environment in which the cows producing such milk and/or milk products were raised and fed, Safeway impliedly warranted that the milk and/or milk products were produced by cows raised and fed in such an environment.

459.    Safeway held itself out to, and did, possess expertise, skill and knowledge superior to consumers including Plaintiffs and the members of the Class, who had a right to rely thereon.

460.    At all times material to this action, the milk and milk products produced by Aurora and retailed by Safeway were not, in fact, organic and were not produced by cows raised and fed in the environment represented.

461.    As such, the milk and milk products produced by Aurora and retailed by Safeway were not fit for their ordinary purpose and could not pass without objection in the trade.

462.    As a result, Plaintiffs and the members of the Class were damaged.

463.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Safeway on notice thereof.

### COUNT 27:  Negligence Per Se
### (Brought on behalf of the Safeway Negligence Per Se Class)

464.    Plaintiffs Benya, Bowen, Coselli, Fincham, Kueck, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Safeway on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

465.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which milk or milk products will be sold as organically produced shall be raised and handled in accordance with OFPA for not less than the twelve month period immediately prior to the sale of such milk or milk products.

466.    The OFPA, including 7 U.S.C. § 6509(e)(2), is intended to protect purchasers of organic milk or milk products, including Plaintiff and members of the Class.

467.     Safeway owed a duty to purchasers of its "organic" milk or milk products – including Plaintiff and the Class – not to produce, market and/or sell its milk or milk products as "organic" unless such products were produced in accordance with OFPA and other applicable laws.

468.     Through at least August 2007, Safeway has marketed, represented and sold its milk or milk products as "organic," when, in fact, they were not.  Based on this conduct, and its other conduct, as alleged above, Safeway breached its duty to Plaintiffs and the members of the Class.

469.     As a direct and proximate result of Safeway's conduct, Plaintiff and members of the Class have suffered damages in an amount to be proven at trial.

470.     Safeway's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

### COUNT 28:  Negligent Misrepresentation
### (Brought on behalf of the Safeway Purchaser Class)

471.     Plaintiffs Benya, Bowen, Coselli, Fincham, Kueck, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Safeway on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

472.     Safeway owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its "organic" milk and milk products.

473.     Safeway negligently and recklessly made such representations and omitted to disclose material facts to potential customers and the general public through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Safeway or at its direction.

474.     Safeway's representations and omissions regarding its "organic" milk and milk products were material.

475.     Safeway's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

476.     Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Safeway made regarding its "organic" milk and milk products.

477.     Safeway knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Safeway.

478.     Safeway's representations and omissions regarding its "organic" milk and milk products were false and misleading as alleged above.

479.     As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

480.     As a result of Safeway's conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

## COUNT 29:  Unjust Enrichment
### (Brought on behalf of the Safeway Unjust Enrichment Class)

481.    Plaintiffs Benya, Bowen, Kueck and Fincham  incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Safeway on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

482.    Safeway markets and promotes organic production as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk and/or milk products.

483.    Safeway charges, and consumers pay, a higher retail price for the "organic" milk and/or milk products produced by Aurora and retailed by Safeway than the price of conventionally produced milk and/or milk products.

484.    Safeway received a benefit in the form of the premium price charged by Safeway and paid by Plaintiffs and the members of the Class for the "organic" milk and milk products produced by Aurora and retailed by Safeway.

485.    Under the circumstances, it would be inequitable for Safeway to retain the above-described benefit.

486.    As a result of Safeway's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Safeway's unjust enrichment.

E.      **Counts Against Target**

COUNT 30:  Violation of the Minn. Uniform Deceptive Trade Practices Act,
Minn. Stat. §325D.43-.48
(Brought on behalf of Target Purchaser Class)

487.    Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Class.

488.    Plaintiffs bring this claim on behalf of themselves and all other purchasers of Target's "organic" milk and/or milk products.

489.    The Minnesota Uniform Deceptive Trade Practices Act, Chapter 325D of the Minnesota Statutes, prohibits the use of deceptive trade practices in the course of business.

490.    Plaintiffs and the members of the Class are consumers, purchasers or other persons to which the Minnesota Act applies.

491.    Target is a seller or other person to whom the Minnesota Act applies.

492.    The milk and milk products produced by Aurora and retailed by Target are products to which the Minnesota Act applies.

493.    Target in the course of its business engaged in one or more acts or practices constituting "deceptive trade practices" pursuant to the Minn. Stat. § 325D.43-.48 including, but not limited to:

a.      Minn. Stat. § 325D.43(2): "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;"

b.      Minn. Stat. § 325D.43(5):  "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they

117

do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;"

    c.    Minn. Stat. § 325D.43(7):  "represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and

    d.    Minn. Stat. § 325D.43(13):  "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

494.    Target engaged in not less than the following unfair or deceptive acts or practices in the conduct of the trade or commerce of its "organic" milk or milk products:

    a.    labeled its products as "organic" when, in fact, they were not;

    b.    advertised and represented its products to be "organic" when they were not;

    c.    misrepresented the manner in which the dairy cows producing such products were raised and fed; and

    d.    suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

495.    Target's representations and omissions were deceptive or likely to deceive.

496.    As a result of Target's unfair or deceptive acts or practices, Plaintiff and members of the Class were damaged.

497.    Because Target is headquartered in Minnesota, made decisions and took other actions in the state of Minnesota regarding its advertisement, marketing and sale of its "organic"

milk and milk products, the Minnesota consumer protection laws should apply nationwide to this claim against Target.

498.    As a result of Target's wrongful conduct, Plaintiffs and the members of the Class have sustained damages by paying a higher price for milk labeled as organic that was not organic.

499.    Target's conduct was oppressive, fraudulent or malicious and intended to cause harm to Plaintiff and the other members of the Class such that an award of punitive damages is appropriate.

### COUNT 31:  Violation of State Consumer Protection Laws
### (Brought on behalf of the Target Consumer Protection Class)

500.    Plaintiffs Cruz, Hudspeth, Robinson and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Target on behalf of: (a) all other persons who purchased milk and/or milk products produced by Aurora and retailed by Target in the same state as Plaintiff purchased such product; and (b) all other persons who purchased such products in states having similar consumer protection laws.

501.    The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the "organic" milk and/or milk products produced by Aurora and retailed by Target declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

502.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices

119

and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

      a.      Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

      b.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

      c.      California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

      d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

      e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

      f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

      g.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

      h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

      i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

      j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

      k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

      l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

      m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

503.     Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the "organic" milk and/or milk products produced by Aurora and retailed by Target.

504.     The milk and/or milk products produced by Aurora and retailed by Target constitute products to which these consumer protection laws apply.

