# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |
|---|---|
| **In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation**<br><br>**This Filing Relates To: All Actions** | **Civil Action No.: 4:08-md-01907-ERW** |

## AMENDED MASTER COMPLAINT

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................1

II.  PARTIES ...................................................................................................................2

    A.  Plaintiffs ......................................................................................................... 2

    B.  Defendants ....................................................................................................... 5

III.  JURISDICTION AND VENUE ................................................................................6

IV.  FACTUAL ALLEGATIONS ....................................................................................7

    A.  Aurora Dairy ....................................................................................................7

    B.  Private Label Organics...................................................................................14

        1.  Aurora's "High Meadow" Brand .......................................................14

        2.  Costco's "Kirkland" Brand ................................................................17

        3.  Safeway's "O Organics" Brand .........................................................19

        4.  Target's "Archer Farms" Brand .........................................................21

        5.  Wal-Mart's "Great Value" Brand ......................................................23

        6.  Wild Oats' Store Brand......................................................................24

    C.  Injury to Plaintiffs and The Other Members of The Classes ................................26

V.  CLASS ALLEGATIONS .........................................................................................27

VI.  CAUSES OF ACTION ............................................................................................33

    A.  Counts Against Aurora ...................................................................................33

        COUNT 1: Violation of the Colorado Consumer Protection Act.........................33

        COUNT 2: Violation of State Consumer Protection Laws....................................36

        COUNT 3: Breach of Express Warranty .............................................................42

        COUNT 4: Breach of Implied Warranty of Merchantability...............................45

        COUNT 5: Negligence Per Se ............................................................................48

        COUNT 6: Negligent Misrepresentation .............................................................50

COUNT 7: Unjust Enrichment ........................................................................51

B.      Counts Against Aurora With Respect to the High Meadow Label.....................52

        COUNT 8: Violation of the Colorado Consumer Protection Act.........................52

        COUNT 9: Violation of State Consumer Protection Laws...................................55

        COUNT 10: Breach Of Express Warranty ..........................................................60

        COUNT 11: Breach Of Implied Warranty of Merchantability.............................63

        COUNT 12: Negligence Per Se ..........................................................................65

        COUNT 13: Negligent Misrepresentation ...........................................................66

        COUNT 14:  Unjust Enrichment .........................................................................68

C.      Counts Against Costco .......................................................................................69

        COUNT 15: Violation Of The Washington Consumer Protection Act ................69

        COUNT 16: Violation Of State Consumer Protection Laws................................71

        COUNT 17: Breach Of Express Warranty ..........................................................76

        COUNT 18: Breach Of Implied Warranty of Merchantability.............................77

        COUNT 19 Negligent Misrepresentation ............................................................78

        COUNT 20 Unjust Enrichment ...........................................................................79

D.      Counts Against Safeway .....................................................................................80

        COUNT 21: Violation of the California Unfair Competition Law.......................80

        COUNT 22:  Violation of the California Consumer Legal Remedies Act ...........82

        COUNT 23:  Violation of State Consumer Protection Laws................................85

        COUNT 24:  Breach of Express Warranty ..........................................................90

        COUNT 25:  Breach of Implied Warranty of Merchantability.............................91

        COUNT 26:  Negligent Misrepresentation ..........................................................92

        COUNT 27:  Unjust Enrichment .........................................................................94

E.      Counts Against Target ........................................................................................95

COUNT 28:  Violation of the Minn. Uniform Deceptive Trade Practices Act ........................................................................................95

COUNT 29:  Violation of State Consumer Protection Laws ................................97

COUNT 30:  Breach of Express Warranty ........................................................102

COUNT 31:  Breach of Implied Warranty of Merchantability ..........................103

COUNT 32:  Negligent Misrepresentation ........................................................104

COUNT 33:  Unjust Enrichment ......................................................................106

F.      Counts Against Wal-Mart ......................................................................107

COUNT 34:  Violation of the Arkansas Consumer Protection Act ....................107

COUNT 35:  Violation of State Consumer Protection Laws ..............................108

COUNT 36:  Breach of Express Warranty ........................................................113

COUNT 37:  Breach of Implied Warranty of Merchantability ..........................114

COUNT 38:  Negligent Misrepresentation ........................................................115

COUNT 39:  Unjust Enrichment ......................................................................117

G.      Counts Against Wild Oats ....................................................................118

COUNT 40:  Violation of the Colorado Consumer Protection Act ....................118

COUNT 41:  Violation of State Consumer Protection Laws ..............................120

COUNT 42:  Breach of Express Warranty ........................................................125

COUNT 43:  Breach of Implied Warranty of Merchantability ..........................126

COUNT 44:  Negligent Misrepresentation ........................................................127

COUNT 45:  Unjust Enrichment ......................................................................129

VII.    PRAYER FOR RELIEF ................................................................................130

Plaintiffs bring this action on their own behalf and on behalf of each of the Classes they respectively seek to represent, based upon their own personal knowledge as to themselves and their own acts and upon information and belief and the investigation of their counsel as to all other matters, and allege as follows:

I.      **INTRODUCTION**

1.      Defendant Aurora Dairy Corporation d/b/a Aurora Organic Dairy ("Aurora") produced, marketed, and sold organic milk and milk products to Plaintiffs and the other members of the Classes directly under its own "High Meadow" brand through retailer Publix Super Markets, Inc., ("Publix") and through, among others, Defendant Retailers Costco Wholesale Corp. ("Costco"), Safeway, Inc. ("Safeway"), Target Corp. ("Target"), Wal-Mart Stores, Inc. ("Wal-Mart"), and Wild Oats Markets, Inc. ("Wild Oats")[1] under their respective store-brand labels (collectively, "Milk Products").  Plaintiffs and other members of the Classes paid more for Defendants' Milk Products than they would have paid for conventional milk.

2.      Aurora made numerous representations and warranties about the manner in which its Milk Products were produced.  Many of these representations and warranties were false and deceptive.  Aurora also failed to disclose and omitted material facts about the manner in which its Milk Products were produced.

3.      Aurora's misrepresentations and omissions were first discovered by the United States Department of Agriculture ("USDA") and disclosed by the USDA in 2007.  At that time, and despite Aurora's representations, the USDA disclosed that Aurora failed to implement or maintain the very production practices that Aurora touted and advertised, such as providing the

---

[1] Costco, Safeway, Target, Wal-Mart, and Wild Oats may collectively be referred to herein as the "Retailer Defendants."

dairy cows that produced the milk for its Milk Products with appropriate access to pasture, ensuring that the dairy cows that produced its milk were only fed an organic diet, and ensuring that the dairy cows that produced its milk were not given antibiotics or synthetic growth hormones.

4.      By misrepresenting and/or failing to disclose the conditions under which the Milk Products were produced, Defendants breached express and implied warranties and engaged in one or more unfair or deceptive acts or practices in violation of consumer protection laws. Plaintiffs seek damages arising from Defendants' violations of state law.

## II.      <u>PARTIES</u>

### A.      **Plaintiffs**

5.      Diane Benya is a resident of the State of Oregon.  During the relevant time period, Ms. Benya purchased one or more Milk Products in the State of Oregon.  Those products include Wild Oats' store brand and Safeway's "O Organics" brands.

6.      Paul Bowen is a resident of the State of Washington.  During the relevant time period, Mr. Bowen purchased one or more Milk Products in the State of Washington.  Those products include Costco's "Kirkland," Safeway's "O Organics" and Wal-Mart's "Great Value" brands.

7.      Sherry Brice Leigh is a resident of the State of Florida.  During the relevant time period, Ms. Brice Leigh purchased one or more Milk Products in the State of Florida.  Those products include Wal-Mart's "Great Value" brands.

8.      Steven Joel Clark is a resident of the State of Arkansas.  During the relevant time period, Mr. Clark purchased one or more Milk Products in the State of Arkansas.  Those products include Wal-Mart's "Great Value" brands.

9.      Levitte Cruz is a resident of the State of New Jersey.  During the relevant time period, Ms. Cruz purchased one or more Milk Products in the State of New Jersey.  Those products include Target's "Archer Farms" brand.

10.      Brenda Gallardo is a resident of the State of California.  During the relevant time period, Ms. Gallardo purchased one or more Milk Products in the State of California.  Those products include Safeway's "O Organics" brand.

11.      Tammy Gardner Coselli is a resident of the State of Texas.  During the relevant time period, Ms. Coselli purchased one or more Milk Products in the State of Texas.  Those products include Safeway's "O Organics" brand.

12.      Elida Gollomp is a resident of the State of Connecticut.  During the relevant time period, Ms. Gollomp purchased one or more Milk Products in the State of Connecticut.  Those products include Costco's "Kirkland" and Aurora's "High Meadow" brands.

13.      Caryn Hudspeth is a resident of the State of Indiana.  During the relevant time period, Ms. Hudspeth purchased one or more Milk Products in the State of Indiana.  Those products include Costco's "Kirkland" and Target's "Archer Farms" brands.

14.      Hans Kueck is a resident of the State of Washington.  During the relevant time period, Mr. Kueck purchased one or more Milk Products in the State of Washington.  Those products include Safeway's "O Organics" brand.

15.      Leonie Lloyd is a resident of the State of Missouri.  During the relevant time period, Ms. Lloyd purchased one or more Milk Products in the State of Missouri.  Those products include Costco's "Kirkland" brand.

16.     Lisa Meacham is a resident of the State of Texas.  During the relevant time period, Ms. Meacham purchased one or more Milk Products in the State of Texas.  Those products include Wal-Mart's "Great Value" brand.

17.     Debbie Millikan is a resident of the State of Hawaii.  During the relevant time period, Ms. Millikan purchased one or more Milk Products in the State of Hawaii.  Those products include Costco's "Kirkland" and Safeway's "O Organics" brands.

18.     Donita Lynn Robinson is a resident of the State of North Carolina.  During the relevant time period, Ms. Robinson purchased one or more Milk Products in the State of North Carolina.  Those products include Target's "Archer Farms" brand.

19.     Scott Ross is a resident of the State of Florida.  During the relevant time period, Mr. Ross purchased one or more Milk Products in the State of Florida.  Those products include Aurora's "High Meadow" and Wild Oats' store brand.

20.     Jim Snell is a resident of the State of Tennessee.  During the relevant time period, Mr. Snell purchased one or more Milk Products in the State of Tennessee.  Those products include Wild Oats' store brand.

21.     Mona Still is a resident of the State of Alabama.  During the relevant time period, Ms. Still purchased one or more Milk Products in the State of Alabama.  Those products include Target's "Archer Farms" brand.

22.     April Subashe is a resident of the State of Utah.  During the relevant time period, Ms. Subashe purchased one or more Milk Products in the States of Arizona, Illinois, Indiana, Utah, Nevada and Massachusetts.  Those products include Costco's "Kirkland" brand and Wild Oats' store brand.

4

23.     Claire Theodore is a resident of the State of California.  During the relevant time period, Ms. Theodore purchased one or more Milk Products in the State of California.  Those products include Safeway's "O Organics" and Wild Oats' store brands.

24.     Vicki Tysseling-Mattiace is a resident of the State of Illinois.  During the relevant time period, Ms. Tysseling-Mattiace purchased one or more Milk Products in the State of Illinois.  Those products include Wild Oats store brand through the Peapod Delivery Services.

25.     Rachel VerNooy is a resident of the State of Delaware.  During the relevant time period, Ms. VerNooy purchased one or more Milk Products in the State of Pennsylvania.  Those products include Wal-Mart's "Great Value" brand.

26.     Plaintiff Odelia Weiss is a resident of the State of New York.  During the relevant time period, Ms. Weiss purchased one or more Milk Products in the States of Pennsylvania and New York.  Those products include Target's "Archer Farms" brand.

**B.     Defendants**

27.     Aurora Dairy Corporation d/b/a Aurora Organic Dairy ("Aurora") is a Delaware corporation headquartered in Boulder, Colorado. Aurora marketed and sold its Milk Products nationwide throughout the United States.  Aurora sold its Milk Products directly under the brand name "High Meadow" and through retailers under the store-brand names stated below.

28.     Costco is a Washington corporation with its principal place of business in Issaquah, Washington.  At the close of 2007, Costco operated 389 stores nationwide.  Costco sold Milk Products produced by Aurora under Costco's brand name "Kirkland."

29.     Safeway is a Delaware corporation with its principal place of business in Pleasanton, California.  Safeway is one of the largest food and drug retailers in North America.  Safeway has various wholly-owned subsidiaries including Randall's Food Markets, Tom Thumb,

Car-Gottstein Foods Co., Dominick's Supermarkets, Inc., Vons, and Genuardi's Family Markets, Inc. (which are divisions of, and/or whose policies, finances, business practices and other affairs are controlled by, Safeway) and through which Safeway operates in Texas, Alaska, Illinois, California, Pennsylvania, New Jersey, and Delaware.[2]  As of September 8, 2007, Safeway operated 1,738 stores in the Western, Southwestern, Rocky Mountain, and Mid-Atlantic regions of the United States and in western Canada. Safeway sold Milk Products produced by Aurora under Safeway's brand name "O Organics."

30.     Target is a Minnesota corporation, having its principal place of business within the State of Minnesota. Target operates 1,613 stores in 47 states.  Target sold Milk Products produced by Aurora under Target's brand name "Archer Farms."

31.     Wal-Mart is a Delaware corporation with its principal place of business in Bentonville, Arkansas.  Wal-Mart is the largest retailer in the world, specializing in mass merchandising stores. Wal-Mart operates approximately 1,350 stores nationwide, as well as 1,700 Supercenters in the Western, Southwestern, Rocky Mountain, and Mid-Atlantic regions of the United States and in western Canada. Wal-Mart sold Milk Products produced by Aurora under Wal-Mart's brand name "Great Value."

32.     Wild Oats was a Delaware corporation with its principal place of business in Boulder, Colorado. Wild Oats, at its own stores or through a delivery service known as Peapod, sold Milk Products produced by Aurora under Wild Oats' store name.   Whole Foods acquired Wild Oats in or about August 2007; however, Wild Oats has represented that it maintains liability for these alleged claims.

---

[2] Throughout this Complaint, Safeway and its subsidiaries are referred to collectively as "Safeway."

## III.    JURISDICTION AND VENUE

33.    This Court has diversity jurisdiction over this class action lawsuit pursuant to 28 U.S.C § 1332 as amended by the Class Action Fairness Act of 2005, because, upon information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this lawsuit is a class action in which some members of the Classes are citizens of states different than Defendants.  *See* 28 U.S.C. § 1332(d)(2)(A).

34.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein described occurred within this judicial district.  Venue is also proper in this judicial district pursuant to the Order of the Judicial Panel on Multidistrict Litigation which transferred and centralized all related actions in this Court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

## IV.    FACTUAL ALLEGATIONS

### A.    Aurora Dairy

35.    Founded in 2003, Aurora's first and largest dairy farm is located in Platteville, Colorado, about 40 miles north of Denver.  At its peak, the Platteville farm had approximately 4,500 cows and a capacity to produce twenty million gallons of milk per year.  Aurora also operates dairy farms in other locations in Colorado, as well as in Texas.

36.    Aurora processes all of its milk in a plant located next to its Platteville farm.  Milk from Aurora's other dairy farms is transported to its Platteville plant in refrigerated trucks.  Most of this milk is then pasteurized or ultra-pasteurized, processed into whole, 2%, 1%, and skim varieties, and packaged in half-gallon cartons.  Aurora also processes some of the milk into other milk products, including butter, cream, and non-fat dry milk.

37.     In some instances, on information and belief, Aurora packages the Milk Products in cartons or other containers according to a retailer's instruction, and bearing the retailer's brand name, from its facility in Colorado.

38.     Describing itself as a "steward" of producing Milk Products in a certain way, during the relevant period, Aurora represented or implied that the cows that produce its Milk Products: (a) lived outdoors all year-round; (b) ate only organic feed; (c) were never given antibiotics; and (d) were given access to pasture.

