IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

In re Aurora Dairy Corp. Organic　　　Civil Action No.: 4:08-md-01907-ERW
Milk Marketing and Sales
Practices Litigation

This Filing Relates To: All Actions

OBJECTIONS REGARDING PROPOSED SETTLEMENT

To The Honorable District Judge:

Jeffrey Weinstein and Burke Fort, ("Objectors"), file these Objections to the Proposed Settlement, Objections to Class Certification, Notice of Intent to Appear, and Request to Speak at the Hearing, and would show as follows:

I. Objectors

The (i) name, address and telephone number; (ii) description of the Milk Products purchased and purchase information for each objector are included in the attached declarations, which are incorporated herein by reference.

Given that the purchases constitute a relatively small-scale purchase, virtually no consumer is likely to keep a receipt and Objectors did not.  As one federal judge said in a similar matter: "the notion that consumers would still retain these details of a relatively trivial purchase years after the occurrence borders on the ludicrous." *In re TJX Companies Retail Sec. Breach Litigation*, 584 F.Supp.2d 395, 404-405, n. 15 (D. Mass. 2008).  Objectors note that neither the preliminary approval order nor the notice require a "valid proof of purchase" in order to object.  To the extent the settling parties seek to impose one, Objectors object to such a requirement.  Since class membership is not based on having a "valid proof of purchase," due process and Rule 23 give class members the right to object even without such documentation.

This filing also constitutes a notice of intent to appear at the hearing and request to speak.

II. Objections to Class Certification

Objectors object to class certification for the following reasons:  (1) the class definition does not adequately define the class, (2) notice to the class was not proper, (3) the class representatives are not adequate, and (4) the settling parties have not met their burden of proof.

1

### A. The class definition does not adequately define the class

Both due process and FED. R. CIV. P. 23 require an adequate class definition for class certification.  To be adequate, the class definition must be "precise, objective and presently ascertainable."  MANUAL FOR COMPLEX LITIGATION 4TH, 21.222, p. 270.  As the courts have held:

> It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.

*De Bremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970).

An adequate class definition is required to satisfy due process because it determines who is bound by the judgment and whether they have notice that they will be bound:

> A precise class definition is necessary to identify properly "those entitled to relief, those bound by the judgment, and those entitled to notice."  5 James W. Moore et al., Moore's Federal Practice § 23.21[6], at 23-62.2 (3d ed. 2003).

*In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004); *see also*, MANUAL FOR COMPLEX LITIGATION 4TH, 21.222, p. 270.  In addition to due process requirements, Rule 23 also requires that the class be adequately defined.  *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 n. 3 (5th Cir. 2007); *DeBremaecker,* 433 F.2d at 734.

An imprecise class definition results in a denial of due process for two reasons.  First, the class definition fails to give notice to prospective class members as to whether their rights will be determined.  Second, it harms class members who make claims because it is unclear who is in the class for determining a *pro rata* distribution of the benefits.  Under the Settlement Agreement, class members have their benefits capped if too many claims are filed.  Settlement Agreement p. 23, Doc. 361-1 p. 24, ¶ V.C.  Therefore, it is imperative that there be an adequate class definition to limit the benefits to class members.

The Settlement Agreement contains two conflicting class definitions.  The first ("Definition No. 1") is contained in the definitions section of the agreement:

> **QQ. "Settlement Class"** or "Class" means all consumers and/or purchasers of Milk Products produced, processed, marketed and/or sold by Aurora Organic Dairy and/or Defendants up to the date of preliminary approval, including but not limited to Milk Products sold by Aurora Organic Dairy under the "High Meadow" brand, Costco under the "Kirkland" brand, Safeway under the "Safeway Select" and "O Organics" brands, Target under the "Archer Farms" brand, Wal-Mart under the "Great Value" brand and Wild Oats under the "Wild Oats," subject to the exclusions set forth in Paragraph III.A below.

