IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: Aurora Diary Corp. Organic Milk Marketing and Sale Practices Litigation | ) ) ) ) ) ) Civil Action No. 4:08-md-01907-ERW<br>ALL CASES<br><br>Judge E. Richard Webber |

**OBJECTIONS OF NANCY BROWN, JOHN HIGHTOWER, ALISON PAUL AND CERY PERLE TO SETTLEMENT AND NOTICE OF INTENT TO APPEAR THROUGH COUNSEL**

## I.   INTRODUCTION AND CLASS MEMBERSHIP

Come now, class members, Nancy Brown, John Hightower, Alison Paul and Cery Perle ("Objectors"), by and through their counsel, hereby: (i) file these Objections to the Proposed Class Action Settlement (the "Proposed Settlement") which is based on the "Class Action Settlement Agreement and Release" (the "Settlement Agreement") executed by the Named Plaintiffs and Defendants Aurora Dairy Corporation, Costco Wholesale Corporation, Safeway, Inc., Target Corporation, Wal-Mart Stores, Inc., and Wild Oats Markets, Inc. (jointly "Defendants"); (ii) give notice of their counsel's intent to appear at the February 26, 2013, settlement hearing; and (iii) request an award of incentive fees for serving as unnamed class member objectors.

Objectors represent to the court that they are Class Members, qualified to make a claim for the proposed relief as set forth in the NOTICE OF CLASS ACTION SETTLMENT.  The Objectors can be contacted through their counsel of record herein. Each objector certifies they have purchased one or more of the subject products from one or more of the named retailers.

1

## II. LEGAL AUTHORITY

It is well established that the court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998). The duty requires a review of the details of the settlement. *Id.* Therefore, the Court has a duty to "'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'" *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001), citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995). In addition, the district court's scrutiny does not end with a detailed analysis of the settlement terms, but rather, extends to the fee request made by counsel as well. The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003. Therefore, the Court becomes the fiduciary for the class and must monitor disbursement to the class and attorneys. *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989.)

As discussed below, the Proposed Settlement here is not reasonable, fair or adequate because the unreasonable terms of the settlement, the timing of and the

2

excessive claims of attorneys' fees, and because of the inadequacies of the notice of class action settlement. Due to the objections to the Proposed Settlement, the settlement should be set aside in its entirety. See *Trotsky* v. *Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 153, a settlement must be approved or rejected as a whole since it is impossible to determine whether the parties considered the different portions of the agreement to be interdependent.)

### III.   OBJECTIONS

### A. THE PROPOSED SETTLEMENT IS NOT FAIR, ADEQUATE AND REASONABLE

Rule 23 provides that a class action settlement must be "fair, adequate, and reasonable." A court must weigh the following factors when determining the adequacy of a settlement:

> The strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*True v. American Honda Motor Co.,* 749 F.Supp.2d 1052, 1063 (C.D.Cal. 2010)(citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1291 (9th Cir. 1992)). Here, prima facie the Proposed Settlement is not reasonable. In addition, the information available is insufficient for the court to fully evaluate if the Proposed Settlement is fair to the class members.

The Proposed Settlement is not reasonable because there are many uncertainties regarding the size of the Settlement Class and whether the proposed payments to the individual class members is more beneficial compared to the potential recovery at trial.

