**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation | Civil Action No. 4:08-md-1907-ERW<br><br>ALL CASES |

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR APPEAL BOND**

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  PROCEDURAL & FACTUAL BACKGROUND .................................................1

III.  THE COURT SHOULD ENTER AN ORDER REQUIRING THE WEINSTEIN AND PALMER OBJECTORS TO FILE APPEAL BONDS .......................................................4

    A.  No Objector Has Demonstrated The Financial Inability to Post a Bond.................6

    B.  All Objectors Represent A Risk For Nonpayment ...................................................6

    C.  The Appeals Lack Merit ..........................................................................................7

    D.  The Weinstein and Palmer Objections Raised Their Objections As Professional, Serial Objectors With Little to No Regard for the Class .........................................8

IV.  THE APPEAL BOND SHOULD BE SET AT $115,000 MINIMUM ...............................9

    A.  At Least $25,000 In Costs Should Be Taxable Under Fed. R. App. P. 39 ............10

    B.  Costs Of Delay Up to $40,000 Should Also Be Added To The Amount Of The Bond.......................................................................................................................11

    C.  Reasonable Attorney's Fees of $50,000 Should Be Included In The Appeal Bond.......................................................................................................................12

V.  CONCLUSION....................................................................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

C<small>ASES</small>

*Adsani v. Miller,*
139 F.3d 67, 79 (2d Cir.1998)..................................................................5, 6, 12

*Allapattah Servs., Inc. v. Exxon Corp.,*
No. 91-0986-CIV, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006)...............................12

*In re AOL Time Warner, Inc., Sec. & "Erisa" Litig.,*
02 CV. 5575 (SWK), 2007 WL 2741033 (S.D.N.Y. Sept. 20, 2007) ......................9

*Azizian v. Federated Dept. Stores, Inc.,*
499 F.3d 950 (9th Cir. 2007) ......................................................................12

*Brinn v. Tidewater Transp. Dist. Comm'n,*
113 F. Supp. 2d 935 (E.D. Va. 2000) ...........................................................12

*In re Cardizem CD Antitrust Litig.,*
391 F.3d 812 (6th Cir. 2004) ...............................................................5, 12, 13

*In re Checking Account Overdraft Litig.,*
830 F.Supp.2d 1330 (S.D. Fla. 2011) .............................................................4

*In re Checking Account Overdraft Litig.,*
MDL 2036, 2012 WL 456691 (S.D. Fla. Feb. 14, 2012)..................................5, 12

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
No. MDL 1963, 2003 WL 22417252 (D. Me. Oct. 7, 2003)...................................11

*In re Enfamil LIPIL Mktg. & Sales Practices Litig. MDL 2222,*
11-MD-02222, 2012 WL 1189763 (S.D. Fla. Apr. 9, 2012) ...................................8

*In re Initial Pub. Offering Sec. Litig.,*
728 F. Supp. 2d 289 (S.D.N.Y. 2010)...................................................3, 6, 8, 10

*In re Ins. Brokerage Antitrust Litig.,*
MDL No. 1663, Civ.No. 04-5184 (GEB), 2007 WL 1963063 (D.N.J. July 2, 2007) .......10, 11

*Milone v. Exclusive Healthcare, Inc.,*
8:98CV274, 2000 WL 351741 (D. Neb. Mar. 9, 2000).......................................13

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
187 F.R.D. 124 (S.D.N.Y. 1999) .................................................................13

*In re Oil Spill,*
   MDL 2179, 2013 WL 144042 (E.D. La. Jan. 11, 2013) ......................................................3

*Pedraza v. United Guaranty Corp.,*
   313 F.3d 1323, 1329-30 (11th Cir. 200 ............................................................................13

*In re Pharm. Indus. Average Wholesale Price Litig.,*
   520 F. Supp. 2d 274 (D. Mass. 2007) ................................................................................13

*Sckolnick v. Harlow,*
   820 F.2d 13 (1st Cir.1987) (per curiam) ...........................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   M 07-1827 SI, 2013 WL 621791 (N.D. Cal. Feb. 19, 2013) ...............................................7

*In re UnitedHealth Group Inc. PSLRA Litig.,*
   643 F. Supp. 2d 1107 (D. Minn. 2009) ................................................................................4

