IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: Aurora Diary Corp. Organic Milk Marketing and Sale Practices Litigation | ) ) ) ) ) ) | Civil Action No. 4:08-md-01907-ERW ALL CASES Judge E. Richard Webber |

**RESPONSE IN OPPOSITION TO MOTION FOR APPEAL BOND**

Objectors/Appellants Nancy Brown, John Hightower, Alison Paul and Cery Perle respond in opposition to the motion for appeal bond (Doc. 369).

Objectors will not respond to the personal attacks that betray class counsels' reputation and lawyering skills, they have no place in these proceedings. This court should not support desecration of Congressional intent by sanctioning irrelevant attacks on lawyers who advance the interests of millions of silent class members by filing objections and protecting the class from their own attorneys once the finish line is in sight and the race for fees is underway.

On April 11, 2011, the Hon. Ortie D. Smith issued an order responding to a *ad hominem* barrage against objector lawyers; Judge Smith set an example for the bench and bar and a high standard for this district in *In Re: Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, MDL No. 1967, Master Case No. 08-1967 (Docket No. 671) (W.D. Missouri). "[T]he Court clarifies that it has little patience or tolerance for personal attacks on parties or lawyers, and does not expect to read or hear any in the future processing of this case." (Palmer Decl. Exh. A.)

Today, plaintiffs have suddenly withdrawn their bond motion directed towards

objector/appellants Weinstein and Fort. (Doc. 373)  They apparently leveraged some arrangement with those objector/appellants making it clear this motion is an offensive tactic.[1]

**A. Legal Standard for Imposing Appellate Bonds**

Rule 7 of the Federal Rules of Appellate Procedure (FRAP) provides for posting a bond, "to ensure that the appellee will be paid any costs that are awarded to him if the appellant is unsuccessful on appeal."  The purpose of the rule is to "protect ... an appellee against the risk of nonpayment by an unsuccessful appellant." *In re AOL Time Warner, Inc.,* 2007 WL 2741033, *4 (S.D.N.Y.  Sept. 20, 2007); see also, *Page v. A.H. Robins Co.*, 85 F.R.D. 139, 139-40 (E.D.Va. 1980.)  The Advisory Committee Notes to Rule 7 indicate that the question of the need for a bond, and its amount, are left to the discretion of the trial court.

A district court may not impose a bond in an amount beyond what is necessary to insure adequate security if to do so would preclude pursuit of an appeal.  *Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972) (holding that statute conditioning appeal on posting of double bond was unconstitutional under Fourteenth Amendment equal protection clause).  A bond many not be imposed to discourage exercise of the right to appeal.  See *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974)(stating that "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated").   Rule 7 was not intended to be a means of discouraging appeals, even if perceived to be frivolous.  *In re American President Lines, Inc*, 779 F.2d 714, 717 (1985) (denying bond requested because it failed as legitimate means of protecting Appellee against possibility that appeal might be frivolous).

Rule 7 does not provide explicit guidance about what factors to consider.  The Eighth Circuit is similarly mum.  Plaintiffs urge this court to rely on factors espoused by a district court in Minnesota, but that decision was discarded by the Eighth Circuit and Plaintiffs have

---

[1] Perhaps in their reply plaintiffs can explain which of the *ad hominem* remarks the court should now ignore.

erroneously relied on *In re Uponor, Inc., Plumbing Fittings Products Liab. Litig.*, 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *3 (D. Minn. Sept. 11, 2012). In an emotionally charged decision that court ordered an appeal bond of $170,000, making findings far afield from Rule 7 (that decision also mentions the number of appellants (37) and does the math for a per objector bond expense). Dismissing that district court's reasoning and findings, on September 28, 2012, the Eighth Circuit stayed the *Uponor* district court's bond order for all amounts over $25,000; it is now misguided to suggest this court follow in the footsteps of the cited district court *Uponor* decision. (Palmer Decl. Exh. A)

**B. Amount of Appellees' Potential Exposure**

With no factual or evidentiary substantiation, plaintiffs assert $25,000 is their anticipated "costs for preparing and transmission of the record, court reporters' transcripts, and fees for filing notices of appeal." (Doc. No. 369 at 10) The $25,000 amount is so grossly overstated it violates numerous advocacy boundaries. There are no "filing fees" for appellees. Under the rules, appellants bear the burden and expense of preparing and transmitting the record and court reporters transcript to the court of appeal. Based on many appeals, appellants anticipate such actual printing expenses for the copies of the record to be sent to the 8th Cir. will be less than $1000. Appellants will also pay the transcript expenses of less than $500. (Palmer Decl. at 4) The only expense appellees face is that of possible supplements to the record but as long as they cooperate in designating the record with appellants that is highly unlikely to occur; even that could not exceed $500. So while realistically facing less than $500 in expense, class counsel suggests they face costs of $25,000; a serious misrepresentation.