505.     Target is a seller or other person to whom the consumer protection laws apply.

506.     In the conduct of trade or commerce regarding its production, marketing and sale of "organic" milk and/or milk products, Target engaged in one or more unfair or deceptive acts or practices, including, but not limited to:

a)      labeled its products as "organic" when, in fact, they were not;

b)      advertised and represented its products as "organic" when they were not;

c)      misrepresented the manner in which dairy cows producing the products were raised and fed; and

d)      suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

507.     Target's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

508.     Target knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

509.     Target used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

510.     Plaintiffs and the other members of the Class did rely on such misrepresentations.

511.     Each Plaintiff and member of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Target that were falsely represented for an amount higher than conventional milk and/or milk products.

512.     As a result of Target's conduct, Plaintiffs and the members of the Class were damaged.

513.     Target's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

**COUNT 32:  Breach of Express Warranty**
**(Brought on behalf of the Target Purchaser Class)**

514.     Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Target on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Target in the same state as Plaintiff purchased such product; and (b) all other persons who purchased such product in states having similar laws regarding express warranty.

515.     Target's representation that the milk and/or milk products are "organic" is an affirmation by Target that the milk and/or milk products comply with applicable standards, statutes and regulations, including USDA requirements.

124

516.    Target's statements and representations about the environment in which the cows producing the milk are raised and fed also are affirmations by Target that the milk and/or milk products comply with such statements and representations.

517.    Target's other statements and representations about the "organic" status of its milk and/or milk products also are affirmations by Target that the milk and/or milk products comply with such statements and representations.

518.    Target's representations are made to Plaintiffs and the members of the Class at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

519.    In addition or in the alternative, Target's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the "organic" products at a higher price than he/she would otherwise have paid for conventional milk or milk products.

520.    By its statements and representations, Target expressly warranted that the milk and/or milk products comply with applicable standards, statutes and regulations, including USDA requirements and complied with the other descriptions Target made about the products and the manner in which they were produced.

521.    The milk and/or milk products produced by Aurora and retailed by Target did not, in fact, comply with applicable standards, statutes and regulations, including USDA requirements, or the other descriptions Target made about the products and the manner in which they were produced.

522.    At all times relevant to this action, Target falsely represented its milk and/or milk products as "organic" when they were not produced in compliance with applicable standards, statutes and regulations, including USDA requirements, and falsely represented the other descriptions about the products and the manner in which they were produced in breach of these express warranties.

523.    As a result of Target's conduct, Plaintiffs and the members of the Class were damaged.

524.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Target on notice thereof.

### COUNT 33:  Breach of Implied Warranty of Merchantability
### (Brought on behalf of the Target Purchaser Class)

525.    Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Target on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Target in the same state as Plaintiff purchased such product; and (b) all other persons who purchased such product in states having similar laws regarding implied warranty.

526.    Plaintiffs and the members of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Target for the ordinary purposes of organic milk or milk products -- that it was, in fact, organic.

527.    By representing that the milk and/or milk products were "organic," Target impliedly warranted that such products were, in fact, organic and complied with applicable standards, statutes and regulations, including USDA requirements.

528.    By representing the environment in which the cows producing such milk and/or milk products were raised and fed, Target impliedly warranted that the milk and/or milk product was produced by cows raised and fed in such environment.

529.    Target held itself out to, and did, possess expertise, skill and knowledge superior to consumers including Plaintiffs and the members of the Class, who had a right to rely thereon.

530.    At all times material to this action, the milk and/or milk products produced by Aurora and retailed by Target were not, in fact, organic and were not produced by cows raised and fed in the environment represented.

531.    As such, the milk and milk products produced by Aurora and retailed by Target were not fit for their ordinary purpose and could not pass without objection in the trade.

532.    As a result, Plaintiffs and the members of the Class were damaged.

533.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Target on notice thereof.

**COUNT 34:  Negligence Per Se**
**(Brought on behalf of the Target Negligence Per Se Class)**

534.    Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Target on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Target in the same state as Plaintiff purchased such

products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

535.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which milk or milk products will be sold as organically produced shall be raised and handled in accordance with OFPA for not less than the twelve month period immediately prior to the sale of such milk or milk products.

536.    The OFPA, including U.S.C. § 6509(e)(2), is intended to protect purchasers of organic milk and/or milk products, including Plaintiff and members of the Class.

537.    Target owed a duty to purchasers of its "organic" milk or milk products – including Plaintiff and the Class – not to produce, market and/or sell its milk or milk products as "organic" unless such products were produced in accordance with OFPA and other applicable laws.

538.    Target has marketed, represented and sold its milk or milk products as "organic," when, in fact, they were not.  Based on this conduct, and its other conduct, as alleged above, Target breached its duty to Plaintiffs and the members of the Class.

539.    As a result of Target's conduct, Plaintiff and members of the Class were damaged.

540.    Target's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

### COUNT 35:  Negligent Misrepresentation
### (Brought on behalf of the Target Purchaser Class)

541.    Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative

to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Target on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Target in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

542.    Target owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its "organic" milk and milk products.

543.    Target negligently and recklessly made such representations and omitted to disclose material facts to potential customers and the general public through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Target or at its direction.

544.    Target's representations and omissions regarding its "organic" milk and/or milk products were material.

545.    Target's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

546.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Target made regarding its "organic" milk and milk products.

547.    Target knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Target.

548.    Target's representations and omissions regarding its "organic" milk and milk products were false and misleading as alleged above.

549.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

550.    As a result of Target's conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

### COUNT 36:  Unjust Enrichment
### (Brought on behalf of the Target Unjust Enrichment Class)

551.    Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Target on behalf of: (a) all other persons  who purchased "organic" milk and/or milk products produced by Aurora and retailed by Target in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

552.    Target markets and promotes organic production as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk and/or milk products.

553.    Target charges, and consumers pay, a higher retail price for the "organic" milk and/or milk products produced by Aurora and retailed by Target than the price of conventionally produced milk and/or milk products.

554.    Target received a benefit in the form of the premium price charged by Safeway and paid by Plaintiffs and the members of the Class for the "organic" milk and milk products produced by Aurora and retailed by Target.

555.    Under the circumstances, it would be inequitable for Target to retain the above-described benefit.

556.    As a result of Target's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Target's unjust enrichment.

**F.    Counts Against Wal-Mart**

**COUNT 37:  Violation of the Arkansas Consumer Protection Act,**
**Ark. Rev. Stat. §4-88-101 et seq.**
**(Brought on behalf of the Wal-Mart Purchaser Class)**

557.    Plaintiffs Bowen, Brice Leigh, Clark, Meacham and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Wal-Mart Purchaser Class.

558.    Plaintiffs bring this claim on behalf of themselves and all other purchasers of Wal-Mart's "organic" milk or milk products.