39.     For example, Aurora stated and continues to state on its website:

> To us, a healthy cow is the following:
>
> - A contented cow that lives outdoors all year-round, with 24-hour access to water, and that is fed a nutritionally-balanced diet of organic pasture, organic mixed forages (such as alfalfa hay, grass hay and silages), organic grain (such as soymeal, ground corn, wheat, sunflower and flax seeds) and an organic vitamin and mineral supplement. Learn more about our <u>Organic Feed</u>.
>
> - A cow free of infections, diseases and parasites that is never given antibiotics. If ever sick, the cow is treated in our "<u>Early Sick Cow</u>" program – rest, fluids, homeopathic and probiotic treatments, with a focus on preventative healthcare and early recognition.
>
> - Living as naturally as possible, a healthy cow gets pregnant on time, doesn't have problems during its birth and doesn't have reproductive constraints.
>
> ***
>
> Relaxed cows:
>
> - Have good <u>nutrition</u> so that there is no stress from food and so that their milk production does not unduly tax their body systems.

- Have access to pasture so that grazed forage is a part of the diet.[3]

40.     Aurora further represented and continues to represent to consumers that pasturing is the main source of food for cows, with other sources as "supplements," stating that "[b]y optimizing sustainable resources in our arid climates, we are able to provide our cows both pasture to feed upon as well as organic feed to supplement their nutrition."[4]

41.     Aurora also depicted and continues to depict its cows foraging in open, grassy fields:





*See generally* http://www.auroraorganic.com.

---

[3] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=100&iCategoryID=8 (originally confirmed on July 17, 2008 and last visited November 16, 2010).

[4] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=98&iCategoryID=8 (originally confirmed on July 17, 2008 and last visited November 16, 2010).

42.     Aurora's marketing extends to the point of purchase.  In an article published by Progressive Grocer in January 2008, Sonja Tuitele, a spokesperson for Aurora,  was quoted as saying:

> 'The best way to merchandise and market any milk in the dairy case is to explain the benefits of that product to your consumers through point-of-purchase materials and side-panel information right on the milk carton.' . . .  'Consumers have a thirst for information about the products they purchase, where they come from, and who produced that product.  For organic milk specifically, consumers want to know that it came from cows that weren't given antibiotics or synthetic growth hormones, that pesticides weren't used in the feed, and that the animals are treated humanely.'

> In the case of private label, 'it's no different. The benefit of private label organic milk for consumers is a store brand will have superior quality and taste, but come at a more affordable price because that product doesn't rely on marketing to build its brand. This encourages trial and helps to expand the overall market for organic milk . . . We work with our retail customers to participate in their store-level demo programs, and when consumers taste the quality of their store-brand organic milk, it's one of the best ways to convert conventional milk drinkers to organic.'

Bridget Goldschmidt, *Milk: Cow Cash,* Progressive Grocer, Jan. 2008.

43.     Aurora also claimed and continues to claim that "[t]he dairy maintains 100% traceability of all animals, crops and such, with a complete audit and certification of 100% of the system."[5]

44.     Aurora made and continues to make these representations because it knows they are important to its customers.  For example, part of humane animal husbandry practices includes maintaining livestock living conditions and health care practices in a way that accommodates the health and natural behavior of the animals, including access to pasture on which the animals can graze freely and consume a substantial portion of their food.

_____

[5] http://www.auroraorganic.com/aodweb/site/itemContent.aspx?iContentID=122&iCategoryID=6 (last visited July 17, 2008).

45.     Likewise, pasturing cows is intended to ensure a production system that provides living conditions that allow the animals to satisfy their natural behavior patterns and provides preventative health care benefits. Pasturing contributes to preventive health care management by enabling ruminants to develop and reproduce under conditions that reduce stress, strengthen immunity, and deter illness.  Pasturing affords ruminants the freedom of choice to satisfy natural behavior patterns.  Pasturing assures a relationship between the animal and land that satisfies organic principles.

46.     Similarly, free grazing produces a higher quality and more nutritious milk than cows that are confined to feed lots, even if the cows in the lots are fed organic grains.  Milk from pastured cows can contain up to five times more conjugated lineolic acid, an anti-oxidant shown to reduce cancer risks, as well as higher levels of beta-carotene, vitamin A, vitamin E, and omega-3 fatty acid than does milk from grain-fed cows.

47.     Aurora thus marketed the health benefits of drinking milk from pastured cows, which has been one of the major contributing factors to the increasing demand for organic milk and the Milk Products at issue here.

48.     However, contrary to its representations and warranties, during the relevant period, Aurora purposefully did <u>not</u>, among other things:

a.     establish appropriate housing, pasture conditions, and sanitation practices for its dairy cows to minimize the occurrence and spread of diseases and parasites;

b.     establish and maintain living conditions for its dairy cows which accommodated their health and natural behavior;

c.     provide its dairy cows with suitable access to the outdoors, shade, shelter, exercise areas, fresh air, and direct sunlight or provide its dairy cows with proper access

11

to pasture;

      d.      provide its dairy cows (which typically consume their own bedding) with appropriate clean, dry organic bedding;

      e.      provide its dairy cows with a total feed ration composed of agricultural products, including pasture and forage, that were organically produced and handled; and

      f.      keep conventional dairy cows separate from the cows that produced its Milk Products, and thus dairy cows that had been subject to antibiotic treatment and/or ate non-organic feed provided milk from which the Milk Products were made;

      g.      maintain adequate records that disclosed all activities and transactions in sufficient detail to be readily understood and audited.

49.     Plaintiffs did not and could not have learned of Aurora's misrepresentations and deceptive conduct until on or about March 7, 2007 when the USDA disclosed that Aurora had failed to comply, in numerous respects, with federal law regarding production of Milk Products labeled as organic.

50.     The USDA found the frequency and willfulness of Aurora's violations to be so significant that on or about April 16, 2007 it issued a "Notice of Proposed Revocation" to Aurora, stating:  "Due to the nature and extent of these violations, the NOP [National Organic Program] proposes to revoke Aurora Organic Dairy's production and handling certifications under the NOP."  That revocation would have barred Aurora from selling its Milk Products, as then labeled, for five years into the future.

51.     The USDA's disclosure of the facts underlying its Notice of Proposed Revocation revealed that Aurora's production practices, from at least 2003 to August 23, 2007, were not in conformance with Aurora's representations and warranties.

52.     Indeed, during the relevant period, Aurora applied business practices of conventional, large-scale, dairies contrary to its representations and warranties.

53.     In fact, Aurora's practice was to deny its cows access to pasture while they were lactating and to keep them in feedlots.

54.     At all relevant times, Aurora milked its dairy cows three times per day, in order to maximize milk production per cow, even though most organic milk dairy farms only milk their cows up to twice per day.  As a result, Aurora's milk output per cow was substantially greater than the per cow milk output of other organic dairies.

55.     At a peak of over 4,000 cows Aurora kept on its Platteville farm, it was a practical impossibility to both provide the cows with access to pasture in any meaningful sense, and to milk them three times each day.

56.     Aurora marketed and sold its Milk Products in a manner designed to mislead purchasers – including Plaintiffs and the members of the putative Classes – by misrepresenting the manner in which it produced the Milk Products.

57.     Aurora misrepresented and omitted material facts regarding the way in which its Milk Products were produced because Aurora knew that consumers purchased the Milk Products in order to prevent their own and their families' exposure to antibiotics and pesticides, both of which could lead to bodily injury.   Despite its representations, on information and belief, Aurora's actual practices exposed consumers to antibiotics and pesticides.  One or more Plaintiffs complain of bodily injury or the potential for bodily injury as the result of Aurora's wrongdoing.

58.     Because of its misrepresentations and omissions of material fact, Aurora was able to sell its Milk Products at prices substantially higher than conventional milk and milk products

for its own substantial benefit and to the detriment of purchasers, including Plaintiffs and the members of the Classes.

59.     The premium Aurora gained from the sale of its Milk Products is significant, totaling millions of dollars per year.   Plaintiffs would not have purchased Aurora's Milk Products had they known the truth.  Through Aurora's deception, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain.

60.     Among other things, Aurora's conduct constitutes one or more deceptive and unfair trade acts or practices, breached express and implied warranties, and caused injury to the many thousands of purchasers of Milk Products produced by Aurora, including Plaintiffs and the members of the Classes.

**B.      Private Label Organics**

61.     Aurora sold some of its Milk Products to consumers under its own "High Meadow" brand, including through Publix.  Aurora also sold Milk Products to other retailers, who then sold these products under their own private-label brands to consumers.  Such retailers include but may not be limited to Costco, Safeway, Target, Wal-Mart, and Wild Oats.  Aurora is the country's largest private-label producer of Milk Products.

**1.      Aurora's "High Meadow" Brand**

62.     Aurora sold Milk Products under the brand name "High Meadow."   The High Meadow-label Milk Products were contained in cartons that specifically represented the manner in which the Milk Products were allegedly produced.

63.     During the relevant time period, High Meadow Milk Products were retailed by Publix.

64.   The High Meadow label depicted a bucolic scene with cows in the pasture, together with shade trees, flowers, rolling hills and mountains:



65.   The High Meadow label further stated:

***Thank you*** for choosing High Meadow organic milk.  Certified organic milk is one of nature's miraculous beverages.  It provides healthy nutrition with protein, vitamins and important minerals such as calcium.  And of course, the taste of organic milk is simply fabulous.  What's more, because our milk is certified organic, you and your family can be assured that it is produced by healthy, contented cows that have not been given antibiotics or synthetic hormones.

**As producers of organic milk, our motto is "Cows First."**

- We believe that animal welfare and cow comfort are the most important measures in organic dairy.
- Maintaining excellent herd health is essential for the humane treatment of our animals.
- We monitor the health of every cow in our herd to ensure that she gets the care she needs.
- All of our cows receive a balanced diet of 100% organic feed, organic pasture and clean fresh water.
- Our herds are always outside in the fresh air and sunshine.  In case of bad weather, they have available shelter but are never kept indoors.

These cow care principles help to ensure that our cows live stress-free lives and produce excellent organic milk.  So lift a glass, toast the cows, and enjoy the cool

fresh taste of High Meadow organic milk.  Your taste buds, your family's health and our contented cows will all thank you.

To learn more, visit us at: www.auroraorganic.com.

(bolded language in the original).

66.    The High Meadow label thus represented,  warranted and otherwise deceptively indicated, *inter alia*, that:

      a.  the dairy cows that produce the Milk Products have not been given antibiotics;

      b.  the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

      c.  the diet of the dairy cows that produce the Milk Products includes  100% organic feed;

      d.  the diet of the dairy cows that produce the Milk Products includes organic pasture; and

      e.  the dairy cows have true access to pasture.

67.    These representations were materially false, deceptive and misleading.  They also contained material omissions regarding the true manner in which High Meadow Milk Products were produced.

68.    Aurora's misrepresentations were intended to and did or had the potential to deceive Plaintiffs and other members of the Classes.

69.    The conduct described above caused injury to Plaintiffs and the other members of the Classes who purchased High Meadow Milk Products .  Plaintiffs would not have purchased High Meadow Milk Products had they known the truth.  Further, as a result of the

misrepresentations made by Aurora and the High Meadow label, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

### 2.    Costco's "Kirkland" Brand

70.    Costco sold Milk Products under the brand name "Kirkland."   The Kirkland label Milk Products were contained in cartons that specifically represented the manner in which the Milk Products were allegedly produced.

71.    Costco aggressively promoted its "Kirkland"-label Milk Products and the manner in which those Milk Products were produced.  For example, an article in the *Costco Connection* newsletter of January 2006 was entitled "Costco's Dairy Queens."[6]  It promoted the quality of Costco's Milk Products and the manner in which the Milk Products were produced:

> When I was asked by Costco to learn about organic products, one question I had was "What makes organic milk so special?"  To answer this, I visited one of the farms that produced Costco's Kirkland Signature organic milk.
>
> The cows on the farm have quite the life.  They feed on a balanced organic vegan diet and have access to organic pastures for grazing. They have their own veterinarian, nutritionists and even a physical-therapy pool.
>
> Sandy Custer, the Costco buyer who accompanied me on my visit, notes, "There are a lot of farmers who do a great job with their animals and farms.  Organic farmers take it one step further.  They take extra care of their animals to keep them healthy – which means greater quality and quantities of milk without the need for antibiotics and additional hormones.  All processing and bottling is certified organic and done right on the farm."
>
> Costco organic milk, boxed as three half gallons, offers savings that range from 66 cents to $1.66 per half gallon.
>
> Good job, ladies.  Great job, Costco.—*PV*

---

[6] http://www.costcoconnection.com/connection/200601/?pg=107 (as of July 17, 2008 and last visited November 16, 2010).

72.   The label itself depicted a bucolic scene with cows at pasture:



73.   The label also represented the manner in which the Milk Products were produced:



74.     The "Kirkland" label thus represented, warranted, and deceptively indicated, *inter alia*, that:

    a.  the dairy cows that produced the Milk Products had not been given antibiotics;

    b.  the dairy cows that produced the Milk Products had not been given synthetic growth hormones;

    c.  the diet of the dairy cows that produced the Milk Products did not include pesticides (which implied that the feed is organic);

    d.  the diet of the dairy cows that produced the Milk Products included organic pasture; and

    e.  the dairy cows have true access to pasture.

75.     These representations were materially false, deceptive and misleading.  They also contained material omissions regarding the true manner in which "Kirkland" Milk Products were produced.

76.     Costco's representations were intended to, and did or had the potential to, deceive Plaintiffs and the other members of the Classes.

77.     The conduct described above caused injury to Plaintiffs and the other members of the Classes who purchased "Kirkland" Milk Products.  Plaintiffs would not have purchased "Kirkland" Milk Products had they known the truth.  Further, as a result of the misrepresentations made by Costco and the "Kirkland" label, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

### 3.      Safeway's "O Organics" Brand

78.     Safeway sold Milks Products under the brand name "O Organics."   The "O

Organics"-label Milk Products were contained in cartons that specifically represented the manner

in which the Milk Products were allegedly produced.

79.     Safeway's "O Organics" label depicted a bucolic scene with cows grazing in a

green pasture:



80.     Safeway also stated on the carton of its "O Organics" milk:

ORGANICS

*Organic from the Source*

There's a lot that goes into a good glass of milk.  It starts with the
land.  Our dairy pastures are environmentally friendly, maintained
with the use of recognized organic horticultural practices.  The
dairy cows that produce *O* Organics Milk enjoy a healthy mix of
fresh air, plenty of exercise, clean drinking water and a
wholesome, 100% certified organic diet – and they are not given
growth hormones or treated with antibiotics.

> All of these practices support sustainable farming, which is good
> for the environment, good for the cows and good for the milk.
> That's why our *O* Organics Milk tastes like milk should – fresh
> and pure.

81.     The "O Organics" label thus represented, warranted and deceptively indicated,

*inter alia*, that:

      a.  the dairy cows that produced the Milk Products had not been given antibiotics;

      b.  the dairy cows that produced the Milk Products had not been given synthetic

          growth hormones;

      c.  the diet of the dairy cows was 100% organic;

      d.  the diet of the dairy cows that produced the Milk Products included organic

          pasture; and

      e.  the dairy cows had true access to pasture.

82.     These representations were materially false, deceptive and misleading.  They also

contained material omissions and failures to disclose regarding the true manner in which "O

Organics" Milk Products were produced.

83.     Safeway's representations were intended to, and did or had the potential to,

deceive Plaintiffs and the other members of the Classes.

84.     The conduct described above caused injury to Plaintiffs and the other members of

the Classes who purchased "O Organics" Milk Products.  Plaintiffs would not have purchased "O

Organics" Milk Products had they known the truth.  Further, as a result of the misrepresentations

made by Safeway and the "O Organics" label, Plaintiffs and the other members of the Classes

did not receive the benefit of the bargain and are entitled to damages.

### 4.    Target's "Archer Farms" Brand

85.    Target sold Milks Products under the brand name "Archer Farms."  The "Archer Farms"-label Milk Products were contained in cartons that specifically represented the manner in which the Milk Products were produced.