Settlement Agreement p. 17 (emphasis added), Doc. 361-1 p. 18.  Yet, the very next page of the Settlement Agreement provides a conflicting definition of "Settlement Class," referred to herein as "Definition No. 2:"

2

> All persons in the United States and/or the District of Columbia who purchased, for personal use and not for resale, organic milk, organic butter, organic cream and organic non-fat dry milk produced, processed, marketed and/or sold by Aurora Organic Dairy and its affiliates ("Milk Products"), including but not limited to the Milk Products sold under Aurora Organic Dairy's "High Meadow" brand, Costco's "Kirkland" brand, Safeway's "Safeway Select" and "O Organics" brands, Target's "Archer Farms" brand, Wal-Mart's "Great Value" brand, and Wild Oats' "Wild Oats" brand, on or before the Preliminary Approval Date.

Settlement Agreement p. 18 (emphasis added), Doc. 361-1 p. 19. The Preliminary Approval Order used Definition No. 2. Doc. 321, p. 2. The Notice to the class used Notice No. 2, with the Preliminary Approval Date substituted in at the end.

For several reasons, the class was not adequately defined and certification of the class would violate both Rule 23 and due process.

### 1. Definition No. 2 appears to require the purchase of all four product types

While the parties' intent may have been to define the class as persons who purchased *any one* of *either* organic milk, organic butter, organic cream *or* organic non-fat dry milk, Definition No. 2 appears to limit the class to only those persons who purchased *all four* product types:

> All persons in the United States **and/or** the District of Columbia who purchased, for personal use **and** not for resale, organic milk, organic butter, organic cream **and** organic non-fat dry milk produced, processed, marketed **and/or** sold by Aurora Organic Dairy … .

Settlement Agreement p. 18 (emphasis added), Doc. 361-1 p. 19. On its face, the use of the conjunctive "and" in the phrase "organic milk, organic butter, organic cream **and** organic non-fat dry milk" requires the purchase of all four product types. Thus, persons who did not purchase all four product types could reasonably believe that they were not in the class, and therefore did not opt out, file a claim, or object. And if the Court were to interpret the class definition to include those persons nevertheless, then notice was inadequate.

The parties carefully distinguished between two terms in the class definition: (1) "and" and (2) "and/or." They used "and" to be strictly conjunctive and "and/or" to be disjunctive. The remainder of the sentence supports the interpretation that class membership requires purchases *all four* product types.

When the parties wanted to express that only one item in a list was needed to satisfy a condition for class membership, they used the disjunctive term "and/or." For instance, the term "United States **and/or** the District of Columbia" is satisfied whether the purchase is (1) in the District of Columbia, or (2) in the U.S. but not in the District. The condition is satisfied if any one of the options is satisfied. Similarly the condition "produced, processed, marketed **and/or** sold by Aurora Organic Dairy" is satisfied if *only one* of the four items in the list is satisfied. For instance, the use of the disjunctive term "and/or" means the condition is satisfied if the product was only produced by Aurora, but not processed, marketed or sold by Aurora.

3

Conversely, when the parties wanted to express that *all* items in a list must be satisfied for class membership, they used the strictly conjunctive term "and."  For instance, they used the term "and" rather than "and/or" to ensure that the purchase must be **both** for personal use **and** not for resale.

Given the clear and deliberate use of these two terms in the same sentence, the phrase "organic milk, organic butter, organic cream **and** organic non-fat dry milk" could reasonably be read to mean that a purchase of all four product categories is required for class membership.  At the very least, the definition is ambiguous and potential class members were not given fair notice as to whether they would be in the class if they purchased one, but not all, of the types of products.

> 2. **The class definition is ambiguous because the settlement agreement contains conflicting definitions**

The Settlement Agreement creates additional ambiguity because it provides two conflicting interpretations of the Settlement Class (Definition No. 1 and No. 2).  The following chart identifies the critical differences between the two definitions:

|  | **Definition No. 1** | **Definition No. 2** |
| --- | --- | --- |
| Persons who consumed the product, but did not purchase it. | <u>In the class</u> because a purchase is not required: "…all consumers and/or purchasers of Milk Products…" | <u>Not in the class</u> because a purchase is required: "All persons in the United States and/or the District of Columbia who purchased …" |
| Persons who did not purchase for personal use | <u>In the class</u> (no exclusion language) | <u>Not in the class</u>: "…who purchased, for personal use and not for resale, …" |
| Persons who purchased for resale | <u>In the class</u> (no exclusion language) | <u>Not in the class</u>: "…who purchased, for personal use and not for resale, …" |
| Persons not in the United States | <u>In the class</u>: "… all consumers and/or purchasers of Milk Products …" | <u>Not in the class</u>: "All persons in the United States and/or the District of Columbia …" |

Given these conflicting definitions, the class is not adequately defined and potential class members were not given adequate notice regarding who is and is not in the class.