3

The recitals of the Settlement Agreement (Section I. X, Y of the Settlement Agreement) state in a conclusory fashion that Class Counsel and the Named Plaintiffs have considered the merits of the litigation and have concluded that the settlement is advantageous to class members.  However, no specific information has been provided for the class members or the court to independently evaluate the fairness and reasonableness of the Proposed Settlement.  For instance, it appears that Class Counsel has not conducted sufficient investigation and discovery to evaluate the viability of the class action allegations and success of these allegations through trial.  There have been attempts to conduct investigation and discovery.  (Section I. P, Q of the Settlement Agreement) However, no results have been achieved from the attempts to conduct discovery.  In fact, it appears that attempts to discover electronic information was stayed pending the settlement.  (Section I.U of the Settlement Agreement) The Settlement Agreement does not provide any information regarding whether any documents were obtained from Defendants, whether any depositions were conducted, i.e., whether the merits of this action were fully explored prior to entering into the Proposed Settlement.   Under the circumstances, there is no evidence to suggest that the Proposed Settlement is fair and reasonable.  The court and class members have not been provided with sufficient information to conclude that the Proposed Settlement is reasonable.  In fact, as discussed below, the Proposed Settlement is not reasonable because it is not clear that a better result cannot be achieved at trial and there is no certainty that the class members will receive a fair cash award.

There is no certainty that the class members will not receive a better result at trial.  The Settlement Class here consists of "All consumers in the United States and/or the

District of Columbia who purchased for personal use and not for resale organic milk, organic butter, organic cream and organic non-fat dry milk produced, processed, marketed and/or sold by Aurora Organic Dairy and its affiliates ("Milk Products"), including but not limited to the Milk Products sold under Aurora Organic Dairy's "High Meadow" brand, Costco's "Kirkland" brand, Safeways' "Safeway Select" and "O Organics" brand, Target's "Archer Farms" brand, Wal-Mart's "Great Value" brand, and Wild Oats' "Wild Oats" brand, on or before the Preliminary Approval Date." (Settlement Agreement, Section III A.)  Therefore, the Settlement Class consists of consumers who purchased one of at least 3 or 4 milk products sold under about 7 brands from one of 6 retailers anytime before September 2012.  This action was filed in approximately September 2007.  The Settlement Class could potentially consist of millions of people who purchased multiple milk products.  Even with a fewer number of people, the class could be large because each person is likely to have purchased multiple milk products during the relevant period.  Under the circumstances, a $7.5 million cash settlement is not a very large cash settlement.  Therefore, it is possible that class members will achieve a better result at trial.

In addition, the payment structure proposed will also result in very low sums of money, if any, being paid to class members, whereas the bulk of the money will go towards Class Counsel's attorneys' fees. The Notice of Proposed Class Action Settlement (the "Notice") promises to pay each class member who submits a claim form, even with no proof of purchase, a one-time payment of up to $10.  In addition, class members who submit proofs of purchase for additional products (between 21 and more than 100) will recover additional sums of money up to a maximum of $30.  Firstly, there

5

is no rationale for not paying additional sums of money to class members who purchased more than one but less than 20 milk products. Additionally, there is no guarantee that the class members will receive the $10 or the $30 payment. The Notice states that depending on the amount available after deducting attorneys fees and other expenses, the remaining settlement amounts will be distributed on a pro rata basis: "If Category A and Category B claims exceeds the amounts of funds available in the Settlement Account, following satisfaction of Settlement Costs, Cash Awards will be reduced on a pro rata basis…." (Notice, p.2, para. 6a) The available total settlement amount is likely to be much smaller than the $7.5 million settlement where just the attorneys' fees being claimed is $2.5 million. In terms of simple math if the settlement funds available after deducting fees and expenses is $5 million ($7.5 million minus fees of $2.5 million), with 5 million class members or 5 million class members with proofs of purchases, it is evident that each class member will receive only $1 and not near the proposed $10 or $30. It is not inconceivable that the size of class could be 5 million. 5 million instances of purchase of milk products may be easily possible given that the class includes consumers from the entire country, multiple big retailers, and various milk products. Under the circumstances, the Proposed Settlement where there is no certainty regarding the amount of cash recovery does not appear to be fair and reasonable.