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.,*
   11-MD-2247 ADM/JJK, 2012 WL 3984542 ..........................................................3, 5, 7, 9

**OTHER AUTHORITIES**

Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness
   Guarantors*, 2003 U. CHI. LEGAL F. 403, 409 (2003) ........................................................9

Federal Rule of Appellate Procedure 7 ................................................................ *passim*

Federal Rule of Appellate Procedure 38 ...........................................................................13

Federal Rule of Appellate Procedure 39 ...................................................................9, 10, 11

Federal Rule of Civil Procedure 23 ....................................................................................7

William B. Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*,
   53 UCLA L. REV. 1435, 1459 (2006) ..................................................................................9

## I.      INTRODUCTION

Plaintiffs respectfully move this Court for an Order requiring objectors Jeffrey Weinstein and Burke Fort (the "Weinstein Objectors"), and Nancy Brown, John Hightower, Alison Paul and Cery Perle (the "Palmer Objectors"), and their attorneys, to post an appeal bond pursuant to Federal Rule of Appellate Procedure 7 in the amount of $115,000.

Because the facts of this case align with the factors courts consider in determining whether to impose a reasonable bond requirement, Plaintiffs respectfully request that the Court enter an appeal bond.  First, no objector has demonstrated the financial inability to post a bond. Second, the objectors represent a risk for non-payment.  Third, the objections raised lack merit. Finally, given that the Weinstein and Palmer Objections have been raised by professional, serial objectors with little to no regard for the class, it cannot be doubted that the appeals presented to the Eighth Circuit are vexatious.  As such, an appeal bond should be entered.

The conservative amount requested reflects tangible costs associated with the appeal here.  First, $25,000 in anticipated taxable costs will be incurred by Plaintiffs in defending the appeal.  Second, up to $40,000 in potential additional taxable costs that will be incurred due to the delay in administering the settlement.  Further, Plaintiffs request $50,000 in attorney's fees Plaintiffs to account for the time necessary to defend the settlement against two sets of groundless appeals.

## II.      PROCEDURAL & FACTUAL BACKGROUND

On September 14, 2012, this Court approved a class settlement that provides valuable economic restitution to the defendants' consumers and carefully negotiated injunctive relief that will prevent similar alleged future harm to consumers.  Under the terms of the settlement, Defendants are required to pay $7.5 million into a settlement account that will fund restitution to the consumers that relied on defendants' false claims about its organic dairy products.

1

Additionally, Aurora also stipulated to an injunction ensuring Defendants cannot repeat their alleged false claims to consumers regarding the production and quality of Aurora's organic dairy products.

Following the negotiation of the terms of the settlement, nationwide notice was issued. In addition to notice of the settlement appearing in newspapers, magazines, and on the internet, consumers were also directly notified of the settlement through 2.4 million e-mails and 1.7 million postcards.  Despite this extensive notice campaign, which comported with due process, only three objections were filed in response, two of which are relevant to this Motion.  Jeffrey Weinstein and Burke Forte ("Weinstein Objectors") filed the first objection on January 28, 2013, which was soon followed that day by an objection filed by Joseph Darrell Palmer, which was filed on behalf of Nancy Brown, John Hightower, Alison Paul and Cery Perle (the "Palmer Objectors").[1]  Faced with a record establishing the propriety of the Settlement, on February 26, 2013, the Court granted final approval of the Settlement.  *See* Dkt. # 356.  In addition, the Court ordered reasonable attorney's fees (plus costs), along with class member service awards.  *See* Dkt. # 355.