Many courts have followed the Ninth Circuit's analysis outlined in *Azizian v. Federated Dept. Stores, Inc.,* 499 F.3d 950 (9th Cir. 2007). Here however, that analysis reveals no bond is necessary.

**C. Appellant's Ability to Pay**

The motion cites a few cases in which similar sized bonds were imposed, but offers no factual comparisons to show what was appropriate there is appropriate here. Lacking any reliable information, declaration or evidence supporting plaintiffs $115,000 total figure, the only reasonable inference is that the number they believe exceeds objectors' ability to pay and will discourage them from exercising their right to appeal.

The real question is whether appellants can reimburse appellees' recoverable expenses. Before filing this opposition, objectors offered to deposit $3000 in the lead counsel's trust account as security for their expenses. That offer was refused, yet another clue this motion is a strategy to combat objections and appeals. (Palmer Decl. Exh. B.)

The ability to pay question can only be posed after an honest examination of what the costs are likely to be incurred by appellees; that has not happened. A figure without foundation is speculation, just like the question of ability to pay.

**D. Appellant's Willingness to Pay.**

While there is no indication objectors would refuse to pay costs, it is true they are not citizens of this district (neither are lead counsel) and arguably that factor leans in favor of imposition of an appeal bond. But here these objectors are willing to bear the expense of reasonable costs, as demonstrated by their offer of reasonable cash security.

Objectors' counsel has successfully arranged this with lawyers even more critical of professional objectors, always with amicable relations and uncontested results.[2]

**E. Merit of the Appeal**

Whether an appeal is frivolous is solely within the purview of the appellate court, not the district court. *Vaughn v. American Honda Motor Co., Inc.,* 507 F.3d 295, 299 (5th Cir. 2007). Only the appellate court has the authority to impose sanctions for a frivolous appeal. *Azizian v. Federated Dept. Stores, Inc.,* 499 F.3d 950 (9th Cir. 2007). An appeal is frivolous only if "the result is obvious or if the claims of error are wholly without merit." *DeWitt v. Western Pacific Railroad Co.,* 719 F.2d 1448, 1451 (9th Cir. 1983). See also, *Newhouse v. McCormick & Co., Inc.,* 130 F.3d 302 (8th Cir. 1996.)

The foundation for the appeal is a 14 page detailed objection; it is far from frivolous. This case is on point in many respects with *In re Baby Products Antitrust Litigation,* 707 F.3d 163 (3rd Cir. 2013):

> What we are concerned with in this case is that the Court approved the settlement without being made aware that almost all claimants would fall into the $5 compensation category, resulting in minimal (and we doubt sufficient) compensation going directly to class members. The baby products at issue cost up to $300, resulting in damages, at the estimated 18% overcharge, of over $50. Combined with the possibility of treble damages, we doubt that this is the type of small claims case where the potential awards were necessarily insufficient to motivate class members to file claims. We think it more likely that many class members did not submit claims because they lacked the documentary proof necessary to receive the higher awards contemplated, and the $5 award they could receive left them apathetic. This casts doubt on whether agreeing to a settlement with such a restrictive claims process was in the best interest of the class.

*Id*. at 176. *Baby Products* is also instructive on attorney fees:

---

[2] This arrangement was made with class counsel in *Dennis* v. *Kellogg Co.* 697 F.3d 858 (9th Cir., 2012) in which an objector/appellant represented by Darrell Palmer prevailed and with the same counsel in *Hartless v. Clorox,* No. 11-55136 (9th Cir., May 24, 2012) where his clients did not prevail.