559.    The Arkansas Deceptive Trade Practices Act, Title 4, Chapter 88 of the Arkansas Code, declares that deceptive and unconscionable trade practices are unlawful and prohibited.

560.    Plaintiffs and the members of the Class are consumers, purchasers or other persons to whom the Arkansas Deceptive Trade Practices Act applies.

561.    The milk and/or milk products produced by Aurora and retailed by Wal-Mart are products to which the Arkansas Act applies.

562.    Wal-Mart is a seller or other person to which the Arkansas Act applies.

563.    Wal-Mart, in connection with the sale or advertisement of its  "organic" milk or milk products, utilized the following unlawful acts, engaged in not less than the following unconscionable, false or deceptive acts or practices, or knowingly made the following false representations:

a.    labeled its products as "organic" when, in fact, they were not;

b.    advertised and represented its products as "organic" when they were not;

c.    misrepresented the manner in which the dairy cows producing the products were raised and fed; and

d.    suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

564.    Wal-Mart used or employed the unlawful practices described above with the intent that Plaintiff and the other members of the Class would rely upon such practices.

565.    Because Wal-Mart is headquartered in Arkansas, made decisions and engaged in other acts regarding the marketing and sale of its "organic" milk and milk products in the state of Arkansas, the Arkansas consumer protection laws should apply nationwide to this claim against Wal-Mart.

566.    As a result of Wal-Mart's wrongful conduct, Plaintiffs, and members of the Class have sustained damages by paying a higher price for milk labeled as organic that was not organic.

567.    Wal-Mart's course of conduct was intentionally pursued for the purpose of causing injury or damage or Wal-Mart knew or should have known that its conduct would

naturally and probably result in injury or damage and Wal-Mart continued the conduct with malice or in reckless disregard of the consequences such that an award of punitive damages is appropriate.

### COUNT 38:  Violation of State Consumer Protection Laws
### (Brought on behalf of the Wal-Mart Consumer Protection Class)

568.    Plaintiffs Bowen, Brice Leigh, Clark Meacham, and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wal-Mart on behalf of: (a) all other persons who purchased milk and/or milk products produced by Aurora and retailed by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

569.    The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

570.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

       a.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

       b.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

       c.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

571.    Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart.

572.    The milk and/or milk products produced by Aurora and retailed by Wal-Mart constitute products to which these consumer protection laws apply.

573.    Wal-Mart is a seller or other person to whom these consumer protection laws apply.

574.    In the conduct of trade or commerce regarding its production, marketing and sale of "organic" milk and/or milk products, Wal-Mart engaged in one or more unfair or deceptive acts or practices including, but not limited to:

     a)      labeled its products as "organic" when, in fact, they were not;

     b)      advertised and represented its products as "organic" when they were not;

     c)      misrepresented the manner in which dairy cows producing the products were raised and fed; and

     d)      suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

575.    Wal-Mart's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

576.    Wal-Mart knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

577.    Wal-Mart used or employed such deceptive and unlawful acts or practices with the intent that Plaintiffs and the members of the Class rely thereon.

578.    Plaintiffs and the members of the Class did so rely (and should be presumed to rely).

579.     Each Plaintiff and member of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart that was falsely represented for an amount higher than conventional milk and/or milk products.

580.     As a result of Wal-Mart's conduct, Plaintiffs and the members of the Class were damaged.

581.     Wal-Mart's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 39:  Breach of Express Warranty
### (Brought on behalf of the Wal-Mart Purchaser Class)

582.     Plaintiffs Bowen, Brice Leigh, Clark, Meacham and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wal-Mart on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

583.     Wal-Mart's representation that the milk and/or milk products are "organic" is an affirmation by Wal-Mart that the milk and/or milk products comply with applicable standards, statutes and regulations, including USDA requirements.

584.     Wal-Mart's statements and representations about the environment in which the cows producing the milk are raised and fed also are affirmations by Wal-Mart that the milk and/or milk products comply with such statements and representations.

585.    Wal-Mart's other statements and representations about the "organic" status of its milk and/or milk products also are affirmations by Wal-Mart that the milk and/or milk products comply with such statements and representations.

586.    Wal-Mart's representations are made to Plaintiffs and the members of the Class at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

587.    In addition or in the alternative, Wal-Mart's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the "organic" product at a higher price than he/she would otherwise have paid for a conventional milk or milk product.

588.    By its statements and representations, Wal-Mart expressly warranted that the milk and milk product complied with applicable standards, statutes and regulations, including USDA requirements and complied with the other descriptions Wal-Mart made about the products and the manner in which they were produced.

589.    The milk and/or milk products produced by Aurora and retailed by Wal-Mart did not, in fact, comply with applicable standards, statutes and regulations, including USDA requirements, or the other descriptions Wal-Mart made about the products and the manner in which they were produced.

590.    At all times relevant to this action, Wal-Mart falsely represented its milk and/or milk products as "organic" when they were not produced in compliance with applicable standards, statutes and regulations, including USDA requirements, and falsely represented the

other descriptions about the products and the manner in which they were produced in breach of these express warranties.

591.    As a result of Wal-Mart's conduct, Plaintiffs and the members of the Class were damaged.

592.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Wal-Mart on notice thereof.

**COUNT 40:  Breach of Implied Warranty of Merchantability**
**(Brought on behalf of the Wal-Mart Purchaser Class)**

593.    Plaintiffs Bowen, Brice Leigh, Clark, Meacham and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wal-Mart on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

594.    Plaintiffs and the members of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart for the ordinary purposes of organic milk or milk products -- that it was, in fact, organic.

595.    By representing that the milk and/or milk products were "organic," Wal-Mart impliedly warranted that such products were, in fact, organic and complied with applicable standards, statutes and regulations, including USDA requirements.

596.     By representing the environment in which the cows producing such milk and/or milk products were raised and feed, Wal-Mart impliedly warranted that the milk and/or milk products were produced by cows raised and fed in such an environment.

597.     Wal-Mart held itself out to, and did, possess expertise, skill and knowledge superior to consumers including Plaintiffs and the members of the Class, who had a right to rely thereon.

598.     At all times material to this action, the milk and milk products produced by Aurora and retailed by Wal-Mart were not, in fact, organic and were not produced by cows raised and fed in the environment represented.

599.     As such, the milk and milk products produced by Aurora and retailed by Wal-Mart were not fit for their ordinary purpose and could not pass without objection in the trade.

600.     As a result, Plaintiffs and the members of the Class were damaged.

601.     Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Wal-Mart on notice thereof.

### COUNT 41: Negligence Per Se
### (Brought on behalf of the Wal-Mart Negligence Per Se Class)

602.     Plaintiffs Bowen and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wal-Mart on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

603.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which milk or milk products will be sold as organically produced shall be raised and handled in accordance with OFPA for not less than the twelve month period immediately prior to the sale of such milk or milk products.