86.    For example, Target's "Archer Farms" advertisements depicted green pastures with grazing cows:



87.    Similarly, its labels made representations regarding the manner in which the Milk Products were produced:

**BENEFITS**
- Good for you. Reducing your intake of harmful pesticides and other additives is a good health habit.
- Good for the earth.  Organic farming helps sustain soil quality, maintain essential biodiversity and reduce chemical run-off to help preserve the purity and quality of the water supply.
- Good for animals.  Our milk comes from healthy cows that graze in organic pastures and eat wholesome organic feed.

**The Nature of Organic**
Archer Farms Organic – food that tastes great . . . naturally.
Taste the pure, healthful goodness of a cool, fresh glass of milk produced without pesticides, antibiotics or artificial growth hormones.  Archer Farms delivers certified organic grade A milk, fortified with vitamins A and D, which helps in calcium absorption.

88.     The "Archer Farms" label thus represented, warranted, and deceptively indicated, *inter alia*, that:

a.   the dairy cows that produced the Milk Products had not been given antibiotics;

b.   the dairy cows that produced the Milk Products had not been given synthetic growth hormones;

c.   the diet of the dairy cows was organic;

d.   the diet of the dairy cows that produced the Milk Products included organic pasture; and

e.   the dairy cows grazed in organic pasture.

89.    These representations were materially false, deceptive and misleading.  They also contained material omissions and failures to disclose regarding the true manner in which "Archer Farms" Milk Products were produced.

90.    Target's representations were intended to, and did or had the potential to, deceive Plaintiffs and the other members of the Classes.

91.    The conduct described above caused injury to Plaintiffs and the other members of the Classes who purchased "Archer Farms" Milk Products.  Plaintiffs would not have purchased "Archer Farms" Milk Products had they known the truth.  Further, as a result of the misrepresentations made by Target and the "Archer Farms" label, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

**5.    Wal-Mart's "Great Value" Brand**

92.    Wal-Mart sold Milk Products under the brand name "Great Value."  Wal-Mart represented, in whole or in part, that its "Great Value"-label organic milk sold at its stores was "produced without the use of antibiotics or pesticides and organic farmers are committed to the humane treatment of animals. Your family can enjoy milk produced without harmful chemicals." *See* http://livebetterindex.com/sustainability.html (last visited July 17, 2008).

93.     Wal-Mart thus represented, warranted, and deceptively indicated, *inter alia*, that:

     a.  the dairy cows that produced the Milk Products had not been given antibiotics;

     b.  the diet of the dairy cows was organic (i.e. not treated with pesticides).

     c.  the dairy cows had true access to pasture.

94.    These representations were materially false, deceptive and misleading.  They also contained material omissions and failures to disclose regarding the true manner in which "Great Value" Milk Products were produced.

95.    Wal-Mart's representations were intended to, and did or had the potential to, deceive Plaintiffs and the other members of the Classes.

96.    The conduct described above caused injury to Plaintiffs and the other members of the Classes who purchased "Great Value" Milk Products.  Plaintiffs would not have purchased "Great Value" Milk Products had they known the truth.  Further, as a result of the misrepresentations made by Wal-Mart, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

### 6.    Wild Oats' Store Brand

97.    Wild Oats sold Milk Products under the Wild Oats Organic label.

98.    Wild Oats represented and warranted that "Foods with the Wild Oats Organic label are made with 95-100% certified organic ingredients from products grown by farmers who practice sustainable agriculture. No synthetic pesticides, herbicides, fertilizers or GMOs are used in organic farming."[7]

99.    In advertising its Wild Oats Organic line, Wild Oats contended that "[b]ehind every label is a story," adding that "[l]ong before a Wild Oats product appears on the shelf, our

---

[7]  http://www.wildoatsproducts.com/app/private/index?pageId=100905&p=page (last visited July 17, 2008).

buyers travel around the corner and across the world searching for artisan, organic and natural products that meet our standards for excellence, and yours for taste, quality and value."

100.    Wild Oats also claimed it was committed to ensuring that its products were held to the highest organic standards in the industry:

> **Standards**
>
> The Wild Oats commitment to quality is unparalleled in the grocery business. Using rigorous criteria based on scientific research, we ensure our stores feature a wide selection of products that are made naturally - without artificial flavors, colorings, preservatives or other synthetic additives. We feature products that contribute to your health and well-being and we partner with vendors that meet our environmental and social standards.
>
> The Wild Oats Standards Committee was created with the vision of enhancing the lives of our customers, our employees and the environment by maintaining the highest natural and organic standards in the industry. Our decisions are grounded on the most current, reliable scientific research relevant to the concerns of our customers.

101.    Wild Oats thus represented,  warranted, and deceptively indicated, *inter alia*, that:

   a.  the dairy cows that produced the Milk Products had not been given antibiotics;

   b.  the dairy cows that produced the Milk Products had not been given synthetic growth hormones;

   c.  the diet of the dairy cows was organic.

102.    These representations were materially false, deceptive and misleading.  They also contained material omissions and failures to disclose regarding the true manner in which Wild Oats Organic label Milk Products were produced.

103.    Wild Oat's representations were intended to, and did or had the potential to, deceive Plaintiffs and the other members of the Classes.

104.    The conduct described above caused injury to Plaintiffs and the other members of the Classes who purchased Wild Oats Milk Products.  Plaintiffs would not have purchased Wild Oats Milk Products had they known the truth.  Further, as a result of the misrepresentations made by Wild Oats, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

**C.    Injury to Plaintiffs and The Other Members of The Classes**

105.    Based on Defendants' representations,  warranties, deceptive statements and material omissions regarding the manner in which the Milk Products were produced, Plaintiffs and the putative Classes were willing to pay – and did pay – premium prices for the Milk Products.

106.    As of May 2005, the national average price for a half gallon of organic milk was $4.01, as compared to $2.02 for conventional milk.  Based on this average, organic milk commanded a price premium of ***98 percent*** in the national retail market:

**Price Premium of Organic Milk**



Carolyn Dmitri & Kathryn M. Venezia, *Retail and Consumer Aspects of the Organic Milk Market* (USDA Econ. Research Serv., LDP-M-155-01, May 2005), *available at* http://www.ers.usda.gov/publications/LDP/2007/05May/LDPM15501/ldpm15501.pdf.

107.    Plaintiffs would not have purchased Defendants' Milk Products had they known the truth and are entitled to the maximum refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendants, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and are entitled to damages.

## V.    CLASS ALLEGATIONS

108.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following Classes (or alternative Classes),[8] for the time period December 5, 2003 through August 23, 2007 ("Class Period"), defined as follows:

### Aurora Classes

All persons in the United States who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Class").

All persons in the Consumer Protection States[9] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Consumer Protection Class").

All persons in the Non-Privity Breach of Express Warranty States[10] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Breach of Express Warranty Class").

---

[8]   Plaintiffs reserve the right to amend all class definitions at class certification based on additional research and/or changes in state law.

[9]   The Consumer Protection States are defined hereinafter to include the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Virginia, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.

[10]   The Non-Privity Breach of Express Warranty States are defined hereinafter to include the states of Alaska, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Hawaii, Indiana,

All persons in the Non-Privity Breach of Implied Warranty States[11] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Breach of Implied Warranty Class").

All persons in the Negligence Per Se States[12] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Negligence Per Se Class").

All persons in the Unjust Enrichment States[13] who purchased milk or milk products derived from milk produced by Aurora Dairy (the "Aurora Unjust Enrichment Class").

### Aurora High Meadow Classes

All persons in the United States who purchased High Meadow-brand milk or milk products ("High Meadow Purchaser Class").

All persons in the Consumer Protection States who purchased High Meadow-brand milk or milk products (the "High Meadow Consumer Protection Class").

All persons in the Non-Privity Breach of Express Warranty States who purchased High Meadow-brand milk or milk products (the "High Meadow Breach of Express Warranty Class").

All persons in the Non-Privity Breach of Implied Warranty States who purchased High Meadow-brand milk or milk products (the "High Meadow Breach of Implied Warranty Class").

---

Kansas, Louisiana, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, or Wyoming, which do not require privity.

[11]   The Non-Privity Breach of Implied Warranty States are defined hereinafter to include the states of Arkansas, Alaska, California, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, or Wyoming, which do not require privity.

[12]   The Negligence Per Se States are defined hereinafter to include the United States, except for the states of Arkansas, Florida, Kansas, Texas, and Wisconsin.

[13] The Unjust Enrichment States are defined hereinafter to include the United States, except for the states of California and Texas.

All persons in the Negligence Per Se States who purchased High Meadow-brand milk or milk products (the "High Meadow Negligence Per Se Class").

All persons in the Unjust Enrichment States who purchased High Meadow-brand milk or milk products (the "High Meadow Unjust Enrichment Class").

### The Costco Classes

All persons in the United States who purchased milk or milk products derived from milk produced by Aurora Dairy and retailed by Costco under the "Kirkland" brand (the "Costco Purchaser Class").

All persons in the Consumer Protection States who purchased Kirkland-brand milk or milk products ("Costco Consumer Protection Class").

All persons in the Unjust Enrichment States who purchased Kirkland-brand milk or milk products (the "Costco Unjust Enrichment Class").

### The Safeway Classes

All persons in the United States who purchased milk or milk products derived from milk produced by Aurora Dairy and retailed by Safeway under the "O Organics" brand (the "Safeway Purchaser Class").

All persons in the Consumer Protection States who purchased O Organics-brand milk or milk products ("Safeway Consumer Protection Class").

All persons in the Unjust Enrichment States who purchased O Organics-brand milk or milk products (the "Safeway Unjust Enrichment Class").

### The Target Classes

All persons in the United States who purchased milk or milk products derived from milk produced and sold by Aurora Dairy and retailed by Target under the "Archer Farms" brand (the "Target Purchaser Class").

All persons in the Consumer Protection States who purchased Archer Farms-brand milk or milk products ("Target Consumer Protection Class").

All persons in the Unjust Enrichment States who purchased Archer Farms-brand milk or milk products (the "Target Unjust Enrichment Class").

## The Wal-Mart Classes

All persons in the United States who purchased milk or milk products derived from milk produced by Aurora Dairy and retailed by Wal-Mart under the "Great Value" brand (the "Wal-Mart Purchaser Class").

All persons in the Consumer Protection States who purchased Great Value-brand milk or milk products ("Wal-Mart Consumer Protection Class").

All persons in the Unjust Enrichment States who purchased Great Value-brand milk or milk products (the "Wal-Mart Unjust Enrichment Class").

## The Wild Oats Classes

All persons in the United States who purchased milk or milk products derived from milk produced and sold by Aurora Dairy and retailed by Wild Oats under the "Wild Oats" brand (the "Wild Oats Purchaser Class").

All persons in the Consumer Protection States who purchased Wild Oats-brand milk or milk products ("Wild Oats Consumer Protection Class").

All persons in the Unjust Enrichment States who purchased Wild Oats-brand milk or milk products (the "Wild Oats Unjust Enrichment Class").

109. In defining these Classes, the persons purchasing the Milk Products include those who purchased for personal, household, or family use and consumption, but not for commercial resale.

110. Plaintiffs are informed and believe that the Classes consist of many thousands of persons throughout the United States, making individual joinder of all class members impracticable.

111. Questions of law and fact are common to the Classes and predominate over questions affecting only individual members, including, among others, the following:

    a. Whether the alleged conduct by Defendants violated state law as alleged in this Complaint;

b.   Whether Defendants engaged in unfair, deceptive, or unlawful acts or practices;

c.   Whether Defendants made misrepresentations about the Milk Products and the manner in which they were produced;

d.   Whether Defendants omitted to state material facts about the Milk Products and the manner in which they were produced;

e.   Whether Defendants made and breached express and/or implied warranties to Plaintiffs and the other members of the Classes about the Milk Products;

f.   Whether Defendants obtained a benefit to the detriment of Plaintiffs and the other members of the Classes;

g.   Whether Defendants were unjustly enriched by their deceptive practices;

h.   Whether Defendants' acts and/or omissions caused injury to Plaintiffs and the other members of the Classes; and

i.   Whether Plaintiffs and the other members of the Classes are entitled to damages.

112.   Plaintiffs' claims are typical of the claims of class members as described above; the claims arose from the same course of conduct by Defendants and the relief sought is common to Plaintiffs and the other members of the Classes.

113.   Plaintiffs will fairly and adequately represent and protect the interests of all class members.  Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

114.   Class certification is proper under Fed. R. Civ. P. 23(b)(3), because common issues of law or fact predominate over any questions affecting only individual class and subclass members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

115.   Furthermore, because the economic damages suffered by the individual class and subclass members may be relatively modest compared to the expense and burden of individual

litigation, it would be impracticable for class and subclass members to seek redress individually for the wrongful conduct alleged herein.

# VI. CAUSES OF ACTION

**A.    Counts Against Aurora**

### COUNT 1: Violation of the Colorado Consumer Protection Act,
### Colo. Rev. Stat. §6-1-101 *et seq.*
### (Brought on behalf of the Aurora Class against Aurora)

115.    All Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.  Plaintiffs bring this claim on behalf of themselves and all other persons who purchased Milk Products nationwide, asserting claims under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

116.    Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1), Plaintiffs are:  (a) actual or potential consumers of Aurora's goods and were injured as a result of the deceptive trade practices described herein; (b) successors in interest to an actual consumer who purchased Aurora's goods; or (c) were injured by the deceptive trade practices described herein in the course of Aurora's business.

117.    The Milk Products are goods or products to which the Colorado Consumer Protection Act applies.

118.    Aurora is a "person" as defined by the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-102(6).

119.    Aurora in the course of its business engaged in one or more acts constituting "deceptive trade practice[s]" pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1), including:

>    a.    Colo. Rev. Stat. § 6-1-105(1)(e):  "Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status,, affiliation, or connection of a person therewith;"

b. Colo. Rev. Stat. § 6-1-105(1)(g): "Represent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;"

c. Colo. Rev. Stat. §6-1-105(1)(i): Advertises goods, services or property with the intent not to sell them as advertised.

d. Colo. Rev. Stat. § 6-1-105(1)(u): "Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclosure such information was intended to induce the consumer to enter into a transaction."

120. Aurora's deceptive trade practices include, among other things:

a. its misrepresentations that it had established appropriate housing, pasture conditions, and sanitation practices for its dairy cows to minimize the occurrence and spread of diseases and parasites, when it had not;

b. its misrepresentations that it had established and maintained living conditions for its dairy cows which accommodated their health and natural behavior, when it had not;

c. its misrepresentations that it had provided its dairy cows with suitable access to the outdoors, shade, shelter, exercise areas, fresh air, and direct sunlight or provided its dairy cows with proper access to pasture, which it had not;

d. its misrepresentations that it had provided its dairy cows (which typically consume their own bedding) with appropriate clean, dry organic bedding, when it had not;

34

e.      its misrepresentations that it had provided its dairy cows with a total feed ration composed of agricultural products, including pasture and forage, that are organically produced and handled, when it had not; and

f.      its misrepresentations that it had kept conventional dairy cows separate from the cows that produced its Milk Products, and thus dairy cows that had been subject to antibiotic treatment and/or ate non-organic feed provided milk from which the Milk Products were made, when it had not;

g.      its misrepresentations that it had maintained adequate records that disclosed all activities and transactions in sufficient detail to be readily understood and audited, when it had not.

h.      its misrepresentations regarding the manner in which its dairy cows were raised and fed; and

i.      its suppression or omission of material facts regarding the production of its Milk Products, specifically that the dairy cows were not raised at pasture, that its Milk Products are industrially produced, and that the production of its Milk Products was not in accordance with its other representations.

121.    Aurora's misrepresentations and omissions were deceptive and had the capacity to deceive reasonable consumers.

122.    Aurora's misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

123.     Aurora's above described deceptive trade practices significantly impacted the public, including Plaintiffs and the other members of the Class, as actual or potential consumers of Aurora's Milk Products.

124.     Because Aurora is headquartered in Colorado and a substantial amount of the conduct giving rise to this action occurred in Colorado, the Colorado Consumer Protection Act should apply nationwide to this claim against Aurora.