> 3. **Definition No. 2 is ambiguous because the term "All persons in the United States and/or the District of Columbia" creates an ambiguity**

The District of Columbia, while not a state, is certainly "in the United States."  Thus, a person in the District of Columbia would be in the class under the first instance ("in the United States") and the additional term "and/or the District of Columbia" seems superfluous.  The only possible meaning that could be given to the term "and/or the District of Columbia" is that a person must

4

be in "a state" of the United States and/or the District of Columbia. Thus, the inclusion of that term creates an ambiguity as to whether other persons who are "in the United States" but not in a "state" are in the class. For instance, are purchasers in Puerto Rico in the class? On the one hand, they are certainly "in the United States," so could be in the class. On the other hand, the only interpretation that gives meaning to the term "and/or the District of Columbia" is that only persons in a state of the United States or in the District Columbia are class members, so persons in Puerto Rico would not be in the class.

Given this ambiguity, the class is not adequately defined and potential class members were not given adequate notice regarding who is and is not in the class.

### B. Notice to the class was not proper

Rule 23 (c)(2)(B) and due process require clear and unambiguous notice to potential class members regarding whether they are in the class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. **The notice must clearly and concisely state in plain, easily understood language**: …
>
> (ii) **the definition of the class certified** … .

FED. R. CIV. P. 23 (c)(2)(B)(emphasis added). The notice here did not clearly and concisely state in plain, easily understood language the definition of the class certified. Specifically, as explained above, the notice failed to clearly and concisely state in plain, easily understood language whether a class member is required to have purchased just one of the product types or all four.

Certification of the class would violate Rule 23 and due process because potential class members were not given fair notice as to whether they would be affected by the final judgment.

### C. The class representatives are not adequate

Rule 23 and due process permit class certification only when the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23 (a)(4)(permitting certification "only if … the representative parties will fairly and adequately protect the interests of the class"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)("the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members").

#### 1. The class representative must be a member of the class to be adequate

At a minimum, the class representative must be a member of the class he or she seeks to represent. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011)("a class representative must be part of the class"); *Bailey v. Patterson*, 369 U.S. 31, 33 (1962)(Plaintiffs may not "represent a class of whom they are not a part.").

5

As indicated above, the class definition is ambiguous but likely requires the purchase of all four product types. There is no evidence that any of the class representatives purchased all four product types. *See*, *e.g.*, Second Amended Master Complaint, Doc. 250 at 2-12. For instance, it does not appear that any class representative purchased dry milk. Thus, if the class is defined to require the purchase of all four product types, then there is no adequate class representative who is a member of the class.

> **2. The class representatives are not adequate because they agreed to give class members' money to a third party**

The Settlement Agreement includes a *cy pres* component. If the claims do not exhaust the Settlement Fund, then the remaining funds are paid to a third party charity, rather than to class members who file a claim. Settlement Agreement p. 27, ¶ VIII, Doc. 361-1 p. 28. By agreeing to transfer money that is owed to class members to a third party, the class representatives and class counsel were inadequate representatives of the class. *See* discussion below. Since FED. R. CIV. P. 23 (a)(4) and due process requirements are not satisfied, the Court may not certify the settlement class.

> **D. The settling parties have not met their burden of proof**

The settling parties bear the burden of proof that all Rule 23 (a) requirements have been met, as well as one of the subdivisions of Rule 23 (b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The settling parties have not met their burden of proof.

**III. Objections to the Settlement**

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Settlements that take place prior to formal class certification, as was the case here, require a higher standard of fairness:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e). This is the position adopted by the Third Circuit in *GM Pick-Up Litig.,* 55 F.3d at 805 ("We affirm the need for courts to be even more scrupulous than usual in approving settlements where no class has yet been formally certified."); the Second Circuit in *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) ("district judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care"); and the Seventh Circuit in *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust,* 834 F.2d 677, 681 (7th Cir.1987) ("*Simer* and *Weinberger* emphasize ... that when class certification is deferred, a more careful scrutiny of the fairness of the settlement is required. We agree...."). *See also Manual for Complex Litigation* § 30.45 (3rd. ed. 1995) ("Approval under Rule 23(e) of settlements involving settlement classes ... requires closer judicial

> scrutiny than approval of settlements where class certification has been litigated."). No circuit has held to the contrary. Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Third Circuit agrees:

> We ask district courts to apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously." We have explained that this "heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 350 (3rd Cir. 2010) (citations omitted).