**B.     THE CY PRES DISTRIBUTION IS IMPROPER**

The *cy pres* distribution does not comply with the requisite legal standards. In *Dennis* v. *Kellogg Co.* 697 F.3d 858 (9th Cir., 2012), the court held that, "[t]o avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id* at 5

6

(quoting *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1038 (9th Cir. 2011)).  In *In re Airline Ticket Com'n Antitrust Litigation,* 268 F.3d 619 (8th Cir., 2001), the Eighth Circuit Court of Appeal considered a *cy pres* distribution and remanded the matter directing the district court "to make a distribution or distributions more closely related to the origin of this nation-wide class action case" *Ibid* at 626.  The court in *In re Airline Ticket Com'n Antitrust Litigation* directed that the *cy pres* distribution must be consistent with the nature of the underlying action. *Ibid* at 625 to 626.  (following the Second Circuits decision in *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 186 (2d Cir.); the Ninth Circuit in *Six Mexican Workers* v. *Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir.1990))

Here, the *cy pres* award is an important component of the Proposed Settlement because the Proposed Settlement includes a tiered payment depending on class members submitting proof of purchase of the milk products.  In general, consumers do not retain proofs of purchase of grocery products.  See, e.g., *State of California* v. *Levi Strauss & Co.*, 41 Cal.3d 460, 472 (1986) ("Consumers are not likely to retain records of small purchases for long periods of time.")  Under the circumstances, it is possible that there may be significant excess funds available even after a one time payment of up to $10 is made to all class members.  Therefore, the court must closely consider whether the *cy pres* distribution here is proper and whether there is an alternative to a *cy pres* distribution which will be more beneficial to class members.  As discussed below, the court will conclude that the *cy pres* distribution is not fair and proper.

This lawsuit seeks to right the wrongs of Defendants fraudulent and deceptive business practices.  This consumer class action alleges that Defendants engaged in

7

negligence, fraud, and deceptive trade practices by failing to provide accurate information regarding the milk and milk products being sold and thereby, among other allegations, breached their express and implied warranties. Defendants sold products labeled as organic when the products had not been manufactured in accordance with Federal standards for organic products. The Settlement Agreement states that *cy pres* distributions will be made as follows, subject to the court's approval: "Subject to Court approval, the Named Plaintiffs identify and Aurora Organic Diaries approves of the following organization: Consumers Union. Subject to Court approval, Aurora Organic Diaries identifies and the Named Plaintiffs approve of the following organization: Organic Farming Research Foundation" p. 27, para. (VIII (B)). However, donations solely to these organizations, Consumer Union and Organic Farming Research Foundation do not represent the "next best use" of the funds. See *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F. 2d 1301, 1307-08 (9th Cir. 1990).

 Primarily, these organizations do not benefit the class members. Organic Farming Research Organization found at http://ofrf.org is an organization intended to assist organic farmers and not consumers of organic products, such as the class members here. The website for the organization states its objectives as follows: "At OFRF, we build the vital infrastructure that supports the success of organic farmers. Our four areas of focus are: POLICY, where we grow champions in Congress and federal agencies; EDUCATION, where we work to integrate organic farming programs into all agricultural universities; GRANTMAKING that expands the adoption of organic farming and practices while addressing urgent issues faced by many organic farmers in America; and building COMMUNITY to cultivate a broader and deeper connection among organic

8

supporters.  Please join us." It does not appear that any funds given to Organic Farming Research Organization is consistent with the nature of the underlying action as required under the Eighth Circuit's standard as stated in *In re Airline Ticket Com'n Antitrust Litigation.*

Second, even though the chosen *cy pres* beneficiary could have some in direct relation to class members, the donation is not earmarked to effectuate the class members' purposes. Consumers Union, found at http://www.consumersunion.org has broad goals and focuses on causes that affect any and all consumers.  Therefore, as proposed, the *cy pres* distribution might not benefit the class whatsoever.  This court should require that as a condition of accepting the donation, the *cy pres* beneficiary must use the funds toward objectives effectuating the purpose of consumers who use organic products.   As proposed, the *cy pres* beneficiaries will inadequately serve the goals of the statutes allegedly violated and will not protect the interests of the silent class members.  Further the court must hold an evidentiary hearing or at least review admissible and competent evidence and make specific findings to support the designation of the nominated *cy pres* recipient(s).  Accordingly, as currently proposed, the Proposed Settlement must be rejected.