As expected, given their litigation histories, the Weinstein and Palmer Objectors have filed appeals, delaying the final resolution of this action.  Neither Mr. Weinstein nor Mr. Palmer are strangers to objecting to class action settlements; rather, both have been correctly considered by the bar and courts across the country as professional objectors, out only to extract money from settlements.  *See* Declaration of Daniel J. Kurowski, Ex. 1 ("Kurowski Decl.") (identifying Weinstein objections dismissed, abandoned or withdrawn); Kurowski Decl., Ex. 2 (identifying Palmer objections dismissed, abandoned or withdrawn).  Many of the same courts have

---

[1] A third and final objection was filed on February 15, 2013 by Rajiv Dama, who has not appealed.

simultaneously chastised the litigation behavior of both Mr. Weinstein and Mr. Palmer. *See, e.g., In re Oil Spill*, MDL 2179, 2013 WL 144042, at *48 n.40 (E.D. La. Jan. 11, 2013) (noting "Mr. Palmer has been deemed a 'serial objector' by several courts" and citing to a transcript in that case involving "Mr. Palmer admitting it was 'regrettable' that he had been found to have engaged in 'bad faith and vexatious conduct'"); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *3 (D. Minn. Sept. 11, 2012) (noting "the Palmer Objectors appear to be represented by an attorney who has not entered an appearance in this case and who is believed to be a serial objector to other class-action settlements…This attorney, Darrell Palmer, paid the appellate filing fee on behalf of the Palmer Objectors, and the documents filed on their behalf bear his California mailing address rather than the Texas addresses of the Palmer Objectors."); *In re Initial Pub. Offering Sec. Litig.,* 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (finding Rule 7 bond warranted and concurring "with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients," and finding "sufficient evidence to conclude that the…Weinstein Objectors…are represented by serial objectors and…have engaged in bad faith and vexatious conduct").

Courts and commentators alike frequently recognize the drain on a settlement subject to professional objectors simply seeking to extract money from a settlement. "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing."

*In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011)

(quotations omitted, alteration in original).

As noted by a court in this Circuit, while appropriately recognizing that "[o]bjectors may

add value to the [settlement approval] process by: (1) transforming the fairness hearing into a

truly adversarial proceeding; (2) supplying the Court with both precedent and argument to gauge

the reasonableness of the settlement and lead counsel's fee request; and (3) preventing collusion

between lead plaintiff and defendants," the court characterized the professional objectors before

it with abundantly colorful but accurate language.  *In re UnitedHealth Grp. Inc. PSLRA Litig.*,

643 F. Supp. 2d 1107, 1109 (D. Minn. 2009) (quoting *In re Cardinal Health, Inc. Sec. Litig.,* 550

F. Supp. 2d 751, 753 (S.D. Ohio 2008)).[2]  Here, the Weinstein and Palmer Objectors provid the

Court with nothing, thereby failing to add any value in their role as objectors to the settlement

approval process.

As such, the objections here are subject to significant concern and an appeal bond is

necessary and appropriate.

## III.    THE COURT SHOULD ENTER AN ORDER REQUIRING THE WEINSTEIN AND PALMER OBJECTORS TO FILE APPEAL BONDS

Rule 7 of the Federal Rules of Appellate Procedure grants district courts the authority to

enter an order requiring the posting of an appeal bond.  Rule 7 provides that:

> In a civil case, the district court may require an appellant to file a
> bond or provide other security in any form and amount necessary
> to ensure payment of costs on appeal. Rule 8(b) applies to a surety
> on a bond given under this rule.

---

[2] The *UnitedHealth* court explained that the professional objectors before it "contributed nothing," filed pleadings that could "charitably…[be] described as disingenuous," offered "laughable" suggestions, all with the goal to "hijack as many dollars for themselves as they can wrest from a negotiated settlement."  *Id.* at 1109

Fed. R. App. P. 7.  This rule is intended to protect the appellees' rights by "provid[ing] some

level of security to Lead Plaintiffs who have no assurances that Appellants have the ability to pay

the costs and fees associated with opposing their appeals." *In re Uponor,* 2012 WL 3984542, at

*2 (imposing appeal bond in case litigated by Mr. Palmer).  Authority to craft a bond is

"indicative of the expected outcome on appeal" and lies with the district court. *Id.* at *2 (citing

*Adsani v. Miller,* 139 F.3d 67, 79 (2d Cir.1998)).