We appreciate, however, that awarding attorneys' fees based on the entire settlement amount rather than individual distributions creates a potential conflict of interest between absent class members and their counsel. "Arrangements such as [these] . . . decouple class counsel's financial incentives from those of the class. . . . They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." Int'l Precious Metals Corp. v. Waters, 530 U.S. 1223, 1224 (2000) (denial of cert.) (O'Connor, J.) (discussing a percentage fee calculated against the entire settlement fund even though a significant portion would revert to the defendant). Class members are not indifferent to whether funds are distributed to them or to cy pres recipients, and class counsel should not be either.

Where a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, we therefore think it appropriate for the court to decrease the fee award. See Masters, 473 F.3d at 437; Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (stating that although the entire common fund was the appropriate benchmark for attorneys' fees, the percentage of the fund awarded may be decreased "to account for any unusual circumstances"); In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig., 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) ("The class benefit conferred by cy pres payments is indirect and attenuated. That makes it inappropriate to value cy pres on a dollar-for-dollar basis."); cf. Dennis v. Kellogg Co., 697 F.3d 858, 867–68 (9th Cir. 2012) (vacating an attorneys' fees award because the District Court did not sufficiently scrutinize the valuation of a cy pres distribution consisting of "$5.5. million worth" of food, and noting that "[t]his issue is particularly critical with a cy pres product settlement that has a tenuous relationship to the class allegedly damaged by the conduct in question").(FN13)

For the reasons discussed, our approach is case by case, providing courts discretion to determine whether to decrease attorneys' fees where a portion of a fund will be distributed cy pres. The ALI has adopted a similar approach. According to its Principles of the Law of Aggregate Litigation, "[a]ttorneys' fees in class actions, whether by litigated judgment or by settlement, should be based on both the actual value of the judgment or settlement to the class and the value of cy pres awards . . . ." ALI, Principles of the Law of Aggregate Litig. § 3.13. The comment to that section clarifies, however, that "because cy pres payments . . . only indirectly benefit the class, the court need not give such payments the same full value for purposes of setting attorneys' fees as would be given to direct recoveries by the class." Id. § 3.13, comment a.

[FN 13] We note that, in enacting the Class Action Fairness Act, Congress required courts to base attorneys' fees in coupon (as opposed to cash) settlements "on the value to class members of the coupons that are redeemed" rather than on the face value of the coupons. 28 U.S.C. § 1712(a). Although we do not deal with a coupon settlement, this statutory provision

6

Opposition to Motion for Appeal Bond

further supports the proposition that the actual benefit provided to the class is
an important consideration when determining attorneys' fees.

*Id*. at 178-9. The issues addressed in *Baby Products* presents serious and important questions to the Eighth Circuit. If the appeal is frivolous, it will be dismissed upon motion in the Circuit court and the bond motion will be moot.

*In re Baby Products* has another connection to this case: same lead class counsel. Their tone of their original district court responses to *Baby Products* objections were repeated here: "these lawyers have done this before! They are bad people! They have a political agenda! They only want money!" Their response to the *Baby Products* objections is attached to the Palmer Decl. as Exh. C. These disingenuous arguments offer an excellent example of why district courts should extend warm hospitality to objectors who reinforce and support the courts' fiduciary duty to protect silent class members once the race for money begins. The "frivolousness" factor weighs against imposing an appeal bond.

**F. Good Faith Objections**

*Azizian v. Federated Dept. Stores, Inc.,* 499 F.3d 950 (9th Cir. 2007) reasoned because the appeals court may award double costs or attorneys' fees in the instance of a bad-faith appeal, the appeals court, not the trial court, in the best position to decide if an appeal is in bad faith – after a full review of the merits. *Azizian,* 499 F.3d at 954. The Objections and this appeal are undertaken in good faith, as demonstrated by thorough and competent citation to ample authority. If the court considers this factor, it also weighs against imposition of a bond.

**G. Excessive Demands**

Plaintiffs demand bond coverage for categories with no logical or legal support. There is no precedent or rationale for recovery of attorney fees, administration expenses, statutory attorney fees or delay expense by a successful appellee. The specious arguments for such

Opposition to Motion for Appeal Bond

claims must be ignored.  Arguments refer to other cases involving other parties, lawyers, facts and circumstances must be ignored.  Not a shred of evidence to support any possible recoverable costs has been submitted.  Where appellees do not justify its requested bond amount, the district court need not grant the amount requested.  See, *Lundy v. Union Carbide Corp.*, 598 F.Supp. 451 (D.C.Or. 1984).