604.    The OFPA, including U.S.C. § 6509(e)(2), is intended to protect purchasers of organic milk or milk products, including Plaintiff and members of the Class.

605.    Wal-Mart owed a duty to purchasers of its "organic" milk or milk products – including Plaintiff and the members of the Class – not to produce, market and/or sell its milk or milk products as "organic" unless such products were produced in accordance with OFPA and other applicable laws.

606.    Though at least October 2007, Wal-Mart marketed, represented and sold its milk or milk products as "organic," when, in fact, they were not.  Based on this conduct, and its other conduct, as alleged above, Wal-Mart breached its duty to Plaintiffs and the members of the Class.

607.    As a result of Wal-Mart's conduct, Plaintiff and the members of the Class have suffered damages in an amount to be proven at trial.

608.    Wal-Mart's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

## COUNT 42:  Negligent Misrepresentation
### (Brought on behalf of the Wal-Mart Purchaser Class)

609.    Plaintiffs Bowen, Brice Leigh, Clark, Meacham and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf

under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wal-Mart on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

610.    Wal-Mart owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its "organic" milk and/or milk products.

611.    Wal-Mart negligently and recklessly made such representations and omitted to disclose material facts to potential customers and the general public through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Wal-Mart or at its direction.

612.    Wal-Mart's representations and omissions regarding its "organic" milk and milk products were material.

613.    Wal-Mart's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

614.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Wal-Mart made regarding its "organic" milk and milk products.

615.    Wal-Mart knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Wal-Mart.

616.    Wal-Mart's representations and omissions regarding its "organic" milk and milk products were false and misleading as alleged above.

617.     As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

618.     As a result of Defendants' conduct, Plaintiffs and the members of the Class were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

## COUNT 43:  Unjust Enrichment
### (Brought on behalf of the Wal-Mart Unjust Enrichment Class)

619.     Plaintiffs Bowen, Brice Leigh, Clark and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wal-Mart on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

620.     Wal-Mart markets and promotes organic production as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk and/or milk products.

621.     Wal-Mart charges, and consumers pay, a higher retail price for the "organic" milk and/or milk products produced by Aurora and retailed by Wal-Mart than the price of conventionally produced milk and/or milk products.

622.     Wal-Mart received a benefit in the form of the premium price charged by Wal-Mart and paid by Plaintiffs and the members of the Class for the "organic" milk and milk products produced by Aurora and retailed by Wal-Mart.

144

623.     Under the circumstances, it would be inequitable for Wal-Mart to retain the above-described benefit.

624.     As a result of Wal-Mart's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Wal-Mart's unjust enrichment.

**G.     Counts Against Whole Foods as successor in liability to Wild Oats and/or Wild Oats**

**COUNT 44 Violation of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. §6-1-101 *et seq*.**
**(Brought on behalf of the Wild Oats Purchaser Class)**

625.     Plaintiffs Benya, Ross, Snell, Subashe, Theodore and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, these Plaintiffs bring this Count on behalf of themselves and all other persons who purchased "organic" milk and/or milk products produced by Aurora and sold by Wild Oats under the Wild Oats brand nationwide under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

626.     Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1), Plaintiffs are:  (a) actual or potential consumers of Aurora's goods and were injured as a result of the deceptive trade practices described herein; (b) successors in interest to an actual consumer who purchased Aurora's goods; or (c) were injured by the deceptive trade practices described herein in the course of Aurora's business.

627.     Wild Oats is a "person" as defined by the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-102(6).

628.     Wild Oats in the course of its business engaged in one or more acts constituting "deceptive trade practice[s]" pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1), including:

a.      Colo. Rev. Stat. § 6-1-105(1)(e):  "Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status,, affiliation, or connection of a person therewith;"

b.      Colo. Rev. Stat. § 6-1-105(1)(g):  "Represent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;"

c.      Colo. Rev. Stat. §6-1-105(1)(i): Advertises goods, services or property with the intent not to sell them as advertised.

d.      Colo. Rev. Stat. § 6-1-105(1)(u):  "Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclosure such information was intended to induce the consumer to enter into a transaction."

629.    Wild Oats' deceptive trade practices include, among other things:

a.      asserting that its products are "organic" when, in fact, they were not;

b.      advertising and representing that its products are "organic" when they are not;

c.      misrepresenting the manner in which the dairy cows producing the products were raised and fed; and

d.      suppressing or omitting materials facts regarding the production of its "organic" milk or milk products, specifically that the milk or milk products are not organic, that the dairy cows were not raised at pasture, that its milk or milk products are

industrially produced, and that its purportedly "organic" milk or milk products failed to comply with organic production laws, standards, and regulations.

630.    Wild Oats' misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

631.    Because Wild Oats was headquartered in Colorado, made decisions and engaged in other acts in Colorado regarding the labeling, advertisement and sale of Wild Oats' "organic" milk and milk products, the Colorado Consumer Protection Act should apply nationwide to this claim against Wild Oats.

632.    Wild Oats' deceptive trade practices significantly impacted the public, including Plaintiffs and the other members of the Class, as actual or potential consumers of Wild Oats' goods – namely its "organic" milk and/or milk products.

633.    As a direct and proximate result of Wild Oats' use or employment of the deceptive trade practices described above, Plaintiffs and the other members of the Class were damaged.

634.    Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiffs and the other members of the Class are entitled to the relief set forth below, as appropriate, including, but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this action.

635.    As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-113(2)(b)(2.3), Wild Oats has acted fraudulently, willfully, knowingly, or intentionally with respect to its injury  causing conduct, such that an award of punitive damages is appropriate.

## COUNT 45:  Violation of State Consumer Protection Laws
### (Brought on behalf of the Wild Oats Consumer Protection Class)

636.    Plaintiffs Benya, Ross, Subashe, Theodore and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wild Oats on behalf of: (a) all other persons who purchased milk and/or milk products produced by Aurora and retailed by Wild Oats in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

637.    Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats.

638.    The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the "organic" milk and/or milk products declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

639.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

    b.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

    c.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

149

p.        Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.        Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.        Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.        Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.        Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.        Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.        New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.        New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.        New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.        New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.        North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.        North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.        Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.        Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd. Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff. Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg. South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii. Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj. Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk. Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo. Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

640. The milk and/or milk products produced by Aurora and retailed by Wild Oats constitute products to which these consumer protection laws apply.

151

641.    In the conduct of trade or commerce regarding its production, marketing and sale of "organic" milk and/or milk products, Wild Oats engaged in one or more unfair or deceptive acts or practices including, but not limited to:

      a.    labeled its products as "organic" when, in fact, they were not;

      b.    advertised and represented its products as "organic" when they were not;

      c.    misrepresented the manner in which dairy cows producing the products were raised and fed; and

      d.    suppressed or omitted material facts regarding the production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

642.    Wild Oats' labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

643.    Wild Oats knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

644.    Wild Oats used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and the members of the Class rely thereon.

645.    Plaintiffs and the other members of the Class did so rely (and should be presumed to rely).

646.    Each Plaintiff and member of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats that were falsely represented for an amount higher than conventional milk and/or milk products.