125.     As a direct and proximate result of Aurora's use or employment of deceptive trade practices, Plaintiffs and the other members of the Class have suffered damages.

126.     Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiffs and the other members of the Class are entitled to the relief set forth below, as appropriate, including, but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this action.

127.     As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-113(2)(b)(2.3), Aurora has acted fraudulently, willfully, knowingly, or intentionally with respect to its injury-causing conduct, such that an award of punitive damages is appropriate.

**COUNT 2: Violation of State Consumer Protection Laws**
**(Brought on behalf of the Aurora Consumer Protection Class)**

128.     All Plaintiffs (except Snell and Still) incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased Milk Products in states having similar consumer protection laws.

129.    Each of these Plaintiffs is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products.

130.    The consumer protection laws of the state in which each Plaintiff purchased the Milk Products declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

131.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

    b.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

    c.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

    d.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

    e.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

    f.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

    g.    District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

    h.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

    i.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480

1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.  Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.  Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.  Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.  Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.  Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.  Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

132.     The Milk Products constitute products to which these consumer protection laws apply.

133.     In the conduct of trade or commerce regarding its production, marketing and sale of Milk Products, Aurora engaged in one or more unfair or deceptive acts or practices, including, but not limited to:

a.     its misrepresentations that it had established appropriate housing, pasture conditions, and sanitation practices for its dairy cows to minimize the occurrence and spread of diseases and parasites, when it had not;

b.     its misrepresentations that it had established and maintained living conditions for its dairy cows which accommodated their health and natural behavior, when it had not;

c. its misrepresentations that it had provided its dairy cows with suitable access to the outdoors, shade, shelter, exercise areas, fresh air, and direct sunlight or provided its dairy cows with proper access to pasture, which it had not;

d. its misrepresentations that it had provided its dairy cows (which typically consume their own bedding) with appropriate clean, dry organic bedding, when it had not;

e. its misrepresentations that it had provided its dairy cows with a total feed ration composed of agricultural products, including pasture and forage, that are organically produced and handled, when it had not;

f. its misrepresentations that it had kept conventional dairy cows separate from the cows that produced its Milk Products, and thus dairy cows that had been subject to antibiotic treatment and/or ate non-organic feed provided milk from which the Milk Products were made, when it had not; and

g. its misrepresentations that it had maintained adequate records that disclosed all activities and transactions in sufficient detail to be readily understood and audited, when it had not;

h. its misrepresentations regarding the manner in which its dairy cows were raised and fed; and

i. its suppression or omission of material facts regarding the production of its Milk Products, specifically that the dairy cows were not raised at pasture, that its Milk Products are industrially produced, and that the production of its Milk Products failed to comply with its other representations.

134.     Aurora's labeling, statements, advertisements, representations and omissions were deceptive and likely to deceive.

135.     Aurora knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

136.     Aurora used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon or otherwise be deceived.

137.     Plaintiffs and the other members of the Class did rely on such misrepresentations or were deceived.

138.     Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain.  As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged.

139.     Aurora's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 3: Breach of Express Warranty
### (Brought on behalf of the Aurora Breach of Express Warranty Class against Aurora)

140.     Plaintiffs Benya, Bowen, Clark, Coselli, Cruz,  Gallardo, Gollomp, Hudspeth, Kueck, Lloyd, Meacham, Millikan, Robinson, Snell, Subashe, Theodore, and Weiss, incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such

products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

141.    Aurora's representations made to Plaintiffs and the members of the Class at the point of purchase are part of the description of the goods, and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

142.    In addition or in the alternative, Aurora's representations were made by Aurora to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to have relied) on said representation as a material factor in his/her decision to purchase the Milk Products rather than conventional milk products.

143.    At all times relevant to this action, Aurora falsely represented the products and the manner in which the products were produced, in breach of these express warranties in violation of state express warranty laws, including:

      a.      Ak. St. § 42.02.313;

      b.      Ariz. Rev. Stat. Ann. § 47-2313;

      c.      Ark. Code Ann. § 4-2-313;

      d.      Cal. Comm. Code § 2313;

      e.      Colo. Rev. St. § 4-2-313;

      f.      Conn. Gen. Stat. Ann. § 42a-2-313;

      g.      D.C. Stat. § 28:2-313;

      h.      Haw. Rev. Stat. § 490:2-313;

      i.      Ind. Code § 26-1-2-313;

      j.      Kansas Stat. Ann. § 84-2-313;

k.      La. Civ. Code. Ann. Art. 2520;

l.      11 Maine Rev. Stat. Ann. § 2-313;

m.     Mass. Gen. Laws Ann. 106 § 2-313;

n.      Minn. Stat. Ann. § 336.2-313;

o.      Miss. Code Ann. § 75-2-313;

p.      Missouri Rev. Stat. § 400.2-313;

q.      Mont. Code Ann. § 30-2-313;

r.      Neb. Rev. Stat. § 2-313;

s.      Nev. Rev. Stat. §104.2313;

t.      N.H. Rev. Stat. § 382-A:2-313;

u.      N.J. Stat. Ann. § 12A:2-313;

v.      N.M. Stat. Ann. § 55-2-313;

w.     N.Y. U.C.C. Law § 2-313;

x.      N.C. Gen. Stat. Ann. § 25-2-313;

y.      Okla. Stat. Ann. Tit. 12A, § 2-313;

z.      Or. Rev. Stat. § 72.3130;

aa.    Pa. Stat. Ann. Tit. 13, § 2313;

bb.    R.I. Stat. § 6A-2-313;

cc.    S.C. § 36-2-313;

dd.    S.D. Cod. Laws. § 57A-2-313;

ee.    Tenn. Code Ann. § 47-2-313;

ff.     Tex. Bus. & Com. Code Ann. § 2.313;

gg.    Ut. Code Ann. § 70A-2-313;

      hh.    Vt. Stat. Ann. § 2-313;

      ii.    Wa. Ann. § 62A.2-313;

      jj.    W. Va. Code § 46-2-313; and

      kk.    Wyo. Stat. § 34.1-2-313.

144.    The above statutes do not require privity of contract to recover for breach of express warranty.

145.    As a result of Aurora's conduct, Plaintiffs and the members of the Class have been damaged.

146.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

### COUNT 4: Breach of Implied Warranty of Merchantability
### (Brought on behalf of the Aurora Breach of Implied Warranty Class against Aurora)

147.    Benya, Clark, Cruz, Coselli,  Gallardo, Hudspeth, Lloyd, Meacham, Millikan, Subashe, Theodore and VerNooy, incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

148.    Plaintiffs and the members of the Class purchased Milk Products for the ordinary purposes of Milk Products.

149.    By representing that the Milk Products were produced in a particular way, Aurora impliedly warranted that such products were of merchantable quality, such that the Milk

Products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

150.    At all times material to this action, the Milk Products were not of merchantable quality.

151.    Aurora's conduct breached its implied warranties regarding the Milk Products under state implied warranty laws including:

        a.      Ark. Stat. § 7-2-314 and § 7-2-315;

        b.      Ak. St. § 45.02.314 and § 45.02.315;

        c.      Cal. Comm. Code § 2314;

        d.      Co. Rev. Stat. § 4-2-314 and § 4-2-315;

        e.      6 Del. C. § 2-314 and § 2-315;

        f.      D.C. Stat. § 28:2-314 and § 28:2-315;

        g.      Haw. Rev. Stat. § 490:2-314 and § 490:2-315;

        h.      Ind. Code § 26-1-2-314 and § 26-1-2-315;

        i.      Kan. Stat. Ann. § 50-639(b);

        j.      La. Civ. Code Ann. Art. 2524;

        k.      11 Maine Rev. Stat. Ann. § 2-314 and § 2-315;

        l.      Md. Com. Law Code Ann. § 2-314 and § 2-315;

        m.      Mass. Gen. Laws Ann. 106 § 2-314 and § 2-315;

        n.      Mich. Comp. Laws Ann. § 440.2314 and § 440.2315;

        o.      Minn. Stat. Ann. § 336.2-314 and §336.2-315;

        p.      Miss. Code Ann. § 75-2-314 and § 75-2-315;

        q.      Mo. Rev. Stat. § 400.2-314 and § 400.2-315;

r.    Mont. Code Ann. § 30-2-314 and § 30-2-315;

s.    Neb. Rev. Stat. § 2-314 and § 2-315;

t.    Nev. Rev. Stat. § 104.2314 and § 104.2315;

u.    N.H. Stat. Ann. § 382-A:2-314 and § 382-A:2-315;

v.    N.J. Stat. Ann. § 12A:2-314 and § 12A:2-315;

w.    N.M. Stat. Ann. § 55-2-314 and § 55-2-315;

x.    N.D. Stat. § 41-02-31 and § 41-02-32;

y.    Ohio Rev. Code Ann. § 1302.27 and § 1302.28;

z.    Okla. Stat. Ann. tit. 12A, § 2-314 and § 2-315;

aa.    O.R.S. § 72.8020;

bb.    Pa. Stat. Ann. tit. 13, § 2314 and §2315;

cc.    S.C. § 36-2-314 and § 36-2-315;

dd.    S.D. Cod. Laws. § 57A-2-314 and § 57A-2-315;

ee.    Tex. Bus. & Com. Code Ann. § 2.314 and § 2.315;

ff.    Ut. Code Ann. § 70A-2-314 and § 70A-2-315;

gg.    Va. Code Ann. § 8.2-314 and § 8.2-315;

hh.    W. Va. Code § 46-2-314 and § 46-2-315; and

ii.    Wyo. Stat. § 34.1-2-314 and § 34.1-2-315.

152.    These states do not require privity of contract to recover for breach of implied

warranty.

153.    As a result, Plaintiffs and the members of the Class have been damaged.

154.    Within a reasonable time after they knew or should have known of such breach,

Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

## COUNT 5: Negligence Per Se
### (Brought on behalf of the Aurora Negligence Per Se Class against Aurora)

155.   All Plaintiffs (except Brice Leigh, Clark, Coselli, Meacham and Ross) incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

156.   The Organic Foods Production Act of 1990 ("OFPA" or the "Act"), 7 U.S.C. § 6501, *et seq*., and pertinent regulations enacted by the United States Department of Agriculture ("USDA"), contain certain requirements for Milk Products sold as "organic."   Pursuant to the OFPA, the USDA issued regulations in March 2001 setting forth specific requirements that such foods, including dairy products, must meet.  These regulations are contained at 7 CFR Part 205, and are implemented through the National Organic Program ("NOP").

157.   The OFPA provides, in part, that "a person may sell or label an agricultural product as organically produced only if such product is produced and handled in accordance with [the OFPA]."  7 U.S.C. § 6505(a)(1)(A).

158.   Among other requirements for Milk Products to qualify as "organic," dairy cows must be pastured in a manner complying with OFPA requirements. "Pasture" is defined as "[l]and used for livestock grazing that is managed to provide feed value and maintain and improve soil, water and vegetative sources."  7 C.F.R. § 205.2.

159.   The "producer of an organic livestock operation must establish and maintain livestock living conditions which accommodate the health and natural behavior of animals

including . . . [a]ccess to the outdoors . . . [and] [a]ccess to pasture for ruminants." 7 C.F.R. § 205.239.  Dairy cows are ruminants.

160.    Organic livestock producers also "must establish and maintain preventative livestock health care practices, including . . . [e]stablishment of appropriate housing, pasture conditions, and sanitation practices to minimize the occurrence and spread of diseases and parasites; [and] [p]rovision of conditions which allow for exercise, freedom of movement, and reduction of stress appropriate to the species." 7 C.F.R. § 205.238.

161.    Such producers also "must provide livestock with a total feed ration composed of agricultural products, including pasture and forage." 7 C.F.R. § 205.237.

162.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which Milk Products will be sold as organically produced shall be raised and handled in accordance with OFPA standards for not less than the twelve month period immediately prior to the sale of such Milk Products.

163.    The OFPA, including 7 U.S.C. § 6509(e)(2), is intended to protect purchasers of organic Milk Products, including Plaintiff and members of the Class.

164.    Aurora owed a duty to purchasers of its Milk Products – including Plaintiff and the Class –to produce, market and/or sell its Milk Products in accordance with OFPA, its accompanying regulations, and other applicable laws.

165.    From at least December 2003 through August 23, 2007, Aurora did not comply with OFPA, its accompanying regulations and other applicable laws.  From 2003 to at least August 23, 2007, Aurora sold "organic" milk using processes which failed to comply with those requirements, including but not limited to failure to establish pasture appropriate for minimizing the occurrence and spread of diseases and parasites, failure to establish access to pasture, and

failure to maintain records documenting compliance with the USDA requirements for use of an "organic" label.

166.    Based on this and its other conduct as alleged above, Aurora breached its duty to Plaintiffs and the members of the Class.

167.    As a result of Aurora's conduct, Plaintiff and members of the Class have suffered damages.

168.    Aurora's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

### COUNT 6: Negligent Misrepresentation
### (Brought on behalf of the Aurora Class against Aurora)

169.    All Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

170.    Aurora owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

171.    Aurora negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Aurora.

172.    Aurora's representations and omissions regarding its Milk Products were material.

173.    Aurora's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

174.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Aurora made regarding its Milk Products.

175.    Aurora knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Aurora.

176.    Aurora's representations and omissions regarding its Milk Products were false and misleading as alleged above.

177.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

178.    As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

### COUNT 7: Unjust Enrichment
### (Brought on behalf of the Aurora Unjust Enrichment Class against Aurora)

179.    All Plaintiffs (except Gallardo, Theodore, Coselli and Meacham) incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

180.    Aurora markets and promotes the manner in which it produces the Milk Products as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced milk products.

181.    Consumers pay a higher price for Milk Products.

182.    Because consumers are willing to pay a higher retail price for Milk Products, Aurora is able to sell such products to retailers for a price higher than it would otherwise obtain.

183.    Aurora received a benefit from Plaintiffs and the members of the Class in the form of the prices it charged to retailers for the Milk Products it produced.

184.    Retailers then sell the Milk Products to Plaintiffs and the members of the Class for prices higher than conventionally produced products.

185.    Under the circumstances, it would be inequitable for Aurora to retain the above-described benefit.

186.    As a result of Aurora's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Aurora's unjust enrichment.

**B.      Counts Against Aurora With Respect to the High Meadow Label**

**COUNT 8: Violation of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. § 6-1-101 et seq.**
**(Brought on behalf of the High Meadow Purchaser Class against Aurora)**

187.    Plaintiffs Brice Leigh, Gollomp and Ross incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, these Plaintiffs bring this Count on behalf of themselves and all other persons who purchased Milk Products sold by Aurora under the "High Meadow" brand nationwide, asserting claims under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

188.     Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1),
Plaintiffs are:  (a) actual or potential consumers of Aurora's goods and were injured as a result of
the deceptive trade practices described herein; (b) successors in interest to an actual consumer
who purchased Aurora's goods; or (c) were injured by the deceptive trade practices described
herein in the course of Aurora's business.

189.     Aurora is a "person" as defined by the Colorado Consumer Protection Act, Colo.
Rev. Stat. § 6-1-102(6).

190.     Aurora in the course of its business engaged in one or more acts constituting
"deceptive trade practice[s]" pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat.
§ 6-1-105(1), including:

a.     Colo. Rev. Stat. § 6-1-105(1)(e):  "Knowingly mak[ing] a false
representation as to the characteristics, ingredients, uses, benefits, alterations, or
quantities of goods, food, services, or property or a false representation as to the
sponsorship, approval, status,, affiliation, or connection of a person therewith;"

b.     Colo. Rev. Stat. § 6-1-105(1)(g):  "Represent[ing] that goods, food,
services, or property are of a particular standard, quality, or grade, or that goods are of a
particular style or model, if he knows or should know that they are of another;"

c.     Colo. Rev. Stat. § 6-1-105(1)(i): Advertises goods, services or property
with the intent not to sell them as advertised.

d.     Colo. Rev. Stat. § 6-1-105(1)(u):  "Fail[ing] to disclose material
information concerning goods, services, or property which information was known at the
time of an advertisement or sale if such failure to disclosure such information was
intended to induce the consumer to enter into a transaction."