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, for the following reasons: (1) the injunctive relief is illusory, and (2) the *cy pres* provision is not fair or reasonable.

### A. The injunctive relief is illusory

The injunctive relief in the settlement is illusory for two reasons.

First, the alleged injunctive relief in the settlement merely requires practices that Defendant is already doing:

> Stipulated Injunction. Aurora Organic Dairy agrees to the entry of an order for injunctive relief (the "Stipulated Injunction") requiring it to ***continue to perform*** the following practices …

Settlement Agreement p. 24, Doc. 316-1, p. 25 (emphasis added). Thus, the injunctive relief merely requires the Defendant to do exactly what it would be doing without an injunction.

Second, the injunctive relief is illusory because the time period is based on the date of Preliminary Approval, not the Effective Date:

> Term of Stipulated Injunction. The term of the Stipulated Injunction is three years ***from the date of Preliminary Approval***.

Settlement Agreement p. 25, Doc. 316-1, p. 26 (emphasis added). The preliminary approval date is September 14, 2012, so the injunction term ends September 13, 2015. *But the injunctive does not go into effect until the "Effective Date."* Settlement Agreement p. 51, Doc. 316-1, p. 52. The "Effective Date" is the date the final order becomes "final" and no further appeal is permitted. *Id.* At the very least, class members lose the "benefit" of the injunctive relief from September 14, 2012 through the date 30 days after the Court enters a final order approving the settlement (if the Court does approve the settlement). Since that date will be at the earliest in

7

April of 2012, class members automatically lose over 6 months of the alleged 3 year "benefit" of the injunction.

But if the final order is appealed, the injunctive "relief" will likely never materialize. In that case the "Effective Date" of the settlement will likely be after September 13 2015, and by that time the "term of stipulated injunction" will have expired. Had the parties tied the injunction to the "effective date" as they did the other settlement provisions, like Settlement Agreement XVI. A. ¶¶ 9, 13, and XVI.B, C and D ("As of the Effective Date …"), then this problem could have been eliminated.

### B. The *cy pres* provision is not fair or reasonable

The settlement contemplates that there may be funds remaining in the Settlement Fund after payment of class member claims. Rather than pay those amounts to class members – for instance by increasing the payments to class members – the settlement gives that class member money to a third party:

> A. If amounts remain in the Settlement Account following the payment of all Settlement costs, ... , the remaining amounts (the "Charitable Contribution Amount") shall be distributed *cy pres* as follows: 50 percent of the Charitable Contribution Amount shall be distributed in a *cy pres* payment to one organization identified by the Named Plaintiffs, subject to the approval of Aurora Organic Dairy which shall not be unreasonably withheld; and 50 percent of the Charitable Contribution Amount shall be distributed in a *cy pres* payment to one organization identified by Aurora Organic Dairy, subject to the approval of the Named Plaintiffs which shall not be unreasonably withheld. Both organizations are subject to approval by the Court. No remaining amounts shall revert back to Aurora Organic Dairy.
>
> B. Subject to Court approval, the Named Plaintiffs identify and Aurora Organic Dairy approves of the following organization: Consumers Union. Subject to Court approval, Aurora Organic Dairy identifies and the Named Plaintiffs approve of the following organization: Organic Farming Research Foundation.

Settlement Agreement p. 27, Doc. 316-1, p. 27. The Court should not approve the settlement with the *cy pres* provision for two reasons.

First, a *cy pres* payment is not appropriate in this case because payments can be made directly to the class members. *Cy pres* is only appropriate if where the funds cannot be distributed to class members. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). That is not the case here, as any excess monies could be paid to the class members who make claims. The Fifth Circuit has explained the policy applicable to this case:

> [A] class settlement generates property interests. Each class member has a constitutionally recognized property right in the claim or cause of action that the

8

> class action resolves. The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members.

*Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011)(footnotes omitted). Thus:

> Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible "only when it is not feasible to make further distributions to class members." Where it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution.