Also, in the context of class actions, distribution of funds through the use of *cy pres* is proper only where the "it would be extremely difficult to distribute the funds *pro rata."* See *Powell* v. *Georgia Pacific Corporation*, 119 F. 3d 703, 706 (1997, 8th Cir.)  In *Powell* v. *Georgia Pacific Corporation*, the court permitted a cy pres distribution only because "Over a decade has elapsed since the initial distribution, and many class members have probably relocated. (In fact, when the initial distribution occurred, over

9

125 checks were returned as undeliverable.) A pro rata distribution would be further complicated by the fact that GP (the party entirely responsible for conducting the first distribution) is no longer responsible for locating class members and distributing the funds." Ibid 706-707. The Proposed Settlement with the cy pres distribution also fails under this analysis because a pro rata distribution to the class is not impractical. Because a direct benefit to the class members is possible, the court must reject the *cy pres* distribution and thereby the entire Proposed Settlement.

C.     THE REQUESTED ATTORNEYS' FEES IS EXCESSIVE

The district court bears the responsibility of scrutinizing attorney fee requests and the burden rests with counsel to establish a factual basis to support the award. See *Johnston* v. *Comerica Mortg. Corp.*, 83 F.3d 241 (1996, 8th Cir.). Because this is a common fund case, Eighth Circuit precedent counsels that the percentage of benefit method should be applied. Generally speaking, the percentage of a common fund allocated to attorneys' fees is approximately 20-25 percent, but this percentage may be higher or lower depending upon the particular circumstances of individual cases. *Camden I,* 946 F.2d at 774 (citing Newberg, at § 2.08); *Petrovic* v. *Amoco Oil Co.*, 200 F.2d 1140 (1999, 8th Cir.) citing to Court Awarded Attorneys Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 247 n. 32 (3rd Cir.1985); *Johnston* v. *Comerica Mortgage Corp.*, 83 F.3d 241, 244-45 (8th Cir.1996). Courts within this Circuit utilize the following factors: (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee for similar work in the community; (6) Whether the fee is fixed or contingent; (7) Time

limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases. *In re Texas Prison Litigation,* 191 F.R.D. 164 (W.D.Mo., 1999) citing *Johnson* v. *Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974); *Brown* v. *Phillips Petroleum Co.,* 838 F.2d 451,454 (10th Cir.), cert. denied, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) (noting that the *Johnson* factors are relevant to the percentage that should be awarded).

A 33% fee request is unreasonable on the face of it under the legal standard used in similar common fund cases in the Eighth Circuit.

Notably, in reviewing the above factors, just compensation in a common fund case is determined more by the benefits obtained for the class than the number of hours expended by counsel. *In re Texas Prisoners,* at 178. *See also, In Re Clark Oil & Refining Corp.* 422 F. Supp. 503,511 (E. D. Wis. 1977); 7A c. Wright & A Miller, Federal Practice & Procedure: Civil, § 1803, at p. 290. Here, the benefit conferred upon the class has not yet been ascertained and cannot be until all claims are submitted and tallied. The class members who submit proof of purchase could be entitled to up to $30 per claimant but few, if any, class members will reap such a benefit. The likelihood that any class member retained a proof of purchase of grocery products such as milk, let alone more than 100 proofs of purchase is very slim.  Therefore, the true benefit to class members is not known here given the nature of the Proposed Settlement and the uncertainty regarding the number of class members.   It will be inequitable and excessive to grant 33% of the entire settlement funds, i.e, the full amount of $2.5 million as attorneys' fees to Class

11

Counsel. Where the attorneys' fees will significantly erode the available funds for distribution to a potentially large class, the court must be judicious in its award of attorneys' fees. An approach which has been effectively used in other class action cases is for the Court to wait to make a determination regarding fees until all claims are in and the value to the class can truly be ascertained. Therefore, Objectors request that the Proposed Settlement be rejected at this point because of an excessive claim of attorneys' fees.