Appeal bonds are particularly advantageous for appeals of class action settlements

because appeals in those matters "effectively stay[] the entry of final judgment, the claims

process, and payment to all class members." *Id.* at *2; *see also In re Checking Account*

*Overdraft Litig.*, MDL 2036, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012) ("[A]n appellant

is less likely to bring a frivolous appeal if he is required to post a sizable bond ... prior to filing

the appeal.  Courts therefore commonly impose Rule 7 appeal bonds in the class action context

where necessary to protect class members from the burdens that stem from being forced to

defend frivolous lawsuits.") (citation omitted); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812,

818 (6th Cir. 2004) (affirming trial court's appeal bond order as objections had "practical effect

of prejudicing the other injured parties by increasing transaction costs and delaying disbursement

of settlement funds").

In determining whether an appeal bond is necessary, courts consider several factors

"including: (1) the appellant's financial ability to post a bond; (2) the risk of nonpayment of

appellee's costs if the appeal is unsuccessful; (3) the merits of the appeal; and (4) bad faith or

vexatious conduct on the part of the appellants." *In re Uponor,* 2012 WL 3984542, at *2.  Each

of these factors favor imposing an appeal bond here.

**A.**     **No Objector Has Demonstrated The Financial Inability to Post a Bond**

First, among the objections filed by the Weinstein and Palmer Objectors, Plaintiffs do not expect that any of the Objectors will be able to demonstrate an inability to post the requested bond. Without a showing that the objectors are unable to post the bond, this motion should be granted. *See Adsani,* 139 F.3d at 79 ("[W]e find that without any showing of her financial hardship, the bond imposed on Adsani is not an impermissible barrier to appeal ...."). Indeed, bare assertions of an inability to pay are insufficient to avoid payment of a bond by objectors whose appeals may only result in adding to the costs and delays of administering a classwide settlement. *Id.* ("[T]there must be some showing that the bond requirement actually impedes the appellant financially."). Further, where evidence is lacking that an appeal bond imposes an undue hardship upon the objectors, this factor weighs heavily in favor of requiring an appeal bond because "there is no indication that plaintiff is financially unable to post bond." *Id*. Thus, this first factor is met here.

**B.**     **All Objectors Represent A Risk For Nonpayment**

The second factor also weighs in favor of a bond requirement. The Weinstein and Palmer Objectors will represent significant risks of nonpayment when they lose their appeal. When objectors are dispersed throughout the country, as here, class counsel will be forced to utilize multiple collection proceedings to recover costs from any unwilling debtors. *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293 ("[T]he Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them [thus] plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs [...] As a result, there is a significant risk of non-payment"). In this case, the objectors originate from Texas and California, meaning that class counsel would have to travel hundreds of miles in order to enforce any orders imposing costs upon the objectors. These circumstances

favor the Court's issuing an appeal bond under Rule 7 that will protect the class and its hard fought settlement funds.

Furthermore, the risk of non-payment is heightened here, particularly with respect to Objector Paul and Mr. Palmer.  As reflected in recent conduct in another class action, *In re TFT-LCD (Flat Panel) Antitrust Litigation,* Mr. Palmer and his objector clients were given a monetary sanction of $9,254.11 for their failure to comply with a court order that directed "Paul and Chesser to appear for deposition and Palmer to communicate and coordinate with IPP counsel to schedule the depositions." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-1827 SI, 2013 WL 621791, at *1 (N.D. Cal. Feb. 19, 2013).  However, even though that court set a date certain by which the sanction should be paid, Mr. Palmer does not appear to have timely paid the sanction. *See* Ex. 3 to Kurowski Decl. (attaching motion filed by plaintiffs' counsel seeking additional sanctions for the failure to pay original sanction).  Thus, the risk of non-payment here is great.

There can be no dispute that Weinstein and Palmer are professional objectors with well documented histories of filing appeals then dismissing them only to extract payments. *See* Kurowski Decl., Exs. 1-2 (tracking Weinstein and Palmer objections).  The second factor is met as well.