FRAP Rule 39(e) defines the costs that may be taxed, such as the preparation and transmission of the record:  Rule 39(e)(1), the reporter's transcript, if necessary;  Rule 39(e)(2), premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; Rule 39(e)(4), the fee for filing the notice of appeal. (Rule 39 (e)(3) does not apply in this case.)

Regarding Rule 39(e)(1), the record for this appeal is minimal because the appeal is based on finite issues which will not need a voluminous record.  Even copying and postage costs will be minimal because all records are available, and will be filed and served, electronically.

**H. Erroneous and Misleading Personal Attacks**

Class counsels' tired theme is that Objectors' counsel have represented other objectors and filed appeals[3] in other cases and must be ordered to post an excessive bond. The self-serving characterization of objectors holding the settlement process hostage at the appellate level is grossly transparent.  Their arguments would eliminate the entire concept of appellate review because any appeal can be characterized as holding a judgment hostage at

---

[3] Presumably all lawyers in this case have represented other clients in other class actions and filed appeals, rendering the argument about Objectors' counsel puzzling, if not bizarre.  The Hagens firm filed a very aggressive objection for John Rego, Ron Biermann, Sr., Caroline Khripin, Milton Pyron, Stephen Pustelnik, Rebecca Schrader, Kim Noackit in *Lockaby v. American Honda,* No. 37-2010-00087755-CU-BT-CTL (Sup. Ct. San Diego CA 2012) challenging core issues in that settlement.  Although in most instance class counsel objections are battles over fee shares.

the appellate level.  The motion's implication is objectors should not be permitted to appeal – at least not without posting a huge bond – merely because their lawyers have appeared unrelated cases.  They conveniently fail to mention how appeals by objectors have caused tremendous positive changes for millions of class members although often at the expense and inconvenience of class counsel.

Consider the poignant observation of the Hon. U.S. District Judge Stanley R. Chesler at the May 11, 2006 Fairness Hearing in *In re Bristol Meyers Securities Litigation*, 00-1990 (SRC) (D.N.J. at Trenton) as he greeted Edward F. Siegel, who has been named as a "professional objector":

> [W]hether or not plaintiffs' counsel or even these defendants' counsel welcomes you, the Court does. . . . Indeed, the role of objectors is an important and significant one. You're absolutely right. At this stage of the proceedings, it is only a party such as you who in fact bring[s] an adversarial approach to an important decision which the Court has to make and your reviewing this material and bringing your observations is a useful and, indeed, an important function which is served. . . . You are right. The Court does function in a fiduciary capacity but the Court needs independent observations to help it fulfill that role and, indeed, it's important that the Court make sure, both in approving settlements and in approving attorneys' fees, that the Court never lose sight of the fiduciary role which it indeed is obligated to perform.

(Transcript of Fairness Hearing at pp 33-34.)

## CONCLUSION

Objectors have an ordained role in class action litigation and they have a right to appeal.  This Court must reject this vigorous and passionate request to deprive these objectors of that right.  The bond sought is excessive, unwarranted by facts or law.   The court should overrule the request for bond or set the bond at $2,500 or less.


                                        LAW OFFICES OF DARRELL PALMER PC

Dated:  April 25, 2013         By: /s/ Joseph Darrell Palmer_____

                                        Joseph Darrell Palmer
                                        Law Offices of Darrell Palmer PC
                                        603 N. Highway 101, Suite A
                                        Solana Beach, CA 92075
                                        Phone: 858-792-5600
                                        Fax: 866-583-8115
                                        Email: Darrell.palmer@palmerlegalteam.com

                                        Attorney for Objectors Nancy Brown,
                                        John Hightower, Alison Paul and Cery Perle

## CERTIFICATE OF SERVICE

I certify that on April 25, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Eastern District of Missouri by using the USDC CM/ECF system.

I certify all participants are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system.


                                        ___/s/ Joseph Darrell Palmer_____
                                        Joseph Darrell Palmer
                                        Attorney for Objectors