647.    As a result of Wild Oats' conduct, Plaintiffs and the members of the Class were damaged.

648.    Wild Oats' conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

**COUNT 46:  Breach of Express Warranty**
**(Brought on behalf of the Wild Oats Purchaser Class)**

649.    Plaintiffs Benya, Ross, Snell, Subashe, Theodore and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wild Oats on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

650.    Wild Oats' representation that the milk and/or milk products are "organic" is an affirmation by Wild Oats that the milk and/or milk products comply with applicable standards, statutes and regulations, including USDA requirements.

651.    Wild Oats' statements and representations about the environment in which the cows producing the milk are raised and fed also are affirmations by Wild Oats that the milk and milk products comply with such statements and representations.

652.    Wild Oats' other statements and representations about the "organic" status of its milk and/or milk products also are affirmations by Wild Oats that the milk and/or milk products comply with such statements and representations.

653.     Wild Oats' representations are made to Plaintiffs and the members of the Class at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

654.     In addition or in the alternative, Wild Oats' representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the "organic" products at a higher price than he/she would otherwise have paid for conventional milk and/or milk products.

655.     By its statements and representations, Wild Oats expressly warranted that the milk and/or milk products comply with applicable standards, statutes and regulations, including USDA requirements and complied with the other descriptions Wild Oats made about the products and the manner in which they were produced.

656.     The milk and/or milk products produced by Aurora and retailed by Wild Oats did not, in fact, comply with applicable standards, statutes and regulations, including USDA requirements, or the other descriptions Wild Oats made about the products and the manner in which they were produced.

657.     At all times relevant to this action, Wild Oats falsely represented its milk and/or milk products as "organic" when they were not produced in compliance with applicable standards, statutes and regulations, including USDA requirements, and falsely represented the other descriptions about the products and the manner in which they were produced in breach of these express warranties.

658.     As a result of Wild Oats' conduct, Plaintiffs and the members of the Class were damaged.

659.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Wild Oats on notice thereof.

### COUNT 47:  Breach of Implied Warranty of Merchantability
### (Brought on behalf of the Wild Oats Purchaser Class)

660.    Plaintiffs Benya, Ross, Snell, Subashe, Theodore and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold at Wild Oats on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

661.    Plaintiffs and the members of the Class purchased "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats for the ordinary purposes of organic milk or milk products -- that it was, in fact, organic.

662.    By representing that the milk and/or milk products were "organic," Wild Oats impliedly warranted that such products were, in fact, organic and complied with applicable standards, statutes and regulations, including USDA requirements.

663.    By representing the environment in which the cows producing such milk and/or milk products were raised and fed, Wild Oats impliedly warranted that the milk and/or milk products were produced by cows raised and fed in such an environment.

664.    Wild Oats held itself out to, and did, possess expertise, skill and knowledge superior to consumers including Plaintiffs and the members of the Class, who had a right to rely thereon.

155

665.    At all times material to this action, the milk and milk products produced by Aurora and retailed by Wild Oats were not, in fact, organic and were not produced by cows raised and fed in the environment represented.

666.    As such, the milk and milk products produced by Aurora and retailed by Wild Oats were not fit for their ordinary purpose and could not pass without objection in the trade.

667.    As a result, Plaintiffs and the members of the Class have been damaged.

668.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Wild Oats on notice thereof.

**COUNT 48:  Negligence Per Se**
**(Brought on behalf of the Wild Oats Negligence Per Se Class)**

669.    Plaintiffs Benya, Snell, Subashe, Theodore and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above**,** each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wild Oats on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

670.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which milk or milk products will be sold as organically produced shall be raised and handled in accordance with OFPA for not less than the twelve month period immediately prior to the sale of such milk or milk products.

671.    The OFPA, including U.S.C. § 6509(e)(2), is intended to protect purchasers of organic milk or milk products, including Plaintiff and members of the Class.

672.     Wild Oats owed a duty to purchasers of its "organic" milk or milk products –
including Plaintiff and the Class – not to produce, market and/or sell its milk or milk products as
"organic" unless such products were produced in accordance with OFPA and other applicable
laws.

673.     Wild Oats has marketed, represented and sold its milk or milk products as
"organic," when, in fact, they were not.  Based on this conduct, and its other conduct, as alleged
above, Wild Oats breached its duty to Plaintiffs and the members of the Class.

674.     As a result of Wild Oats' conduct, Plaintiff and the members of the Class have
suffered damages in an amount to be proven at trial.

675.     Wild Oats' conduct was outrageous, done with malice or bad motives, or done
with reckless indifference to the interests of others such that an award of punitive damages is
appropriate.

### COUNT 49:  Negligent Misrepresentation
### (Brought on behalf of the Wild Oats Purchaser Class)

676.     Plaintiffs Benya, Ross, Snell, Subashe, Theodore and Tysseling-Mattiace
incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In
addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count
on his/her own behalf under the law of the state in which he/she purchased milk and/or milk
products produced by Aurora and sold by Wild Oats on behalf of: (a) all other persons who
purchased "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats in
the same state as Plaintiff purchased such products; and (b) all other persons who purchased such
products in states having similar laws regarding negligent misrepresentation.

677.     Wild Oats owed a duty to Plaintiffs and the members of the Class to exercise
reasonable care in making representations about its "organic" milk and milk products.

157

678.    Wild Oats negligently and recklessly made such representations and omitted to disclose material facts to potential customers and the general public through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Wild Oats or at its direction.

679.    Wild Oats' representations and omissions regarding its "organic" milk and milk products were material.

680.    Wild Oats' mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

681.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Wild Oats made regarding its "organic" milk and milk products.

682.    Wild Oats knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Wild Oats.

683.    Wild Oats' representations and omissions regarding its "organic" milk and milk products were false and misleading as alleged above.

684.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

685.    As a result of Wild Oats' conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

**COUNT 50:  Unjust Enrichment**
**(Brought on behalf of the Wild Oats Unjust Enrichment Class)**

686.    Plaintiffs Benya, Ross, Snell, Subashe and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In

addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and sold by Wild Oats on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

687.    Wild Oats markets and promotes organic production as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk and/or milk products.

688.    Wild Oats charges, and consumers pay, a higher retail price for the "organic" milk and/or milk products produced by Aurora and retailed by Wild Oats than the price of conventionally produced milk and/or milk products.