53

191.    Aurora's deceptive trade practices include, among other things, representing (or omitting material facts regarding), *inter alia*, that:

    a.   the dairy cows that produce the Milk Products have not been given antibiotics;

    b.   the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

    c.   the diet of the dairy cows that produce the Milk Products includes  100% organic feed;

    d.   the diet of the dairy cows that produce the Milk Products includes organic pasture; and

    e.   the dairy cows have true access to pasture.

192.    Aurora's misrepresentations and omissions were deceptive and had the capacity to deceive reasonable consumers.

193.    Aurora's misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

194.    Aurora's above described deceptive trade practices significantly impacted the public, including Plaintiffs and the other members of the Class, as actual or potential consumers of Aurora's goods – namely its Milk Products.

195.    Because Aurora is headquartered in Colorado and a substantial amount of the conduct giving rise to this action occurred in Colorado, the Colorado Consumer Protection Act should apply nationwide to this claim against Aurora.

196.     As a direct and proximate result of Aurora's use or employment of the deceptive trade practices described above, Plaintiffs and the other members of the Class have suffered damages.

197.     Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiffs and the other members of the Class are entitled to the relief set forth below, as appropriate, including, but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this action.

198.     As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-113(2)(b)(2.3), Aurora has acted fraudulently, willfully, knowingly, or intentionally with respect to its injury causing conduct, such that an award of punitive damages is appropriate.

**COUNT 9: Violation of State Consumer Protection Laws**
**(Brought on behalf of the High Meadow Consumer Protection Class)**

199.     Plaintiffs Brice Leigh, Gollomp and Ross incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased High Meadow brand Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased High Meadow brand Milk Products in states having similar consumer protection laws.

200.     Each of these Plaintiffs is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products.

201.    The consumer protection laws of the state in which each Plaintiff purchased the Milk Products declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

202.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

    b.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

    c.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

    d.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

    e.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

    f.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

    g.    District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

    h.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

    i.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

    j.    Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et*

*seq.*;

w.     New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.     New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.     New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.     North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.    North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.    Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.    Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.    Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.    Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.    Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.    West Virginia Consumer Credit and Protection Act, West Virginia Code §

46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

203.    The Milk Products constitute products to which these consumer protection laws

apply.

204.    In the conduct of trade or commerce regarding its production, marketing and sale

of Milk Products, Aurora engaged in one or more unfair or deceptive acts or practices, including,

but not limited to, representing (or omitting to state material facts regarding), *inter alia,* that:

 a. the dairy cows that produce the Milk Products have not been given antibiotics;

b.   the dairy cows that produce the Milk Products have not been given synthetic

growth hormones;

c.  the diet of the dairy cows that produce the Milk Products includes  100%

organic feed;

d.  the diet of the dairy cows that produce the Milk Products includes organic

pasture; and

e.  the dairy cows have true access to pasture.

205.    Aurora's labeling, statements, advertisements, representations and omissions were

deceptive and likely to deceive.

206.    Aurora knew or should have known that its statements, advertisements,

representations and omissions were untrue or misleading.

207.    Aurora used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

208.    Plaintiffs and the other members of the Class did rely on such misrepresentations.

209.    Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain.  As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged.

210.    Aurora's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

**COUNT 10: Breach Of Express Warranty**
**(Brought on behalf of the High Meadow Breach of Express Warranty Class)**

211.    Plaintiff Gollomp incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

212.    Aurora's representations made to Plaintiffs and the members of the Class at the point of purchase are part of the description of the goods, and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

213.    In addition or in the alternative, Aurora's representations made by Aurora to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representations as

a material factor in his/her decision to purchase the High Meadow Milk Products at higher prices than he/she would otherwise have paid for conventional Milk Products.

214.    At all times relevant to this action, Aurora falsely represented the products and the manner in which the products were produced in breach of these express warranties in violation of state express warranty laws, including:

a.    Ak. St. § 42.02.313;

b.    Ariz. Rev. Stat. Ann. § 47-2313;

c.    Ark. Code Ann. § 4-2-313;

d.    Cal. Comm. Code § 2313;

e.    Colo. Rev. St. § 4-2-313;

f.    Conn. Gen. Stat. Ann. § 42a-2-313;

g.    D.C. Stat. § 28:2-313;

h.    Haw. Rev. Stat. § 490:2-313;

i.    Ind. Code § 26-1-2-313;

j.    Kansas Stat. Ann. § 84-2-313;

k.    La. Civ. Code. Ann. Art. 2520;

l.    11 Maine Rev. Stat. Ann. § 2-313;

m.    Mass. Gen. Laws Ann. 106 § 2-313;

n.    Minn. Stat. Ann. § 336.2-313;

o.    Miss. Code Ann. § 75-2-313;

p.    Missouri Rev. Stat. § 400.2-313;

q.    Mont. Code Ann. § 30-2-313;

r.    Neb. Rev. Stat. § 2-313;

s.      Nev. Rev. Stat. §104.2313;

t.      N.H. Rev. Stat. § 382-A:2-313;

u.      N.J. Stat. Ann. § 12A:2-313;

v.      N.M. Stat. Ann. § 55-2-313;

w.      N.Y. U.C.C. Law § 2-313;

x.      N.C. Gen. Stat. Ann. § 25-2-313;

y.      Okla. Stat. Ann. Tit. 12A, § 2-313;

z.      Or. Rev. Stat. § 72.3130;

aa.     Pa. Stat. Ann. Tit. 13, § 2313;

bb.     R.I. Stat. § 6A-2-313;

cc.     S.C. § 36-2-313;

dd.     S.D. Cod. Laws. § 57A-2-313;

ee.     Tenn. Code Ann. § 47-2-313;

ff.     Tex. Bus. & Com. Code Ann. § 2.313;

gg.     Ut. Code Ann. § 70A-2-313;

hh.     Vt. Stat. Ann. § 2-313;

ii.     Wa. Ann. § 62A.2-313;

jj.     W. Va. Code § 46-2-313; and

kk.     Wyo. Stat. § 34.1-2-313.

215.    The above statutes do not require privity of contract to recover for breach of express warranty.

216.    As a result of Aurora's conduct, Plaintiffs and the members of the Class were damaged.

217.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

**COUNT 11: Breach Of Implied Warranty of Merchantability**
**(Brought on behalf of the High Meadow Breach of Implied**
**Warranty Class Against Aurora)**

218.    Plaintiff Gollomp incorporates by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Count(s) above, Plaintiff brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased High Meadow Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such product in states having similar laws regarding implied warranty.

219.    Plaintiffs and the members of the Class purchased Milk Products for the ordinary purposes of organic Milk Products.

220.    By representing that the Milk Products were produced in a particular way, Aurora impliedly warranted that such products were of merchantable quality, such that the Milk Products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

221.    At all times material to this action, the Milk Products were not of merchantable quality.

222.    As such, the Milk Products were not fit for their ordinary purpose and could not pass without objection in the trade.

223.    Aurora's conduct breached its implied warranties regarding the Milk Products under state implied warranty laws including:

      a.    Ark. Stat. § 7-2-314 and § 7-2-315;

b.      Ak. St. § 45.02.314 and § 45.02.315;

c.      Cal. Comm. Code § 2314;

d.      Co. Rev. Stat. § 4-2-314 and § 4-2-315;

e.      6 Del. C. § 2-314 and § 2-315;

f.      D.C. Stat. § 28:2-314 and § 28:2-315;

g.      Haw. Rev. Stat. § 490:2-314 and § 490:2-315;

h.      Ind. Code § 26-1-2-314 and § 26-1-2-315;

i.      Kan. Stat. Ann. § 50-639(b);

j.      La. Civ. Code Ann. Art. 2524;

k.      11 Maine Rev. Stat. Ann. § 2-314 and § 2-315;

l.      Md. Com. Law Code Ann. § 2-314 and § 2-315;

m.      Mass. Gen. Laws Ann. 106 § 2-314 and § 2-315;

n.      Mich. Comp. Laws Ann. § 440.2314 and § 440.2315;

o.      Minn. Stat. Ann. § 336.2-314 and §336.2-315;

p.      Miss. Code Ann. § 75-2-314 and § 75-2-315;

q.      Mo. Rev. Stat. § 400.2-314 and § 400.2-315;

r.      Mont. Code Ann. § 30-2-314 and § 30-2-315;

s.      Neb. Rev. Stat. § 2-314 and § 2-315;

t.      Nev. Rev. Stat. § 104.2314 and § 104.2315;

u.      N.H. Stat. Ann. § 382-A:2-314 and § 382-A:2-315;

v.      N.J. Stat. Ann. § 12A:2-314 and § 12A:2-315;

w.      N.M. Stat. Ann. § 55-2-314 and § 55-2-315;

x.      N.D. Stat. § 41-02-31 and § 41-02-32;

y.      Ohio Rev. Code Ann. § 1302.27 and § 1302.28;

z.      Okla. Stat. Ann. tit. 12A, § 2-314 and § 2-315;

aa.     O.R.S. § 72.8020;

bb.     Pa. Stat. Ann. tit. 13, § 2314 and §2315;

cc.     S.C. § 36-2-314 and § 36-2-315;

dd.     S.D. Cod. Laws. § 57A-2-314 and § 57A-2-315;

ee.     Tex. Bus. & Com. Code Ann. § 2.314 and § 2.315;

ff.     Ut. Code Ann. § 70A-2-314 and § 70A-2-315;

gg.     Va. Code Ann. § 8.2-314 and § 8.2-315;

hh.     W. Va. Code § 46-2-314 and § 46-2-315; and

ii.     Wyo. Stat. § 34.1-2-314 and § 34.1-2-315.

224.    These states do not require privity of contract to recover for breach of implied warranty.

225.    As a result, Plaintiffs and the members of the Class were damaged.

226.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Aurora on notice thereof.

### COUNT 12: Negligence Per Se
### (Brought on behalf of the High Meadow Negligence Per Se Class Against Aurora)

227.    Plaintiff Gollomp incorporates by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, Plaintiff brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and on behalf of:  (a) all other persons who purchased Milk Products in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligence per se.

228.    Section 6509(e)(2) of the OFPA provides, in part, that dairy animals from which Milk Products will be sold as organically produced shall be raised and handled in accordance with OFPA for not less than the twelve month period immediately prior to the sale of such Milk Products.

229.    The OFPA, including 7 U.S.C. § 6509(e)(2), is intended to protect purchasers of organic Milk Products, including Plaintiff and members of the Class.

230.    Aurora owed a duty to purchasers of its Milk Products – including Plaintiff and the Class –to produce, market and/or sell its Milk Products in accordance with OFPA, its accompanying regulations, and other applicable laws.

231.    From at least December 2003 through at least August 23, 2007 Aurora did not comply with OFPA, its accompanying regulations and other applicable laws. Based on this conduct, and its other conduct, as alleged above, Aurora breached its duty to Plaintiffs and the members of the Class.

232.    As a direct and proximate result of Aurora's conduct, Plaintiff and members of the Class have suffered damages in an amount to be proven at trial.

233.    Aurora's conduct was outrageous, done with malice or bad motives, or done with reckless indifference to the interests of others such that an award of punitive damages is appropriate.

**COUNT 13: Negligent Misrepresentation**
**(Brought on behalf of the High Meadow Purchaser Class Against Aurora)**

234.    Plaintiffs Brice Leigh, Gollomp and Ross incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products under the High Meadow label and on behalf

of:  (a) all other persons who purchased Milk Products and sold under the High Meadow label in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

235.     Aurora owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

236.     Aurora negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Aurora.

237.     Aurora's representations and omissions regarding its Milk Products were material.

238.     Aurora's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

239.     Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Aurora made regarding its Milk Products.

240.     Aurora knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Aurora.

241.     Aurora's representations and omissions regarding its Milk Products were false and misleading as alleged above.

242.     As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

243.     As a result of Aurora' conduct, Plaintiffs and the members of the Class were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

## COUNT 14:  Unjust Enrichment
### (Brought on behalf of the Aurora High Meadow Unjust Enrichment Class)

244.     Plaintiffs Brice Leigh, Gollomp and Ross incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products under the High Meadow brand and on behalf of:  (a) all other persons who purchased Milk Products under the High Meadow brand in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

245.     Aurora markets and promotes the production process for the Milk Products as having health, environmental and other benefits warranting a higher retail price than conventionally produced Milk Products.

246.     Aurora charged, and consumers paid, a higher retail price for the Milk Products than the price of conventionally produced Milk Products.

247.     Aurora received a benefit in the form of the price charged by Aurora and paid by Plaintiffs and the members of the Class for the Milk Products.

248.     Under the circumstances, it would be inequitable for Aurora to retain the above-described benefit.

249.     As a result of Aurora's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Aurora's unjust enrichment.

C.      **Counts Against Costco**

**COUNT 15: Violation Of The Washington Consumer Protection Act**,
**RCW 19.86 *et seq.***
**(Brought on behalf of the Costco Purchaser Class)**

250.    Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd, Millikan, and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Costco Purchaser Class.

251.    The Washington Consumer Protection Act, Title 19, Chapter 86 of the Revised Code of Washington, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

252.    Plaintiffs and the members of the Class are purchasers, consumers or otherwise within the class of persons that the Washington Consumer Protection Act was intended to protect.

253.    The Milk Products sold by Costco are goods or products to which the Washington Consumer Protection Act applies.

254.    Costco is a seller or other person to whom the Washington Consumer Protection Act applies.

255.    Costco engaged in unfair or deceptive acts or practices in the conduct of the trade or commerce of its Milk Products by misrepresenting that (or omitting material facts regarding), *inter alia*:

> a.   the dairy cows that produce the Milk Products have not been given antibiotics;
>
> b.   the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

    c.  the diet of the dairy cows that produce the Milk Products does not include

        pesticides (which implies that the feed is organic);

    d.  the diet of the dairy cows that produce the Milk Products includes organic

        pasture; and

    e.  the dairy cows have true access to pasture.

256.    Such misrepresentations or omissions were material.

257.    Costco's misrepresentations and omissions were deceptive and had the capacity or tendency to deceive a substantial portion of the public.

258.    Costco's misrepresentations and omissions were made for the purpose of, and did, induce Plaintiffs and the members of the Class who purchase Costco's Milk Products for an amount higher than conventional Milk Products.

259.    Plaintiffs and the other members of the Class relied (or should be presumed to have relied) on Costco's misrepresentations and omissions, or were deceived.

260.    Costco's conduct significantly impacted the public, including Plaintiffs and the other members of the Class as actual or potential consumers of the Milk Products sold by Costco.

261.    Because Costco is headquartered in Washington, Costco made decisions regarding the labeling, marketing and sale of the Milk Products in Washington, and other conduct giving rise to this action occurred in Washington, the Washington consumer protection laws should apply nationwide to this claim against Costco.

262.    As a direct and proximate result of Costco's wrongful conduct, Plaintiffs and the members of the Class have been damaged.  Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendant,

Plaintiffs did not receive the benefit of the bargain.  As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged

263.    Plaintiffs and the Class are entitled to compensatory damages, treble damages, attorneys' fees and cost of this suit.

264.    Because Costco's conduct impacts the public interest, an award of treble damages is appropriate, pursuant to Wash. Rev. Code § 19.86.090.

### COUNT 16: Violation Of State Consumer Protection Laws
### (Brought on behalf of the Costco Consumer Protection Class)

265.    Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd, Millikan, and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Costco and on behalf of:  (a) all other persons who purchased Milk Products sold by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

266.    The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the Milk Products sold by Costco declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

267.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

      a.      Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

      b.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

c.      California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;
and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et
seq.*;

f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.      District of Columbia Consumer Protection Procedures Act, D.C. Code §
28 3901, *et seq.*;

h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §
501.201, *et seq.*;

i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480
1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised
Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS
§ 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et
seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and
Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et
seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et

*seq.*;

p.     Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.     Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.     Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.     Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.     Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.     Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.     New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.     New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.     New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.     New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.     North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd. Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff. Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg. South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii. Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj. Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk. Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo. Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

268. Each of these Plaintiffs and each member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products sold by Costco.