*Id.* at 475 (footnotes omitted). In this case, "it is still logistically feasible and economically viable to make additional pro rata distributions to class members," and "class members [do not have] liquidated-damages claims that were 100 percent satisfied by the initial distribution." Thus, the court may not approve the Settlement Agreement because it contains an impermissible *cy pres* provision.

Second, the *cy pres* recipients are not related at all to the class members or their claim. The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). Even if a *cy pres* payment were appropriate here (as shown above, it is not), it still must meet three requirements: (1) address the objectives of the underlying statutes, (2) target the plaintiff class, and (3) provide reasonable certainty that any member will be benefitted. *Id.* The *cy pres* award here fails to satisfy any of those requirements.

## IV. Prayer

Regarding the proposed class settlement, the Court is limited to a single decision: approve or disapprove the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726-727 (1986). The Court may not amend the settlement. *Id.* Thus, Objectors pray that the Court disapprove the settlement and deny the motion to certify. Objectors further pray that the Court grant Objectors such other and further relief as to which Objectors may be entitled.

/s/ Jeffrey Weinstein
Jeffrey Weinstein, representing himself
518 East Tyler Street
Athens, TX 75751
903/677-5333
903/677-3657 – facsimile
/s/ Burke Fort
Burke O'Hara Fort, representing himself
3206 Gilbert Street
Austin, Texas 78703
512/479-6159

9

## Certificate of Service

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by electric mail by the Clerk of the Court via the CM/ECF system on January 28, 2013 including the following:

Clerk of the Court,
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street,
St. Louis, MO 63102

Don M. Downing
Gray, Ritter & Graham P.C.
701 Market Street, Suite 800
St. Louis, Missouri 63101

Elizabeth A. Fegan
Hagens Berman Sobol Shapiro LLP
1144 W. Lake Street, Suite 400
Oak Park, Illinois 60301

                                                  /s/ Jeffrey Weinstein
                                                  Jeffrey Weinstein

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation

Civil Action No.: 4:08-md-01907-ERW

This Filing Relates To: All Actions

### DECLARATION OF JEFFREY WEINSTEIN

1. My name is Jeffrey Weinstein. I am capable of making this Declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct.

2. I am an individual who in the United States purchased, for personal use and not for resale, at least 20 times in the two years before September 14, 2012, Great Value Organic Milk at Walmart, 1405 East Tyler Street, Athens, TX 75751. I routinely buy a half gallon each time I buy groceries which is usually once if not twice a month. To the best of my recollection the price is usually around $3.50 per half gallon.

3. I am not an employee, officer, director, agent, or representative of the Defendants in this case or a family member of any officer, director, agent, or representative of the Defendants. Nor am I a federal judge or related to one.

4. I do not believe the proposed settlement is fair, reasonable, or adequate and I believe that approval of the settlement is not in the best interests of the class. My objections are set out in the Objections document to which this declaration is attached.

5. My address is 518 East Tyler Street Athens, TX 75751. My telephone number is 903/677-5333.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 28, 2013 in Athens, Texas.

_____
Jeffrey Weinstein

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

In re Aurora Dairy Corp. Organic       Civil Action No.: 4:08-md-01907-ERW
Milk Marketing and Sales
Practices Litigation

This Filing Relates To: All Actions

## DECLARATION OF BURKE O'HARA FORT

1. My name is Burke O'Hara Fort. I am capable of making this Declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct.

2. I am an individual who in the United States purchased, for personal use and not for resale, approximately once per month for each of at least 3 months prior to September 14, 2012, a 4-stick package of "O Organics" organic butter. I purchased the butter at retail prices from the Randall's grocery store located at 2727 Exposition Blvd, Austin, Texas.

3. I am not an employee, officer, director, agent, or representative of the Defendants in this case or a family member of any officer, director, agent, or representative of the Defendants. Nor am I a federal judge or related to one.

4. I do not believe the proposed settlement is fair, reasonable, or adequate and I believe that approval of the settlement is not in the best interests of the class. My objections are set out in the Objections document to which this declaration is attached.

5. My address is 3206 Gilbert Street Austin, Texas 78703. My telephone number is 512/479-6159.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 24th, 2013 in Austin, Texas.

_____
Burke O'Hara Fort

12