E.     THE CLASS NOTICE IS INADEQUATE

Under Fed.R.Civ.P. 23(e), the district court directs the form of the notice of settlement, and the notice must satisfy the "reasonableness" standards imposed by due process. The Supreme Court has found that the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As held in *Petrovic* v. *Amoco Oil Co.*, 200 F.2d 1140 (1999, 8th Cir.), "the information provided to the class members in the notice must be structured 'in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known….The notice of settlement must be sufficiently detailed to permit class members to determine the potential costs and benefits involved, or at least whether additional investigation into the matter would be an efficient use of their time." Ibid 1153 citing to *Reynolds* v. *National Football League*, 584 F.2d 280, 285 (8th Cir.1978). Here, the Class Notice is inadequate per this standard. The Class Notice in inadequate because it does not provide class members with accurate information

12

regarding the cash compensation that will be received by them and it does not provide any information regarding the identity of the organizations to which *cy pres* distributions are to be made. Therefore, the Class Notice is inadequate and the therefore, the Proposed Settlement should be rejected.

The Class Notice informs class members that class members who submit claim forms, even without proofs of purchase, will receive a one time payment of up to $10. However, the Notice further states that depending on the amount available after deducting attorneys fees and other expenses, the remaining settlement amounts will be distributed on a pro rata basis: "If Category A and Category B claims exceeds the amounts of funds available in the Settlement Account, following satisfaction of Settlement Costs, Cash Awards will be reduced on a pro rata basis…." (Notice, p.2, para. 6a) Therefore, depending on the size of the class, it is possible that class members will not receive the promised one-time payment of $10. Under the circumstances, the Class Notice does not accurately represent the potential outcomes of the Proposed Settlement. Since the Class Notice is not adequate to inform the class members of what they can expect from the Proposed Settlement, the settling parties must be required to restart the process and provide a notice to class members which accurately reflects the potential outcomes of the Proposed Settlement.

In addition, the Notice is adequate because it does not identify the organizations that are being proposed as cy pres recipients. The Notice merely states that "If funds remain in the Settlement Account after all Settlement Costs including all Cash Awards have been satisfied, the remaining funds will be distributed to court approved charities." (Notice, p. 2, para. 6a) Class members are entitled to know which organizations will

13

benefit from the funds that are intended to benefit the class. In the absence of this information, the Notice is inadequate. Again, this deficiency renders the Class Notice inadequate and necessitates the restart of the class settlement process. Therefore, Objectors request that the court reject the Proposed Settlement and direct the parties to restart the settlement notice process, if they intended to continue with the same terms of the settlement.

## IV.     **JOINDER IN OTHER OBJECTIONS**

These Objectors adopt and join all other well pled, bona fide objections filed by other class members in this case, and incorporate them by reference as if they appeared in full herein.

## V.     **CONCLUSION**

For the foregoing reasons and all others presented at oral argument, these Objectors respectfully request that the Court sustain their objections and grant the following relief:

   A. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

   B. Award an incentive fee to Objectors for their service in improving the fairness of the settlement, as well as consider awarding an attorneys' fee to their attorney.

LAW OFFICES OF DARRELL PALMER PC

Dated:  January 28, 2013           By: /s/ Joseph Darrell Palmer_____
Joseph Darrell Palmer
Law Offices of Darrell Palmer PC
603 N. Highway 101, Suite A
Solana Beach, CA 92075
Phone: 858-792-5600
Fax: 866-583-8115
Email: Darrell.palmer@palmerlegalteam.com

Attorney for Objectors Nancy Brown,
John Hightower, Alison Paul and Cery Perle

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Eastern District of Missouri by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system.

___/s/ Joseph Darrell Palmer____
Joseph Darrell Palmer
Attorney for Objectors