## C.     The Appeals Lack Merit

The appeals of the Weinstein and Palmer Objectors lack merit and support the imposition of an appeal bond. *See In re Uponor,* 2012 WL 3984542, at *2 (holding that merit of the appeal is a factor to consider before issuing an appeal bond).  In Plaintiffs' response to the objections of the Weinstein and Palmer Objectors, Plaintiffs demonstrated that the class meets the certification requirements outlined in Fed. R. Civ. P. 23 and that the provisions of the settlement are fair, reasonable, and adequate.  This Court agreed in issuing its order granting final approval.  These arguments defeat the unsupported subjective and hypothetical improbabilities raised in the filed

objections.  These objections strain to find slight variations and ambiguities in language that may provide just enough of a window for the objectors to delay administration of the settlement funds and extort unwarranted fees.  The Palmer Objectors did not even appear at the Fairness Hearing, yet still intend to hold up the Settlement.  However, the Weinstein and Palmer Objectors' attempts are transparent and their objections fail to raise any legitimate concerns.  Therefore, this third factor weighs in favor of the imposition of an appeal bond.

**D.      The Weinstein and Palmer Objections Raised Their Objections As Professional, Serial Objectors With Little to No Regard for the Class**

Finally, the factor that weighs most heavily in favor of a substantial appeal bond is that this appeal reflects vexatious conduct in litigation.  The Objectors raise no legitimate arguments in favor of their appeals and only filed their appeals to delay the administration of the settlement funds in the hope to extort funds from the settlement for their own personal gain.  The Weinstein and Palmer Objectors are known professional objectors who consistently burden the civil justice system with failed objections and needless litigation.  Their objections amount to extortionist tactics that federal courts have denounced and have attempted to curtail through appeal bonds and, occasionally, sanctions.

Courts have repeatedly held that the objections of professional objectors do provide evidence satisfying this last factor.  *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 295 ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients"); *In re Enfamil LIPIL Mktg. & Sales Practices Litig. MDL 2222*, 11-MD-02222, 2012 WL 1189763, at *4 (S.D. Fla. Apr. 9, 2012) (finding representation by law firm of three previous objectors as evidence of bad faith).

Objecting to a settlement merely for one's own gain or private purposes without demonstrating any merit to one's claims is clearly improper. *See In re AOL Time Warner, Inc., Sec. & "Erisa" Litig.*, 02 CV. 5575 (SWK), 2007 WL 2741033, at *3 (S.D.N.Y. Sept. 20, 2007) (imposing appeal bond and finding bad faith where objector made an "attempt to extract a settlement from the Plaintiff, but it failed to provide the information necessary to complete the extraction," further imposing sanctions for an objector repeatedly "moving to intervene […] for the purpose of seeking compensation for his own unrelated claims").[3]

The appeals filed by the Weinstein and Palmer Objectors are of the exact nature denounced by the aforementioned courts. These appeals are filed in bad faith with the lone purpose of extorting funds from the classwide settlement and providing undeserved profits to the lawyers representing the objecting parties.

## IV.    THE APPEAL BOND SHOULD BE SET AT $115,000 MINIMUM

As a final matter, the Court should set an appeal bond in the minimum amount of $115,000. The amount of a Rule 7 bond includes those costs enumerated in Fed. R. App. P. 39, the costs of delaying and disrupting the administration of the settlement funds, and appropriate attorney's fees. *See In re Uponor,* 2012 WL 3984542. Under Rule 39, Rule 7 bonds include costs for:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

---

[3] Legal commentators have resoundingly spoken out against these types of objections calling them "warts on the class action process," "pond scum," and "bottom feeders." Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 409 (2003). This animus stems from the feeling that professional objectors attract "lawyers more interested in coercing a fee than in correcting a wrong." William B. Rubenstein, *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 UCLA L. REV. 1435, 1459 (2006) (citations omitted).

(3) premiums paid for a supersedeas bond or other bond to preserve rights

pending appeal; and

(4) the fee for filing the notice of appeal.

Fed. R. App. P. 39. In addition to the costs included in Rule 39, courts frequently award costs

incurred by delays caused the appeals of objectors, especially serial objectors, of class action

settlements. *Id.*

**A.      At Least $25,000 In Costs Should Be Taxable Under Fed. R. App. P. 39**

Plaintiffs request $25,000 for costs taxable under Fed. R. App. P. 39, which includes

costs for preparing and transmission of the record, court reporters' transcripts, and fees for filing

notices of appeal. $25,000 is a routine amount in appeal bonds for these costs. *See, e.g.,* Ex. 4 to

Kurowski Decl. (entering order that Mr. Palmer post a $25,000 appeal bond in *Ruwe v. Cellco