689.    Wild Oats received a benefit in the form of the premium price charged by Wild Oats and paid by Plaintiffs and the members of the Class for the "organic" milk and milk products produced by Aurora and retailed by Wild Oats.

690.    Under the circumstances, it would be inequitable for Wild Oats to retain the above-described benefit.

691.    As a result of Wild Oats unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Wild Oats' unjust enrichment.

**H.      Counts Against QAI**

**COUNT 51:  Violation of the California Unfair Competition Law,
Business and Professions Code, §17200 *et seq.*
(Brought on behalf of the QAI Class)**

159

692.    All Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to Counts above, Plaintiffs assert this Count on their own behalf and on behalf of all Plaintiffs.

693.    QAI approved for placement into the stream of commerce and intended for ultimate sale to consumers dairy products labeled as – and represented to be – "organic" and "certified organic," and such placement is and has been "unlawful," "unfair," and "fraudulent" as meant by Cal. Bus. & Prof. Code § 17200 *et seq*., which prohibits unfair competition defined as any "unlawful, unfair or fraudulent business act or practice."

694.    QAI approved for placement into the stream of commerce and intended for ultimate sale to consumers dairy products labeled as – and represented to be – "organic" and "certified organic," and such placement is and has been contrary to numerous provisions of federal and California law, including, but not limited to, the following provisions of the National Organic Program (Section 6517 of the Organic Foods Production Act of 1990), 7 U.S.C. Sec. 6501 *et seq*. and its implementing regulations (7 U.S.C. §§ 6504, 6505, 6506, 6509(e)(2), 6509(f), and 6511, and 7 C.F.R. §§ 205.236(a)(2), 205.236(b)(1), 205.237(a), 205.238(a)(3), 205.239(a)(2), and 205.239(a)(3)), the California Organic Products Act of 2003 (Cal. Health And Safety Code, §§ 110820, 110890 and 110956 and Cal. Food and Agricultural Code, §§ 46002, 46014.2(b), 46020, 46021), and the provisions of Cal. Food and Agricultural Code, §§ 36061 and 36062.  Additionally, California's False Advertising Law, California Business and Professions Code § 17500 *et seq*. ("FAL") makes it unlawful, in connection with the sale of goods or services, to make or disseminate "any statement, . . .  which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

695.     Plaintiffs and the members of the Class are purchasers, consumers or otherwise within the class of persons that the UCL was intended to protect.

696.     QAI is a person to whom the UCL applies.

697.     QAI, with the intent to enable Aurora and the retailers to dispose of its "organic" milk or milk products, made statements on its website and on milk labels concerning those milk and/or milk products that were untrue or misleading and which QAI knew or in the exercise of reasonable care should have known were untrue or misleading, including:

a.       authorized Aurora and retailers to label their products as "organic" when, in fact, they were not;

b.       advertised and represented that Aurora-produced milk or milk products were "organic," when they were not;

c.       suppressed or omitted material facts regarding the production of Aurora produced "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that Aurora milk or milk products are conventionally produced.

698.     QAI's advertisements concerning its "organic" milk or milk products were deceptive and/or likely to deceive.

699.     QAI's misrepresentations that the milk or milk products produced by Aurora and retailed by the Retailer Defendants were "organic" and "certified organic" were material.

700.     QAI used or employed the unlawful, unfair, and/or deceptive practices described above with the intent that Plaintiffs and the members of the Class would rely thereupon.

701.     Plaintiffs and the members of the Class did rely thereon.

702.     As a result of QAI's unlawful, unfair, deceptive, untrue, or misleading advertising and other conduct, Plaintiffs and the members of the Class have suffered injury in fact and have lost money or property, including having paid "organic" prices for non-organic milk and milk products.

703.     QAI's conduct violates the California Business and Professions Code, §§17200, *et seq*.

704.     Because QAI is headquartered in California, and because it made decisions and otherwise acted within the state of California regarding the advertisement, certification, marketing and sale of "organic" milk and milk products it represented was "Certified Organic by QAI," the California consumer protection laws should apply nationwide to this claim against QAI.

705.     Plaintiffs, on their own behalf and on behalf of the Class, request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair competition, as provided in Cal. Bus. & Prof. Code § 17203.

### COUNT 52:  Violation of the California Consumer Legal Remedies Act, California Civil Code § 1750, *et seq*. (Brought on behalf of the QAI Class)

706.     All Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, Plaintiffs assert this Count on their own behalf and on behalf of the all Plaintiffs.

707.     Plaintiffs bring this claim on behalf of themselves and all other purchasers of "organic" milk or milk products produced by Aurora and certified as organic by QAI.

708.    The California Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"), was enacted to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.  The CLRA is to be liberally construed and applied to promote those purposes.

709.    Plaintiffs and the members of the Class are purchasers, consumers or other persons to whom the CLRA is intended to apply.

710.    The milk and milk products produced by Aurora, certified by QAI and sold to consumers such as Plaintiff and the members of the Class are goods or products to which the CLRA applies.

711.    QAI is a person to whom the CLRA applies.

712.    QAI engaged in unfair or deceptive acts or practices in transactions which resulted in the sale of Aurora produced  "organic" milk or milk products including, but not limited to:

    a.    permitted Aurora and retailers to label their products as "organic" when, in fact, they were not;

    b.    advertised and represented that Aurora and retailers' products were "organic" when they were not;

    c.    suppressed or omitted material facts regarding the production of Aurora produced "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

713.    Theses policies, acts, and practices violated and continue to violate the CLRA in at least the following respects:

a.      In violation of § 1770(5) of the CLRA, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ;"

b.      In violation of § 1770(7) of the CLRA, "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and

c.      In violation of § 1770(9) of the CLRA, "[a]dvertising goods or services with intent not to sell them as advertised."

714.    QAI undertook the unfair or deceptive acts or practices with the intent that Plaintiffs and the members of the Class would rely upon such acts or practices in purchasing Aurora-produced "organic" milk or milk products.

715.    In purchasing Aurora produced "organic" milk or milk products, Plaintiffs and the members of the Class relied upon QAI representation that the milk or milk products were, in fact, organic.

716.    Because QAI is headquartered in California, and because it made decisions and otherwise acted within the state of California regarding the advertisement, certification, marketing and sale of Aurora produced "organic" milk and milk products, the California consumer protection laws should apply nationwide to this claim against QAI.

717.    As a result of QAI's wrongful conduct, Plaintiffs and the members of the Class sustained damages by paying a higher price for milk labeled as organic that was not organic.

718.    QAI's conduct was oppressive, fraudulent or malicious and intended to cause harm to Plaintiffs and the members of the Class such that an award of punitive damages is appropriate.

719.     QAI was timely notified by consumers of its involvement in transactions relating to the sale of milk and/or milk products labeled as "organic," but which in fact were not organic, as well as the classwide damage sustained by consumers as a result of such involvement.  QAI has not corrected or otherwise rectified this situation prior to the filing of this Complaint.