269.     Costco is a seller or other person to which these consumer protection laws apply.

270.     The Milk Products sold by Costco constitute products to which these consumer protection laws apply.

271.     Costco engaged in unfair or deceptive acts or practices in the conduct of the trade or commerce of its Milk Products by misrepresenting that (or omitting material facts regarding), *inter alia*:

> a.   the dairy cows that produce the Milk Products have not been given antibiotics;
>
> b.   the dairy cows that produce the Milk Products have not been given synthetic growth hormones;
>
> c.   the diet of the dairy cows that produce the Milk Products does not include pesticides (which implies that the feed is organic);
>
> d.   the diet of the dairy cows that produce the Milk Products includes organic pasture; and
>
> e.   the dairy cows have true access to pasture.

272.     In the conduct of trade or commerce Costco's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

273.     Costco knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

274.     Costco used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

275.     Plaintiffs and the other members of the Class did rely (or should be presumed to have relied) on such misrepresentations, or were deceived.

276.     As a result of Costco's conduct, Plaintiffs and the members of the Class were damaged.  Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain.  As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged.

277.     Costco's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

## COUNT 17: Breach Of Express Warranty
### (Brought on behalf of the Costco Purchaser Class)

278.     Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd, Millikan, and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and sold at Costco and on behalf of:  (a) all other persons who purchased Milk Products sold by Costco in the same state as Plaintiff purchased such product; and (b) all other persons who purchased such product in states having similar laws regarding express warranty.

279.     Costco's representations are made to Plaintiffs and members of the Costco Purchaser Subclass at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

280.     In addition or in the alternative, Costco's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the

members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the Kirkland Milk Product.

281.    By its statements and representations, Costco expressly warranted that the Milk Products complied with the representations Costco made about the products and the manner in which they were produced.

282.    The Milk Products sold by Costco did not, in fact, comply with the representations Costco made about the products and the manner in which they were produced.

283.    At all times relevant to this action, Costco falsely represented the Milk Products and the manner in which the products were produced in breach of these express warranties.

284.    As a result of Costco's conduct, Plaintiffs and the members of the Class were damaged.

285.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Costco on notice thereof.

### COUNT 18: Breach Of Implied Warranty of Merchantability
### (Brought on behalf of the Costco Purchaser Class)

286.    Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd, Millikan, and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Costco on behalf of:  (a) all other persons who purchased Milk Products sold by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

287.    Plaintiffs and the members of the Class purchased Milk Products sold by Costco for the ordinary purposes of Milk Products.

288.     By representing that the Milk Products were produced in a particular way, Aurora impliedly warranted that such products were of merchantable quality, such that the Milk Products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

289.     At all times material to this action, the Milk Products were not of merchantable quality.

290.     As a result, Plaintiffs and the members of the Class were damaged.

291.     Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Costco on notice thereof.

**COUNT 19 Negligent Misrepresentation**
**(Brought on behalf of the Costco Purchaser Class)**

292.     Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd, Millikan, and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Costco on behalf of:  (a) all other persons who purchased Milk Products sold by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

293.     Costco owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

294.     Costco negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Costco or at its direction.

295.    Costco's representations and omissions regarding its Milk Products were material.

296.    Costco's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

297.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Costco made regarding its Milk Products.

298.    Costco knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Costco.

299.    Costco's representations and omissions regarding its Milk Products were false and misleading as alleged above.

300.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

301.    As a result of Costco's conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

**COUNT 20 Unjust Enrichment**
**(Brought on behalf of the Costco Unjust Enrichment Class)**

302.    Plaintiffs Bowen, Gollomp, Hudspeth, Lloyd, Millikan, and Subashe incorporate by reference the preceding paragraphs as if they were fully set forth herein. In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Costco on behalf of:  (a) all other persons  who purchased Milk Products sold by Costco in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

303.     Costco markets and promotes the production process for the Milk Products as a process having health, environmental and other benefits warranting a higher retail price than conventionally produced Milk Products.

304.     Costco charges, and consumers pay, a higher retail price for the Milk Products sold by Costco than the price of conventionally produced Milk Products.

305.     Costco received a benefit in the form of the price charged by Costco and paid by Plaintiffs and the members of the Class for the Milk Products sold by Costco.

306.     Under the circumstances, it would be inequitable for Costco to retain the above-described benefit.

307.     As a result of Costco's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Costco's unjust enrichment.

**D.     Counts Against Safeway**

### COUNT 21: Violation of the California Unfair Competition Law, Business And Professions Code §§17200 et seq. (Brought on behalf of the Safeway Purchaser Class)

308.     Plaintiffs Benya, Bowen, Coselli, Kueck, Millikan, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Safeway Purchaser Class.

309.     Safeway placed into the stream of commerce and intended for ultimate sale to consumers Milk Products labeled with misrepresentations, and such placement is and has been "unlawful," "unfair," and "fraudulent" in violation of Cal. Bus. & Prof. Code § 17200 *et seq*., which prohibits unfair competition defined as any "unlawful, unfair or fraudulent business act or practice ("Unfair Competition Law" or "UCL").

80

310.    Additionally, California's False Advertising Law, California Business and Professions Code §§ 17500, *et seq.* ("FAL") makes it unlawful, in connection with the sale of goods or services, to make or disseminate "any statement, . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

311.    Plaintiffs and the members of the Class are purchasers, consumers or otherwise within the class of persons that the UCL was intended to protect.

312.    Safeway is a seller or other person to whom the UCL applies.

313.    Safeway, with the intent to dispose of its Milk Products, made statements in its advertisements and labels concerning those Milk Products that were untrue or misleading and which Safeway knew or in the exercise of reasonable care should have known were untrue or misleading, including that:

      a.   the dairy cows that produce the Milk Products have not been given antibiotics;

      b.   the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

      c.   the diet of the dairy cows is 100% organic;

      d.   the diet of the dairy cows that produce the Milk Products includes organic pasture; and

      e.   the dairy cows have true access to pasture.

314.    Safeway, with the intent to dispose of its Milk Products, made Safeway's advertisements concerning its Milk Products were deceptive and/or likely to deceive.

315.    Safeway's misrepresentations or omissions were material.

316.    Safeway used or employed the unlawful, unfair, and/or deceptive practices described above with the intent that Plaintiffs and the members of the Class would rely thereupon.

317.    Plaintiffs and the members of the Class did rely (or should be presumed to have relied) thereon, or were deceived.

318.    As a result of Safeway's unlawful, unfair, deceptive, untrue, or misleading advertising and other conduct, Plaintiffs and the members of the Class have suffered injury in fact and have lost money or property.

319.    Safeway's conduct violates the California Business and Professions Code, §§17200, *et seq.*

320.    Because Safeway is headquartered in California, and because it made decisions and otherwise acted within the state of California regarding the advertisement, marketing and sale of its Milk Products, the California unfair competition laws should apply nationwide to this claim against Safeway.

321.    Plaintiffs, on their own behalf and on behalf of the Class, request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair competition, as provided in Cal. Bus. & Prof. Code § 17203.

**COUNT 22:  Violation of the California Consumer Legal Remedies Act, California Civil Code §§1750, *et seq.*
(Brought on behalf of the Safeway Purchaser Class)**

322.    Plaintiffs Benya, Bowen, Coselli, Kueck, Millikan, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In

addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own

behalf and on behalf of the Safeway Purchaser Class.

323.    The California Consumer Legal Remedies Act, California Civil Code § 1750, *et*

*seq.* ("CLRA"), was enacted to protect consumers against unfair and deceptive business practices

and to provide efficient and economical procedures to secure such protection.  The CLRA is to

be liberally construed and applied to promote those purposes.

324.    Plaintiffs and the members of the Class are purchasers, consumers or other

persons to whom the CLRA is intended to apply.

325.    The Milk Products sold by Safeway are goods or products to which the CLRA

applies.

326.    Safeway is a seller or other person to whom the CLRA applies.

327.    Safeway engaged in unfair or deceptive acts or practices in transactions which

resulted in the sale of its  Milk Products including, but not limited to, through its

misrepresentations that (or its omissions regarding), *inter alia*:

      a.      the dairy cows that produce the Milk Products have not been given

antibiotics;

      b.      the dairy cows that produce the Milk Products have not been given

synthetic growth hormones;

      c.      the diet of the dairy cows is 100% organic;

      d.      the diet of the dairy cows that produce the Milk Products includes organic

pasture; and

      e.      the dairy cows have true access to pasture.

328.    Theses policies, acts, and practices violated and continue to violate the CLRA in at least the following respects:

  a. In violation of §1770(5) of the CLRA, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ;"

  b. In violation of §1770(7) of the CLRA, "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and

  c. In violation of §1770(9) of the CLRA, "[a]dvertising goods or services with intent not to sell them as advertised."

329.    Safeway undertook the unfair or deceptive acts or practices with the intent that Plaintiff and the other members of the Class would rely upon such acts or practices in purchasing Safeway's Milk Products.

330.    In purchasing Safeway's Milk Products, Plaintiff and the other members of the Class relied (or should be presumed to have relied) upon Safeway's representations, or were deceived.

331.    Because Safeway is headquartered in California, and because it made decisions and otherwise acted within the state of California regarding the advertisement, marketing and sale of its Milk Products, the CLRA should apply nationwide to this claim against Safeway.

332.    As a result of Safeway's wrongful conduct, Plaintiffs and the members of the Class sustained damages by paying a higher price for the Milk Products than comparable milk.

333.    Safeway's conduct was oppressive, fraudulent or malicious and intended to cause harm to Plaintiff and the other members of the Class such that an award of punitive damages is

appropriate..

334.     Safeway was timely notified by consumers of its involvement in transactions relating to the sale of Milk Products, as well as the classwide damage sustained by consumers as a result of such involvement.  Safeway has not corrected or otherwise rectified this situation prior to the filing of this Complaint.

### COUNT 23:  Violation of State Consumer Protection Laws
### (Brought on behalf of the Safeway Consumer Protection Class)

335.     Plaintiffs Benya, Bowen, Coselli, Kueck, Millikan, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Safeway on behalf of:  (a) all other persons who purchased Milk Products sold by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

336.     The consumer protection laws of the state in which each Plaintiff and member of the Safeway Purchaser Subclass purchased the Milk Products sold by Safeway declare that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

337.     Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

      a.     Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

      b.     Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

      c.     California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.    Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.    Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.    Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.    Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.    Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.    Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.    Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

338.    Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products sold by Safeway.

339.    Safeway is a seller or other person to whom the consumer protection laws apply.

340.    The Milk Products sold by Safeway constitute products to which these consumer protection laws apply.

341.    In the conduct of trade or commerce regarding its production, marketing and sale of Milk Products, Safeway engaged in one or more unfair or deceptive acts or practices, including but not limited to:

      a.      the dairy cows that produce the Milk Products have not been given antibiotics;

      b.      the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

      c.      the diet of the dairy cows is 100% organic;

      d.      the diet of the dairy cows that produce the Milk Products includes organic pasture; and

      e.      the dairy cows have true access to pasture.

342.    Safeway's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

343.    Safeway knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

344.    Safeway used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

345.    Plaintiffs and the other members of the Class did rely on such misrepresentations, or were deceived.

346.    Each Plaintiff and member of the Class purchased Milk Products sold by Safeway that were falsely represented.  As a result of Safeway's wrongful conduct, Plaintiffs and the

members of the Class were damaged.  Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain.  As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged.

347.    Safeway's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 24:  Breach of Express Warranty
### (Brought on behalf of the Safeway Purchaser Class)

348.    Plaintiffs Benya, Bowen, Coselli, Kueck, Millikan, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Safeway on behalf of:  (a) all other persons who purchased Milk Products sold by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

349.    Safeway's representations are made to Plaintiffs and members of the Safeway Purchaser Subclass at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

350.    In addition or in the alternative, Safeway's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the O Organics Milk Product.

351.     By its statements and representations, Safeway expressly warranted that the Milk Products complied with the representations Safeway made about the products and the manner in which they were produced.

352.     The Milk Products sold by Safeway did not, in fact, comply with the representations Safeway made about the products and the manner in which they were produced.

353.     At all times relevant to this action, Safeway falsely represented the Milk Products and the manner in which the products were produced in breach of these express warranties.

354.     As a result of Safeway's conduct, Plaintiffs and the members of the Class were damaged.

355.     Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Safeway on notice thereof.

## COUNT 25:  Breach of Implied Warranty of Merchantability
### (Brought on behalf of the Safeway Purchaser Class)

356.     Plaintiffs Benya, Bowen, Coselli, Kueck, Millikan, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Safeway on behalf of:  (a) all other persons who purchased Milk Products sold by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

357.     Plaintiffs and the members of the Class purchased Milk Products sold by Safeway for the ordinary purposes of organic Milk Products.

358.     By representing that the Milk Products were produced in a particular way, Safeway impliedly warranted that such products were of merchantable quality, such that the Milk

Products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

359.    At all times material to this action, the Milk Products were not of merchantable quality.

360.    Safeway held itself out to, and did, possess expertise, skill and knowledge superior to consumers including Plaintiffs and the members of the Class, who had a right to rely thereon.

361.    As a result, Plaintiffs and the members of the Class were damaged.

362.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Safeway on notice thereof.

**COUNT 26:  Negligent Misrepresentation**
**(Brought on behalf of the Safeway Purchaser Class)**

363.    Plaintiffs Benya, Bowen, Coselli, Kueck, Millikan, Gallardo and Theodore incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Safeway on behalf of:  (a) all other persons who purchased Milk Products sold by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

364.    Safeway owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

365.    Safeway negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure

and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Safeway or at its direction.

366.    Safeway's representations and omissions regarding its Milk Products were material.

367.    Safeway's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

368.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Safeway made regarding its Milk Products.

369.    Safeway knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Safeway.

370.    Safeway's representations and omissions regarding its Milk Products were false and misleading as alleged above.

371.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

372.    As a result of Safeway's conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

## COUNT 27:  Unjust Enrichment
## (Brought on behalf of the Safeway Unjust Enrichment Class)

373.    Plaintiffs Benya, Bowen, Kueck, and Millikan incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Safeway on behalf of:  (a) all other persons who purchased Milk Products sold by Safeway in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

374.    Safeway markets and promotes the production process for the Milk Products as having health, environmental and other benefits warranting a higher retail price than conventionally produced Milk Products.

375.    Safeway charges, and consumers pay, a higher retail price for the Milk Products sold by Safeway than the price of conventionally produced Milk Products.

376.    Safeway received a benefit in the form of the price charged by Safeway and paid by Plaintiffs and the members of the Class for the Milk Products sold by Safeway.

377.    Under the circumstances, it would be inequitable for Safeway to retain the above-described benefit.

378.    As a result of Safeway's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Safeway's unjust enrichment.

E.      **Counts Against Target**

COUNT 28:  **Violation of the Minn. Uniform Deceptive Trade Practices Act**,
**Minn. Stat. §325D.43-.48**
**(Brought on behalf of Target Purchaser Class)**

379.    Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Target Purchaser Class.

380.    Plaintiffs bring this claim on behalf of themselves and all other purchasers of Target's Milk Products.

381.    The Minnesota Uniform Deceptive Trade Practices Act, Chapter 325D of the Minnesota Statutes, prohibits the use of deceptive trade practices in the course of business.

382.    Plaintiffs and the members of the Class are consumers, purchasers or other persons to which the Minnesota Act applies.

383.    Target is a seller or other person to whom the Minnesota Act applies.

384.    The Milk Products sold by Target are products to which the Minnesota Act applies.

385.    Target in the course of its business engaged in one or more acts or practices constituting "deceptive trade practices" pursuant to the Minn. Stat. § 325D.43-.48 including, but not limited to:

a.      Minn. Stat. § 325D.43(2): "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;"

b.      Minn. Stat. § 325D.43(5):  "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they

95

do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;"

    c.    Minn. Stat. § 325D.43(7):  "represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and

    d.    Minn. Stat. § 325D.43(13):  "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

386.    Target engaged in not less than the following unfair or deceptive acts or practices in the conduct of the trade or commerce of its Milk Products, including by misrepresenting that (or omitted material facts regarding), *inter alia*:

    a.    the dairy cows that produce the Milk Products have not been given antibiotics;

    b.    the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

    c.    the diet of the dairy cows is organic;

    d.    the diet of the dairy cows that produce the Milk Products includes organic pasture; and

    e.    the dairy cows graze in organic pasture.