Partnership* (N.D. Cal.) "because the three factors courts take into account weigh heavily in

favor of a bond, namely: (1) the financial ability to post a bond; (2) the risk that appellants would

not pay appellee's costs on appeal; and (3) the merits of the appeal"); *In re Uponor,* 2012 WL

3984542 at *3 (finding "that a $25,000 bond for costs related to the appeals is reasonable" on

factors like those presented here such as "the appearance of twenty-four law firms as counsel in

this litigation, the filing of two separate appeals, and the size of the MDL and underlying

dockets"); *see also In re Initial Pub. Offering*, 728 F. Supp. 2d at 295 (awarding $25,000 for

Rule 39 aspects of Rule 7 bond); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, Civ. No.

04-5184 (GEB), 2007 WL 1963063, at *3-5 (D.N.J. July 2, 2007) (imposing a $25,000 appeal

bond as "a reasonable amount" to cover Rule 39 costs, noting that "[i]n addition to the printing

and administrative costs associated with an appeal, as discussed in Rules 7 and 39, it is possible

that the Plaintiffs will face different issues from different appellants, which may increase the

expenses"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1963, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) (assessing $35,000 appeal bond).

Rule 39 costs are automatically included in appeal bonds and plaintiffs do not need to anticipate all potential costs of a multi-party appeal in making their showing of costs for a bond motion. *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063, at *3. Because the record required for this appeal will be large, filed after years of litigation and a previous appeal, $25,000 is an "objectively reasonable" amount to cover anticipated litigation expenses. Courts may increase this amount as the case requires and as more information becomes available regarding the nature, or lack thereof, of each professional objectors' claims. *Id.* (citing *Hirschensohn v. Lawyers Title Ins. Corp.,* No. 96-7312, 1997 U.S. App. LEXIS 13793, at *3 (3d Cir. June 10, 1997), which points out that "some objectors will likely raise different issues in their appeals than others, causing the class to incur either more or less expense than incurred defending the appeals of other objectors").

**B.      Costs Of Delay Up to $40,000 Should Also Be Added To The Amount Of The Bond**

Plaintiffs also request $40,000 be added to the bond amount to compensate the class for delays in the administration of the class funds due to the appeals of these professional objectors. These delays will add to the costs of the administration of the settlement funds and will result in waste to the settlement's funds because the claims administrator will need to incur additional time responding to class member inquiries into the status of the settled action.

Given the appellate history in this case, resolution from notice of appeal to a decision by the Eighth Circuit will take over a year, meaning the settlement will needlessly be idle at least a year before its distribution, which will diminish the total value of the settlement due to the time value of money. Indeed, following the initial dismissal of this litigation, Plaintiffs filed their notice of appeal on July 2, 2009 (Dkt. #148), the Eighth Circuit's decision on Plaintiffs' appeal

did not take place until September 15, 2010.  Remarkably, the claims administrator estimates that

between $25,000-$40,000 in additional costs may be incurred during a one year delay, depending

on volume of class member correspondence and website updates.   *See* Kurowski Decl., Ex. 5

(Declaration of Tricia M. Solorzano Regarding Administrative Expenses During Pendency of

Appeal).  *See generally In re Checking Account Overdraft Litig.*, 2012 WL 456691, at *3 (bond

accounted for "delay of distribution of funds to the class"); *Allapattah Servs., Inc. v. Exxon

Corp.*, No. 91-0986-CIV, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006) (bond included

"interest that the entire class will lose as a result of the appeal."); *see also Brinn v. Tidewater

Transp. Dist. Comm'n*, 113 F. Supp. 2d 935, 941 (E.D. Va. 2000) (awarding $50,000 appeal

bond "to cover the judgment, post-judgment interest, and [any other] costs… ").  It is well within

this Court's discretion to include these costs to the class in the appeal bond, and Plaintiffs

respectfully request this Court to do so.

**C.      Reasonable Attorney's Fees of $50,000 Should Be Included In The Appeal Bond**

Plaintiffs also request that the attorney's fees expected to be incurred in this appeal

should be accounted for in the bond the Court sets.   Thus, Plaintiffs request $50,000 for

attorney's fees to compensate the class for additional fees paid to their attorneys in order to

defend the appeal.