### COUNT 53:  Violation of State Consumer Protection Laws
### (Brought on behalf of the QAI Consumer Protection Class)

720.     All Plaintiffs (except Snell and Still) incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased milk and/or milk products produced by Aurora and certified by QAI in the same state as Plaintiff purchased such products; and (b) all other persons [and entities] who purchased such products in states having materially similar consumer protection laws.

721.     The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the "organic" milk and/or milk products produced by Aurora, and certified by QAI, declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

722.     Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.      Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

    b.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

c.	California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d.	Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.	Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f.	Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.	District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h.	Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.	Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.	Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.	Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.	Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.	Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.	Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.	Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et*

*seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

723.     Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the "organic" milk and/or milk products produced by Aurora, and certified by QAI.

724.     QAI is a person to whom the consumer protection laws apply.

725.     The milk and/or milk products produced by Aurora, certified by QAI and sold to consumers constitute products to which these consumer protection laws apply.

726.     In the conduct of trade or commerce regarding its production, marketing and sale of "organic" milk and/or milk products, QAI engaged in one or more unfair or deceptive acts or practices including, but not limited to:

      a.     permitted Aurora and the retailers to label their products as "organic" when, in fact, they were not;

      b.     advertised and represented Aurora produced products as "organic" when they were not; and

      c.     suppressed or omitted material facts regarding Aurora's production of its "organic" milk or milk products, specifically, that the milk or milk products are not organic, that the dairy cows were not raised at pasture, and that its milk or milk products are conventionally produced.

727.     QAI's statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

728.     QAI knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

729.     QAI used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and the members of the Class rely thereon.

730.     Plaintiffs and the members of the Class did rely on such misrepresentations.

731.     Each Plaintiff and member of the Class purchased "organic" milk and/or milk products produced by Aurora and certified by QAI that were falsely represented for an amount higher than conventional milk and/or milk products.

732.     As a result of QAI's wrongful conduct, Plaintiffs and the members of the Class were damaged.

733.     QAI's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 54:  Negligence Per Se
### (Brought on behalf of the QAI Negligence Per Se Class)

734.     All Plaintiffs (except Brice Leigh, Coselli, Meacham and Ross) incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each Plaintiff brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced, by Aurora and certified by QAI, in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

735.     The OFPA is intended to protect purchasers of organic milk or milk products, including Plaintiffs and members of the Class.

736.     Plaintiffs and the members of the Class are persons foreseeably harmed by QAI's acts and omissions.  QAI certified milk produced by Aurora as "organic" in order to permit Aurora and retailers to market and sell such milk as "organic" to consumers.  Furthermore, on its website and brochures, QAI itself recognizes that certification is important to protect consumers from fraud and to protect consumer confidence.

170

737.    At all times relevant, QAI owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in inspecting, examining, certifying, suspending or decertifying Aurora's operations and milk as "organic" in order to protect Plaintiffs and the members of the class from injury.

738.    QAI owed a duty to Plaintiffs and the members of the Class to not certify Aurora milk or milk products as "organic" unless such products were produced in accordance with OFPA and other applicable laws.

739.    QAI knew or should have known that the Aurora milk and milk products were not in compliance with applicable standards, statutes and regulations, including USDA requirements.

740.    QAI failed to exercise reasonable care, thereby breaching its duty to Plaintiffs and the members of the Class, including, but not limited to:

a.    QAI's certification of Aurora's cows as "organic" in violation of 7 C.F.R. §§ 205.236(a)(2), 205.238(b), 205.238(c)(4), and 205.603(a)(13), in connection with Aurora's entering of conventional dairy animals into organic milk or milk products production at its Dublin, Texas facility before those animals completed the required one-year period of continuous organic management.

b.    QAI's failure to inspect, deny or revoke its "organic" certification of Aurora and Aurora's milk.

c.    QAI's name and certification appeared on cartons of milk and/or milk products produced by Aurora.

d.    QAI's failure to fully comply with the terms and conditions of the applicable organic certification program and to ensure that it did not "falsely or

171

negligently" certify "any farming or handling operation that does not meet the terms and conditions of the applicable organic certification program as an organic operation."

741.    From least 2003 to at least August 23, 2007, QAI certified Aurora milk and milk products as "organic" when they were not.

742.    As a direct result of QAI's certification of Aurora's operations and its milk as "organic" when it was not, Plaintiffs and the members of the Class were damaged, including, but not limited to, the damage caused by their purchase of non-organic milk at "organic" premium prices.  This harm, resulting from QAI's certification of Aurora and its milk and its failure to decertify or suspend Aurora's "organic" certification, was foreseeable to QAI and Plaintiffs and the members of the Class, as retail purchasers of the milk at issue, were within the scope of people likely to be harmed as a result of QAI's action and inaction.

743.    As a result of QAI's conduct, Plaintiffs and the members of the Class have suffered damages in an amount to be proven at trial.

744.    QAI's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

**COUNT 55:  Negligent Misrepresentation**
**(Brought on behalf of the QAI Class)**

745.    All Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each Plaintiff brings this Count on his/her own behalf under the law of the state in which he/she purchased milk and/or milk products produced by Aurora and on behalf of: (a) all other persons who purchased "organic" milk and/or milk products produced by Aurora and certified by QAI where the purchase was made in the same state as Plaintiff purchased such products; and (b) all other

persons who purchased such products in states having similar laws regarding negligent misrepresentation.

746.    QAI's "certification" appears on cartons of "organic" milk and/or milk products produced by Aurora and certified by QAI at the point of sale.

747.    QAI also permits Aurora and retailers to place its "mark of excellence" on the cartons and otherwise use such "mark of excellence" in advertisements and other promotions.

748.    The appearance of QAI's seal on each carton of "organic" milk and milk product constitutes a representation that QAI is affiliated with the operation by which the milk was produced and packaged.

749.    QAI's certification on each carton of "organic" milk and milk product constitutes a representation that the product is indeed organic and produced in compliance with applicable standards, statutes and regulations, including USDA requirements.

750.    QAI owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about the "organic" nature of milk and milk products on which its name appears.

751.    QAI did not exercise reasonable care, but made representations regarding the "organic" nature of Aurora's milk and milk products when it knew or should have known that such representations were false, without information sufficient to know whether its representations were true or false, and/or in reckless disregard for the truth or falsity of its representations.

752.    QAI negligently and recklessly made such representations and omitted to disclose material facts through uniform mislabeling, non-disclosure and concealment at the point of sale

and otherwise through mass media, advertising, and other information prepared or disseminated by QAI or at its direction.

753.    The purpose of QAI's certification was to assure consumers that the milk and/or milk products were indeed "organic," and thus warranted a premium price.