387.    Target's representations and omissions were deceptive or likely to deceive.

388.    As a result of Target's unfair or deceptive acts or practices, Plaintiff and members of the Class were damaged. Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive

the benefit of the bargain.  As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged.

389.    Because Target is headquartered in Minnesota, made decisions and took other actions in the state of Minnesota regarding its advertisement, marketing and sale of its Milk Products, the Minnesota consumer protection laws should apply nationwide to this claim against Target.

390.    Target's conduct was oppressive, fraudulent or malicious and intended to cause harm to Plaintiff and the other members of the Class such that an award of punitive damages is appropriate.

### COUNT 29:  Violation of State Consumer Protection Laws
### (Brought on behalf of the Target Consumer Protection Class)

391.    Plaintiffs Cruz, Hudspeth, Robinson and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Target on behalf of: (a) all other persons who purchased Milk Products sold by Target in the same state as Plaintiff purchased such product; and (b) all other persons who purchased such products in states having similar consumer protection laws.

392.    The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the Milk Products sold by Target declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

393.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices

and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

    b.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

    c.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

    d.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

    e.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

    f.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

    g.    District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

    h.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

    i.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

    j.    Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

    k.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

    l.    Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

    m.    Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

394.    Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products sold by Target.

395.    The Milk Products sold by Target constitute products to which these consumer protection laws apply.

396.    Target is a seller or other person to whom the consumer protection laws apply.

397.    In the conduct of trade or commerce regarding its production, marketing and sale of Milk Products, Target engaged in one or more unfair or deceptive acts or practices, including by misrepresenting that (or omitting material facts regarding), *inter alia*:

> a.      the dairy cows that produce the Milk Products have not been given antibiotics;

> b.      the dairy cows that produce the Milk Products have not been given synthetic growth hormones;

> c.      the diet of the dairy cows is organic;

> d.      the diet of the dairy cows that produce the Milk Products includes organic pasture; and

> e.      the dairy cows graze in organic pasture.

398.    Target's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

399.    Target knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

400.     Target used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and other members of the Class rely thereon.

401.     Plaintiffs and the other members of the Class did rely on such misrepresentations, or were deceived.

402.     Each Plaintiff and member of the Class purchased Milk Products sold by Target that were falsely represented.  As a result of Target's conduct, Plaintiffs and the members of the Class were damaged.  Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law. Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain.  As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged.

403.     Target's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 30:  Breach of Express Warranty
### (Brought on behalf of the Target Purchaser Class)

404.     Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Target on behalf of:  (a) all other persons who purchased Milk Products sold by Target in the same state as Plaintiff purchased such product; and (b) all other persons who purchased such product in states having similar laws regarding express warranty.

405.     Target's representations are made to Plaintiffs and members of the Target Purchaser Subclass at the point of purchase, are part of the description of the goods and the

bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

406.    In addition or in the alternative, Target's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the Kirkland Milk Product.

407.    By its statements and representations, Target expressly warranted that the Milk Products complied with the representations Target made about the products and the manner in which they were produced.

408.    The Milk Products sold by Target did not, in fact, comply with the representations Target made about the products and the manner in which they were produced.

409.    At all times relevant to this action, Target falsely represented the Milk Products and the manner in which the products were produced in breach of these express warranties.

410.    As a result of Target's conduct, Plaintiffs and the members of the Class were damaged.

411.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Target on notice thereof.

### COUNT 31:  Breach of Implied Warranty of Merchantability
### (Brought on behalf of the Target Purchaser Class)

412.    Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Target on behalf of:  (a) all other persons who purchased Milk Products sold by Target in the same state as Plaintiff

purchased such product; and (b) all other persons who purchased such product in states having similar laws regarding implied warranty.

413.   Plaintiffs and the members of the Class purchased Milk Products sold by Target for the ordinary purposes of organic Milk Products.

414.   By representing that the Milk Products were produced in a particular way, Aurora impliedly warranted that such products were of merchantable quality, such that the Milk Products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

415.   At all times material to this action, the Milk Products were not of merchantable quality.

416.   Target held itself out to, and did, possess expertise, skill and knowledge superior to consumers including Plaintiffs and the members of the Class, who had a right to rely thereon.

417.   As a result, Plaintiffs and the members of the Class were damaged.

418.   Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Target on notice thereof.

## COUNT 32:  Negligent Misrepresentation
### (Brought on behalf of the Target Purchaser Class)

419.   Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Target on behalf of:  (a) all other persons who purchased Milk Products sold by Target in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

420.    Target owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

421.    Target negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Target or at its direction.

422.    Target's representations and omissions regarding its Milk Products were material.

423.    Target's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

424.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Target made regarding its Milk Products.

425.    Target knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Target.

426.    Target's representations and omissions regarding its Milk Products were false and misleading as alleged above.

427.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

428.    As a result of Target's conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

**COUNT 33:  Unjust Enrichment**
**(Brought on behalf of the Target Unjust Enrichment Class)**

429.    Plaintiffs Cruz, Hudspeth, Robinson, Still and Weiss incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Target on behalf of:  (a) all other persons  who purchased Milk Products sold by Target in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

430.    Target markets and promotes the production process for the Milk Products as having health, environmental and other benefits warranting a higher retail price than conventionally produced Milk Products.

431.    Target charges, and consumers pay, a higher retail price for the Milk Products sold by Target than the price of conventionally produced milk products.

432.    Target received a benefit in the form of the price charged by Target and paid by Plaintiffs and the members of the Class for the Milk Products sold by Target.

433.    Under the circumstances, it would be inequitable for Target to retain the above-described benefit.

434.    As a result of Target's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Target's unjust enrichment.

**F.      Counts Against Wal-Mart**

**COUNT 34:  Violation of the Arkansas Consumer Protection Act,
Ark. Rev. Stat. §4-88-101 et seq.
(Brought on behalf of the Wal-Mart Purchaser Class)**

435.      Plaintiffs Bowen, Brice Leigh, Clark, Meacham and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, Plaintiffs assert this Count on their own behalf and on behalf of the Wal-Mart Purchaser Class.

436.      Plaintiffs bring this claim on behalf of themselves and all other purchasers of Wal-Mart's Milk Products.

437.      The Arkansas Deceptive Trade Practices Act, Title 4, Chapter 88 of the Arkansas Code, declares that deceptive and unconscionable trade practices are unlawful and prohibited.

438.      Plaintiffs and the members of the Class are consumers, purchasers or other persons to whom the Arkansas Deceptive Trade Practices Act applies.

439.      The Milk Products sold by Wal-Mart are products to which the Arkansas Act applies.

440.      Wal-Mart is a seller or other person to which the Arkansas Act applies.

441.      Wal-Mart, in connection with the sale or advertisement of its  Milk Products, utilized the following unlawful acts, engaged in not less than the following unconscionable, false or deceptive acts or practices, or knowingly made the following false representations:

a.   the dairy cows that produce the Milk Products have not been given antibiotics;

b.   the diet of the dairy cows is organic (i.e. not treated with pesticides).

442.      Wal-Mart used or employed the unlawful practices described above with the intent that Plaintiff and the other members of the Class would rely upon such practices.

443. Because Wal-Mart is headquartered in Arkansas, made decisions and engaged in other acts regarding the marketing and sale of its Milk Products in the state of Arkansas, the Arkansas consumer protection laws should apply nationwide to this claim against Wal-Mart.

444. As a result of Wal-Mart's wrongful conduct, Plaintiffs, and members of the Class have sustained damages.  Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain.  As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged.

445. Wal-Mart's course of conduct was intentionally pursued for the purpose of causing injury or damage or Wal-Mart knew or should have known that its conduct would naturally and probably result in injury or damage and Wal-Mart continued the conduct with malice or in reckless disregard of the consequences such that an award of punitive damages is appropriate.

### COUNT 35:  Violation of State Consumer Protection Laws
### (Brought on behalf of the Wal-Mart Consumer Protection Class)

446. Plaintiffs Bowen, Brice Leigh, Clark Meacham, and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Wal-Mart on behalf of:  (a) all other persons who purchased Milk Products sold by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar consumer protection laws.

447.    The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the Milk Products sold by Wal-Mart declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

448.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

a.      Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

b.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

c.      California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

g.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.      Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.      Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.      Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.      Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.      Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.      Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et*

*seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii.     Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj.     Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk.     Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo.     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

449.    Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products sold by Wal-Mart.

450.    The Milk Products sold by Wal-Mart constitute products to which these consumer protection laws apply.

451.    Wal-Mart is a seller or other person to whom these consumer protection laws apply.

452.    In the conduct of trade or commerce regarding its production, marketing and sale of Milk Products, Wal-Mart engaged in one or more unfair or deceptive acts or practices including, but not limited to:

a.      the dairy cows that produce the Milk Products have not been given antibiotics;

b.      the diet of the dairy cows is organic (i.e. not treated with pesticides).

453.    Wal-Mart's labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

454.    Wal-Mart knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

455.    Wal-Mart used or employed such deceptive and unlawful acts or practices with the intent that Plaintiffs and the members of the Class rely thereon.

456.    Plaintiffs and the members of the Class did so rely (and should be presumed to rely), or were deceived.

457.    Each Plaintiff and member of the Class purchased Milk Products sold by Wal-Mart that were falsely represented.  As a result of Wal-Mart's conduct, Plaintiffs and the members of the Class were damaged.  Plaintiffs would not have purchased the Milk Products at the prices they paid had they known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the bargain.  As a result of Defendant's conduct, Plaintiffs and the members of the Class were damaged.

458.    Wal-Mart's conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 36:  Breach of Express Warranty
### (Brought on behalf of the Wal-Mart Purchaser Class)

459.    Plaintiffs Bowen, Brice Leigh, Clark, Meacham and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Wal-Mart on behalf of:  (a) all other persons who purchased Milk Products sold by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

460.    Wal-Mart's representations are made to Plaintiffs and members of the Wal-Mart Purchaser Subclass at the point of purchase, are part of the description of the goods and the

bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

461. In addition or in the alternative, Wal-Mart's representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the Kirkland Milk Product.

462. By its statements and representations, Wal-Mart expressly warranted that the Milk Products complied with the representations Wal-Mart made about the products and the manner in which they were produced.

463. The Milk Products sold by Wal-Mart did not, in fact, comply with the representations Wal-Mart made about the products and the manner in which they were produced.

464. At all times relevant to this action, Wal-Mart falsely represented the Milk Products and the manner in which the products were produced in breach of these express warranties.

465. As a result of Wal-Mart's conduct, Plaintiffs and the members of the Class were damaged.

466. Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Wal-Mart on notice thereof.

**COUNT 37:  Breach of Implied Warranty of Merchantability**
**(Brought on behalf of the Wal-Mart Purchaser Class)**

467. Plaintiffs Bowen, Brice Leigh, Clark, Meacham and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Wal-Mart on behalf

of:  (a) all other persons who purchased Milk Products sold by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding implied warranty.

468.    Plaintiffs and the members of the Class purchased Milk Products sold by Wal-Mart for the ordinary purposes of Milk Products.

469.    By representing that the Milk Products were produced in a particular way, Wal-Mart impliedly warranted that such products were of merchantable quality, such that the Milk Products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

470.    At all times material to this action, the Milk Products were not of merchantable quality.

471.    Wal-Mart held itself out to, and did, possess expertise, skill and knowledge superior to consumers including Plaintiffs and the members of the Class, who had a right to rely thereon.

472.    As a result, Plaintiffs and the members of the Class were damaged.

473.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Wal-Mart on notice thereof.

### COUNT 38:  Negligent Misrepresentation
### (Brought on behalf of the Wal-Mart Purchaser Class)

474.    Plaintiffs Bowen, Brice Leigh, Clark, Meacham and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Wal-Mart on behalf of:  (a) all other persons who purchased Milk Products sold by Wal-Mart in the same state as

Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding negligent misrepresentation.

476. Wal-Mart owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

476. Wal-Mart negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Wal-Mart or at its direction.

477. Wal-Mart's representations and omissions regarding its Milk Products were material.

478. Wal-Mart's mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

479. Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Wal-Mart made regarding its Milk Products.

480. Wal-Mart knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Wal-Mart.

481. Wal-Mart's representations and omissions regarding its Milk Products were false and misleading as alleged above.

482. As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

483.     As a result of Defendants' conduct, Plaintiffs and the members of the Class were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

### COUNT 39:  Unjust Enrichment
### (Brought on behalf of the Wal-Mart Unjust Enrichment Class)

484.     Plaintiffs Bowen, Brice Leigh, Clark and VerNooy incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Wal-Mart on behalf of:  (a) all other persons who purchased Milk Products sold by Wal-Mart in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

485.     Wal-Mart markets and promotes the production process for the Milk Products as having health, environmental and other benefits warranting a higher retail price than conventionally produced milk products.

486.     Wal-Mart charges, and consumers pay, a higher retail price for the Milk Products sold by Wal-Mart than the price of conventionally produced milk products.

487.     Wal-Mart received a benefit in the form of the price charged by Wal-Mart and paid by Plaintiffs and the members of the Class for the Milk Products sold by Wal-Mart.

488.     Under the circumstances, it would be inequitable for Wal-Mart to retain the above-described benefit.

489.     As a result of Wal-Mart's unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Wal-Mart's unjust enrichment.

**G.     Counts Against Wild Oats**

**COUNT 40 Violation of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. §6-1-101 *et seq.***
**(Brought on behalf of the Wild Oats Purchaser Class)**

490.     Plaintiffs Benya, Ross, Snell, Subashe, Theodore and Tysseling-Mattiace

incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In

addition and/or in the alternative to the Count(s) above, these Plaintiffs bring this Count on

behalf of themselves and all other persons who purchased Milk Products sold by Wild Oats

under the Wild Oats brand nationwide under the Colorado Consumer Protection Act, Colo. Rev.

Stat. § 6-1-101, *et seq.*

491.     Pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113(1),

Plaintiffs are actual consumers of Wild Oat's Milk Products and were injured as a result of the

deceptive trade practices described herein.

492.     Wild Oats is a "person" as defined by the Colorado Consumer Protection Act,

Colo. Rev. Stat. § 6-1-102(6).

493.     Wild Oats in the course of its business engaged in one or more acts constituting

"deceptive trade practice[s]" pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat.

§ 6-1-105(1), including:

a.     Colo. Rev. Stat. § 6-1-105(1)(e):  "Knowingly mak[ing] a false

representation as to the characteristics, ingredients, uses, benefits, alterations, or

quantities of goods, food, services, or property or a false representation as to the

sponsorship, approval, status,, affiliation, or connection of a person therewith;"

b.     Colo. Rev. Stat. § 6-1-105(1)(g):  "Represent[ing] that goods, food,

services, or property are of a particular standard, quality, or grade, or that goods are of a

particular style or model, if he knows or should know that they are of another;"

c.    Colo. Rev. Stat. §6-1-105(1)(i): Advertises goods, services or property with the intent not to sell them as advertised.

d.    Colo. Rev. Stat. § 6-1-105(1)(u):  "Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclosure such information was intended to induce the consumer to enter into a transaction."

494.    Wild Oats' deceptive trade practices include, among other things, its misrepresentations that (or omissions regarding), *inter alia*:

a.    the dairy cows that produce the Milk Products have not been given antibiotics;

b.    the dairy cows that produce the Milk Products have not been given synthetic growth hormones; and

c.    the diet of the dairy cows is organic.

495.    Wild Oats' misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

496.    Because Wild Oats was headquartered in Colorado, made decisions and engaged in other acts in Colorado regarding the labeling, advertisement and sale of Wild Oats' Milk Products, the Colorado Consumer Protection Act should apply nationwide to this claim against Wild Oats.

497.    Wild Oats' deceptive trade practices significantly impacted the public, including Plaintiffs and the other members of the Class, as actual or potential consumers of Wild Oats' goods – namely its Milk Products.