Though the Eighth Circuit does not appear to have ruled on when it will allow attorney's

fees to be added to the amount of an appeal bond, the majority rule of the Second, Sixth, Ninth,

and Eleventh Circuits holds that district courts may order appeal bonds to secure appellate

attorney's fees as long as such fees are a recoverable cost under an applicable fee-shifting statute.

*See, e.g., Adsani,* 139 F.3d at 74-75; *In re Cardizem CD Antitrust Litig.,* 391 F.3d 812, 817-18

(6th Cir. 2004); *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007);

*Pedraza v. United Guaranty Corp.,* 313 F.3d 1323, 1329-30 (11th Cir. 2002).

Furthermore, at least one district court within the Eighth Circuit has also ruled in accord with these circuits allowing attorney's fees to be included in an appeal bond under an applicable fee-shifting statute. *Milone v. Exclusive Healthcare, Inc.*, No. 8:98CV274, 2000 WL 351741 (D. Neb. Mar. 9, 2000).  Also, the First Circuit has indicated that it may allow attorney's fees as costs under Rule 38 when an appeal is frivolous. *Sckolnick v. Harlow,* 820 F.2d 13, 15 (1st Cir. 1987) (per curiam) (affirming bond order noting "the district court's decision to set the amount at $5,000 implied a view that the appeal might be frivolous and that an award of sanctions against plaintiff on appeal was a real possibility"); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 278-79 (D. Mass. 2007) (determining that an appeal is frivolous because a "one-sentence written objection was inadequate to preserve . . . [the] objection on appeal").

Here it is appropriate in this case to add attorney's fees to the amount of the appeal bond as the appeals at issue are merely attempts to extort money from the settlement.  The amount requested for attorney's fees in this case is in line with amounts awarded in other jurisdictions. For instance, in *In re Cardizem CD Antitrust Litigation,* the Sixth Circuit affirmed the inclusion of $50,000 for attorney's fees in a larger $174,429 appeal bond because "Fed. R. App. P. 39 does not define 'costs' at all; rather, it merely lists which costs of appeal can be 'taxed' by the district court" and the underlying statute in the case included attorney's fees as costs. *In re Cardizem CD Antitrust Litig.,* 391 F.3d at 815, 817.  Under similar grounds, the court in *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 187 F.R.D. 124, 128 (S.D.N.Y. 1999), also found that $50,000 was an "objectively reasonable" amount for attorney's fees in an appeal bond, imposing a $101,500 bond requirement.

13

## V.     CONCLUSION

The settlement fund ultimately approved in this case represented months of hard-fought arms-length negotiations that will provide valuable restitution and relief to consumers.  However, the Weinstein and Palmer Objectors stand in the way of this hard fought and fair relief to promote personal gain given their wide recognition as professional objectors who profit from delaying the distribution of settlements and extorting class funds for their personal profit.  One of the few tools in preventing or minimizing the damage caused such parties is the imposition of appeals bonds.  Imposing an appeal bond in this case will provide necessary security to the class as a result of the meritless appeals working their way to the Eighth Circuit.  Plaintiffs request that the bond be posted within 14 days of entry of the Court's order.  Plaintiffs further request all such other relief that the Court deems necessary and appropriate.

Dated: April 18, 2013                    Respectfully submitted,


                                         /s/ Daniel J. Kurowski
                                         Elizabeth A. Fegan
                                         Daniel J. Kurowski
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1144 W. Lake Street, Suite 400
                                         Oak Park, IL 60301
                                         Telephone:  (708) 628-4949
                                         Fax: (708) 628-4950
                                         E-mail: beth@hbsslaw.com
                                         E-mail: dank@hbsslaw.com

                                         Don M. Downing
                                         Gretchen Garrison
                                         Thomas Neill
                                         GRAY, RITTER & GRAHAM, P.C.
                                         701 Market Street, Suite 800
                                         St. Louis, MO 63101-1826
                                         Telephone:  (314) 241-5620
                                         Facsimile:  (314) 241-4140

                                         *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on April 18, 2013, a true and correct copy of the foregoing, together with all exhibits, was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

<u>/s/ Daniel J. Kurowski</u>