754.    QAI's mislabeling, misrepresentations and non-disclosures were intended to and did influence consumers' purchasing decisions.

755.    In addition or in the alternative, QAI knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of QAI.

756.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations QAI made regarding its "organic" milk and milk products.

757.    QAI's representations and omissions regarding the "organic" milk and milk products on which its seal appeared were false and misleading as alleged above.

758.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

759.    As a result of QAI's conduct, Plaintiffs and the members of the Class were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes they seek to represent, respectfully request that the Court enter an order or judgment in their favor and against Defendants, including the following:

A.      Certifying the action as a Class Action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and appointing of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B.      Awarding damages in the amount of monies paid for "organic" milk that was not organic and/or other consequential or incidental damages;

C.      Awarding actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

D.      Awarding pre-judgment and post-judgment interest on such monetary relief;

E.      Awarding equitable relief in the form of restitution, to restore monies received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged in herein;

F.      Awarding Plaintiffs the costs of bringing this suit, including reasonable attorneys' fees; and

G.      Awarding all such other relief to which Plaintiffs and the members of the Classes may be entitled at law or in equity.

Dated:  December 8, 2008

Respectfully submitted,


By: **/s/ Don M. Downing**
Don Downing
Gretchen Garrison
Thomas Neill
GRAY, RITTER & GRAHAM, P.C.
701 Market Street, Suite 800
St. Louis, MO 63101-1826
Telephone: (314) 241-5620
Facsimile: (314) 241-4140
E-mail:  ddowning@grgpc.com
        ggarrison@grgpc.com
        tneill@grgpc.com


Elizabeth A. Fegan
Daniel J. Kurowski
HAGENS BERMAN SOBOL
SHAPIRO LLP
820 North Boulevard, Suite B
Oak Park, IL 60301
Telephone: (708) 776-5600
Facsimile: (708) 776-5601
E-mail: beth@hbsslaw.com
        dank@hbsslaw.com


Steve W. Berman
Jeniphr Breckenridge
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com
        jeniphr@hbsslaw.com


*Plaintiffs' Co-Interim Class Counsel
and Co-Lead Counsel*

Robert M. Bramson
BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598

James G. Stranch, III
BRANSTETTER STRANCH &
JENNINGS PLLC
227 2nd Avenue North, Fourth Floor
Nashville, TN 37201-1631

Tucker Ronzetti
David Buckner
KOZYAK TROPIN &
THROCKMORTON, PA
2525 Ponce de Leon, Ninth Floor
Coral Gables, FL 33134

Edith M. Kallas
Patrick J. Sheehan
WHATLEY DRAKE & KALLAS
1540 Broadway, 37th Floor
New York, NY 10036

Adam J. Levitt
John E. Tangren
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603

*Plaintiffs' Steering Committee*

Chip Robertson
BARTIMUS FRICKELTON
ROBERTSON & GORNY
715 Swifts Highway
Jefferson City, MO 65109

*Plaintiffs' Liaison Counsel*

*[Additional Plaintiffs' counsel on next page]*

177

Timothy Carl Blake
Concorde Building
66 W. Flagler Street
Miami, FL 33130

Robert B. Carey
Frances R. Johnson
THE CAREY LAW FIRM
2301 East Pikes Peak Avenue
Colorado Springs, CO 80909

Joseph Henry Bates, III
CAULEY BOWMAN CARNEY &
WILLIAMS, PLLC
P.O. Box 25438
Little Rock, AR 72221

Stephen H. Gardner
CENTER FOR SCIENCE IN THE PUBLIC
INTEREST
5646 Milton St., Suite 211
Dallas, TX 75206

Arend J. Abel
Irwin Levin
Richard E. Shevitz
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204

Kenneth Canfield
Martha J. Fessenden
DOFFERMYRE SHIELDS CANFIELD
KNOWLES & DEVINE, LLC
1355 Peachtree Street, Suite 1600
Atlanta, GA 30309

John G. Emerson
Scott E. Poynter
EMERSON POYNTER LLP
500 President Clinton Avenue, Suite 305
Little Rock, AR 72201

Nadeem Faruqi
FARUQI AND FARUQI
320 E. 39th Street
New York, NY 10016

Tracy D. Rezvani
FINKELSTEIN THOMPSON LLP
1050 30th Street, N.W.
Washington, DC 20007

Maury A. Herman
David A. McKay
Andrea S. Hirsch
HERMAN MATHIS LLP
230 Peachtree Street, NW, Suite 2260
Atlanta, GA 30303

Fredric S. Fox
KAPLAN FOX & KILSHEIMER LLP
850 3rd Ave, 14th Floor
New York, NY 10022

Laurence D. King
KAPLAN, FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104

Curtis F. Gantz
David G. Cox
LANE ALTON & HORST LLC
Two Miranova Place, Suite 500
Columbus, OH 43215

Gideon Kracov
LAW OFFICES OF GIDEON KRACOV
801 South Grand Avenue, 11th Floor
Los Angeles, CA 90017

Christopher Lovell
Jody R. Krisiloff
Craig M. Essenmacher
Keith Essenmacher
LOVELL STEWART HALEBIAN LLP
500 Fifth Avenue, 58th Floor

New York, NY 10110

Harry Schulman
Robert Wade Mills, Jr.
THE MILLS LAW FIRM
145 Marina Boulevard
San Rafael, CA 94901

William N. Riley
Christopher A. Moeller
Jamie R. Kendall
Joseph N. Williams
PRICE WAICUKAUSKI & RILEY, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204

Garrett D. Blanchfield, Jr.
REINHARDT, WENDORF &
BLANCHFIELD
332 Minnesota Street, Suite E-1250
St. Paul, MN 55101

Christopher P. Ridout
RIDOUT & LYON LLP
100 Oceangate, 14th Floor
Long Beach, CA 90802

Alexis B. Djivre
Christopher P. Ridout
David A. Rosen
ROSE, KLEIN & MARIAS, LLP

801 S. Grand Avenue, 11th Floor
Los Angeles, CA 90017

Kip B. Shuman
THE SHUMAN LAW FIRM
801 East 17th Avenue
Denver, CO 80218

John E. Campbell
John Simon
Erich Vieth
SIMON PASSANANTE, P.C.
701 Market Street, Suite 1450
St. Louis, MO 63101

James A. Streett
STREETT LAW FIRM, P.A.
107 West Main Street
Russellville, AR 72801

Eric J. Artrip
Herman A. Watson, Jr.
Rebekah Keith McKinney
WATSON, JIMMERSON, MARTIN,
MCKINNEY, HELMS & ARTRIP, P.C.
P.O. Box 18368, 203 Greene Street
Huntsville, AL 35804

*Additional Counsel for Plaintiffs*