498.     As a direct and proximate result of Wild Oats' use or employment of the

deceptive trade practices described above, Plaintiffs and the other members of the Class were

damaged.  Plaintiffs would not have purchased the Milk Products at the prices they paid had they

known the truth and are entitled to a full or partial refund as allowed by state law.  Further, as a

result of the misrepresentations made by Defendant, Plaintiffs did not receive the benefit of the

bargain.  As a result of Defendant's conduct, Plaintiffs and the members of the Class were

damaged.

499.     Pursuant to the Colorado Consumer Protection Act, § 6-1-113(2), Plaintiffs and

the other members of the Class are entitled to the relief set forth below, as appropriate, including,

but not limited to compensatory damages, punitive damages, attorneys' fees, and the costs of this

action.

500.     As set forth in Colorado Consumer Protection Act §§ 6-1-113(2)(a)(III) and 6-1-

113(2)(b)(2.3), Wild Oats has acted fraudulently, willfully, knowingly, or intentionally with

respect to its injury  causing conduct, such that an award of punitive damages is appropriate.

### COUNT 41:  Violation of State Consumer Protection Laws
### (Brought on behalf of the Wild Oats Consumer Protection Class)

501.     Plaintiffs Benya, Ross, Subashe, Theodore and Tysseling-Mattiace incorporate by

reference the preceding paragraphs as if they were fully set forth herein.  In addition to and/or in

the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own

behalf under the law of the state in which he/she purchased Milk Products sold by Wild Oats on

behalf of:  (a) all other persons who purchased Milk Products sold by Wild Oats in the same state

as Plaintiff purchased such products; and (b) all other persons who purchased such products in

states having similar consumer protection laws.

502.    Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Milk Products sold by Wild Oats.

503.    The consumer protection laws of the state in which each Plaintiff and member of the Class purchased the Milk Products declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

504.    Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.  These statutes are found at:

    a.      Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522, *et seq.*;

    b.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

    c.      California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

    d.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

    e.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

    f.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

    g.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

    h.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

    i.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480

1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

j.        Idaho Consumer Protection Act, Idaho Code, § 48-601, *et seq.*;

k.        Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

l.        Indiana Deceptive Consumer Sales Act,  Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

m.        Kansas Consumer Protection Act, Kan. Stat. Ann. § 50 626, *et seq.*;

n.        Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

o.        Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

p.        Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

q.        Michigan Consumer Protection Act, § 445.901, *et seq.*;

r.        Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

s.        Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

t.        Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

u.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

v.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

w.      New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

x.      New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

y.      New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

z.      North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

aa.     North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

bb.     Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

cc.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*;

ff.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

gg.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

hh.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.*;

ii. Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

jj. Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-196, *et seq.*;

kk. Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

oo. Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

505. The Milk Products sold by Wild Oats constitute products to which these consumer protection laws apply.

506. Wild Oats' deceptive trade practices include, among other things, its misrepresentations that (or omissions regarding), *inter alia*:

a. the dairy cows that produce the Milk Products have not been given antibiotics;

b. the dairy cows that produce the Milk Products have not been given synthetic growth hormones; and

c. the diet of the dairy cows is organic.

507. Wild Oats' labeling, statements, advertisements, representations and omissions were deceptive and/or likely to deceive.

508. Wild Oats knew or should have known that its statements, advertisements, representations and omissions were untrue or misleading.

509.    Wild Oats used or employed such deceptive and unlawful acts or practices with the intent that these Plaintiffs and the members of the Class rely thereon.

510.    Plaintiffs and the other members of the Class did so rely (and should be presumed to rely), or were deceived.

511.    Each Plaintiff and member of the Class purchased Milk Products sold by Wild Oats that were falsely represented for an amount higher than conventional Milk Products.

512.    As a result of Wild Oats' conduct, Plaintiffs and the members of the Class were damaged.

513.    Wild Oats' conduct showed complete indifference to or conscious disregard for the rights of others such that an award of punitive damages is appropriate.

### COUNT 42:  Breach of Express Warranty
### (Brought on behalf of the Wild Oats Purchaser Class)

514.    Plaintiffs Benya, Ross, Snell, Subashe, Theodore and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Wild Oats on behalf of:  (a) all other persons who purchased Milk Products sold by Wild Oats in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

515.    Wild Oats' representations are made to Plaintiffs and members of the Wild Oats Purchaser Subclass at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and the members of the Class.

516.     In addition or in the alternative, Wild Oats' representations are made to induce Plaintiffs and the members of the Class to rely on such representation, and Plaintiffs and the members of the Class did so rely (and should be presumed to rely) on said representation as a material factor in his/her decision to purchase the Milk Products sold by Wild Oats.

517.     By its statements and representations, Wild Oats expressly warranted that the Milk Products complied with the representations Wild Oats made about the products and the manner in which they were produced.

518.     The Milk Products sold by Wild Oats did not, in fact, comply with the representations Wild Oats made about the products and the manner in which they were produced.

519.     At all times relevant to this action, Wild Oats falsely represented the Milk Products and the manner in which the products were produced in breach of these express warranties.

520.     As a result of Wild Oats' conduct, Plaintiffs and the members of the Class were damaged.

521.     Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed Wild Oats on notice thereof.

**COUNT 43:  Breach of Implied Warranty of Merchantability**
**(Brought on behalf of the Wild Oats Purchaser Class)**

522.     Plaintiffs Benya, Ross, Snell, Subashe, Theodore and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Count(s) above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products and sold at Wild Oats on behalf of:  (a) all other persons who purchased Milk Products sold by Wild

Oats in the same state as Plaintiff purchased such products; and (b) all other persons who

purchased such products in states having similar laws regarding implied warranty.

523.   By representing that the Milk Products were produced in a particular way, Wild

Oats impliedly warranted that such products were of merchantable quality, such that the Milk

Products were of the same average grade, quality, and value as similar goods sold under similar

circumstances.

524.   At all times material to this action, the Milk Products were not of merchantable

quality.

525.   Wild Oats held itself out to, and did, possess expertise, skill and knowledge

superior to consumers including Plaintiffs and the members of the Class, who had a right to rely

thereon.

526.   As a result, Plaintiffs and the members of the Class have been damaged.

527.   Within a reasonable time after they knew or should have known of such breach,

Plaintiffs, on behalf of themselves and members of the Class, placed Wild Oats on notice thereof.

## COUNT 44:  Negligent Misrepresentation
### (Brought on behalf of the Wild Oats Purchaser Class)

528.   Plaintiffs Benya, Ross, Snell, Subashe, Theodore and Tysseling-Mattiace

incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In

addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count

on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by

Wild Oats on behalf of:  (a) all other persons who purchased Milk Products sold by Wild Oats in

the same state as Plaintiff purchased such products; and (b) all other persons who purchased such

products in states having similar laws regarding negligent misrepresentation.

529.    Wild Oats owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in making representations about its Milk Products.

530.    Wild Oats negligently and recklessly made such representations and omitted to disclose material facts to Plaintiffs and the Class through uniform mislabeling, non-disclosure and concealment through mass media and point-of-sale advertising, and through other information prepared or disseminated by Wild Oats or at its direction.

531.    Wild Oats' representations and omissions regarding its Milk Products were material.

532.    Wild Oats' mislabeling, misrepresentations and non-disclosures were intended to influence consumers' purchasing decisions.

533.    Plaintiffs and the members of the Class reasonably relied (or should be presumed to have relied) on the labeling and other representations Wild Oats made regarding its Milk Products.

534.    Wild Oats knew or should have known that Plaintiffs and the members of the Class relied (or should be presumed to have relied) upon the labeling, representations and omissions of Wild Oats.

535.    Wild Oats' representations and omissions regarding its Milk Products were false and misleading as alleged above.

536.    As a result of these misrepresentations, omissions and concealment, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

537.    As a result of Wild Oats' conduct, Plaintiffs and Class members were damaged and are therefore entitled to compensatory damages, multiple damages, and equitable relief.

## COUNT 45:  Unjust Enrichment
### (Brought on behalf of the Wild Oats Unjust Enrichment Class)

538.    Plaintiffs Benya, Ross, Snell, Subashe and Tysseling-Mattiace incorporate by reference the preceding paragraphs as if they were fully set forth herein.  In addition and/or in the alternative to the Counts above, each of these Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Milk Products sold by Wild Oats on behalf of:  (a) all other persons who purchased Milk Products sold by Wild Oats in the same state as Plaintiff purchased such products; and (b) all other persons who purchased such products in states having similar laws regarding unjust enrichment.

539.    Wild Oats markets and promotes the production process for the Milk Products as having health, environmental and other benefits warranting a higher retail price than conventionally produced milk products.

540.    Wild Oats charges, and consumers pay, a higher retail price for the Milk Products sold by Wild Oats than the price of conventionally produced milk products.

541.    Wild Oats received a benefit in the form of the price charged by Wild Oats and paid by Plaintiffs and the members of the Class for the Milk Products sold by Wild Oats.

542.    Under the circumstances, it would be inequitable for Wild Oats to retain the above-described benefit.

543.    As a result of Wild Oats unjust enrichment, Plaintiffs and the members of the Class were damaged in an amount to be determined at trial and seek full disgorgement and restitution of Wild Oats' unjust enrichment.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes they seek to represent, respectfully request that the Court enter an order or judgment in their favor and against Defendants, including the following:

A.    Certifying the action as a Class Action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and appointing Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B.    Awarding actual damages, statutory damages, punitive or treble damages, and such other relief as allowed by applicable state law ;

C.    Awarding pre-judgment and post-judgment interest on such monetary relief;

D.    Awarding equitable relief in the form of restitution, to restore monies received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged in herein;

E.    Awarding Plaintiffs the costs of bringing this suit, including reasonable attorneys' fees; and

F.    Awarding all such other relief to which Plaintiffs and the members of the Classes may be entitled at law or in equity.

Dated: November 23, 2010                    Respectfully submitted,


                                             By:  /s/ Don M. Downing
                                             Don Downing
                                             Gretchen Garrison
                                             Thomas Neill
                                             GRAY, RITTER & GRAHAM, P.C.
                                             701 Market Street, Suite 800
                                             St. Louis, MO 63101-1826
                                             Telephone:  (314) 241-5620
                                             Facsimile:  (314) 241-4140
                                             E-mail:  ddowning@grgpc.com
                                                     ggarrison@grgpc.com
                                                     tneill@grgpc.com

                                             Elizabeth A. Fegan
                                             Daniel J. Kurowski
                                             HAGENS BERMAN SOBOL
                                             SHAPIRO LLP
                                             1144 W. Lake St., Suite 400
                                             Oak Park, IL 60301
                                             Telephone:  (708) 628-4949
                                             Facsimile:  (708) 628-4950
                                             E-mail: beth@hbsslaw.com
                                                     dank@hbsslaw.com

                                             Steve W. Berman
                                             Craig R. Spiegel
                                             HAGENS BERMAN SOBOL
                                             SHAPIRO LLP
                                             1918 Eighth Avenue, Suite 2300
                                             Seattle, WA 98101
                                             Telephone:  (206) 623-7292
                                             Facsimile:  (206) 623-0594
                                             E-mail: steve@hbsslaw.com
                                                     craig@hbsslaw.com

                                             *Plaintiffs' Co-Interim Class Counsel
                                             and Co-Lead Counsel*

                                             Robert M. Bramson
                                             BRAMSON, PLUTZIK, MAHLER
                                             & BIRKHAEUSER
                                             2125 Oak Grove Road, Suite 120

Walnut Creek, CA 94598

James G. Stranch, III
BRANSTETTER STRANCH &
JENNINGS PLLC
227 2nd Avenue North, Fourth Floor
Nashville, TN 37201-1631

Tucker Ronzetti
David Buckner
KOZYAK TROPIN &
THROCKMORTON, PA
2525 Ponce de Leon, Ninth Floor
Coral Gables, FL 33134

Edith M. Kallas
Patrick J. Sheehan
WHATLEY DRAKE & KALLAS
1540 Broadway, 37th Floor
New York, NY 10036

Adam J. Levitt
John E. Tangren
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603

*Plaintiffs' Steering Committee*

Chip Robertson
BARTIMUS FRICKELTON
ROBERTSON & GORNY
715 Swifts Highway
Jefferson City, MO 65109

*Plaintiffs' Liaison Counsel*

*[Additional Plaintiffs' counsel on next page]*

132

Timothy Carl Blake
Concorde Building
66 W. Flagler Street
Miami, FL 33130

Robert B. Carey
Frances R. Johnson
THE CAREY LAW FIRM
2301 East Pikes Peak Avenue
Colorado Springs, CO 80909

Joseph Henry Bates, III
CAULEY BOWMAN CARNEY &
WILLIAMS, PLLC
P.O. Box 25438
Little Rock, AR 72221

Stephen H. Gardner
CENTER FOR SCIENCE IN THE PUBLIC
INTEREST
5646 Milton St., Suite 211
Dallas, TX 75206

Arend J. Abel
Irwin Levin
Richard E. Shevitz
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204

Kenneth Canfield
Martha J. Fessenden
DOFFERMYRE SHIELDS CANFIELD
KNOWLES & DEVINE, LLC
1355 Peachtree Street, Suite 1600
Atlanta, GA 30309

John G. Emerson
Scott E. Poynter
EMERSON POYNTER LLP
500 President Clinton Avenue, Suite 305
Little Rock, AR 72201

Nadeem Faruqi
FARUQI AND FARUQI
320 E. 39th Street
New York, NY 10016

Tracy D. Rezvani
FINKELSTEIN THOMPSON LLP
1050 30th Street, N.W.
Washington, DC 20007

Maury A. Herman
David A. McKay
Andrea S. Hirsch
HERMAN MATHIS LLP
230 Peachtree Street, NW, Suite 2260
Atlanta, GA 30303

Fredric S. Fox
KAPLAN FOX & KILSHEIMER LLP
850 3rd Ave, 14th Floor
New York, NY 10022

Laurence D. King
KAPLAN, FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104

Curtis F. Gantz
David G. Cox
LANE ALTON & HORST LLC
Two Miranova Place, Suite 500
Columbus, OH 43215

Gideon Kracov
LAW OFFICES OF GIDEON KRACOV
801 South Grand Avenue, 11th Floor
Los Angeles, CA 90017

Christopher Lovell
Jody R. Krisiloff
Craig M. Essenmacher
Keith Essenmacher
LOVELL STEWART HALEBIAN LLP
500 Fifth Avenue, 58th Floor

New York, NY 10110

Harry Schulman
Robert Wade Mills, Jr.
THE MILLS LAW FIRM
145 Marina Boulevard
San Rafael, CA 94901

William N. Riley
Christopher A. Moeller
Jamie R. Kendall
Joseph N. Williams
PRICE WAICUKAUSKI & RILEY, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204

Garrett D. Blanchfield, Jr.
REINHARDT, WENDORF &
BLANCHFIELD
332 Minnesota Street, Suite E-1250
St. Paul, MN 55101

Christopher P. Ridout
RIDOUT & LYON LLP
100 Oceangate, 14th Floor
Long Beach, CA 90802

Alexis B. Djivre
Christopher P. Ridout
David A. Rosen
ROSE, KLEIN & MARIAS, LLP

801 S. Grand Avenue, 11th Floor
Los Angeles, CA 90017

Kip B. Shuman
THE SHUMAN LAW FIRM
801 East 17th Avenue
Denver, CO 80218

John E. Campbell
John Simon
Erich Vieth
SIMON PASSANANTE, P.C.
701 Market Street, Suite 1450
St. Louis, MO 63101

James A. Streett
STREETT LAW FIRM, P.A.
107 West Main Street
Russellville, AR 72801

Eric J. Artrip
Herman A. Watson, Jr.
Rebekah Keith McKinney
WATSON, JIMMERSON, MARTIN,
MCKINNEY, HELMS & ARTRIP, P.C.
P.O. Box 18368, 203 Greene Street
Huntsville, AL 35804

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing was filed and served electronically via the CM/ECF system to all counsel of record this 23rd day of November 2010.

<u>/s/ Don M. Downing</u>