**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation | Civil Action No. 4:08-md-1907-ERW<br><br>ALL CASES |

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR APPEAL BOND**

Plaintiffs, by and through their attorneys, and as their Reply Memorandum in Support of Plaintiffs' Motion for Appeal Bond, state the following:

## I.     INTRODUCTION

Without disputing that this Court approved a class settlement that provides valuable economic restitution to the class and carefully negotiated injunctive relief that will prevent similar alleged future harm to consumers, the Palmer Objectors have appealed, delaying the final resolution of this action.  Given the significant amount of money involved here, a $7.5 million settlement, the appeal bond originally requested by Plaintiffs - $115,000 – representing only 1.53% of the settlement's cash value, can hardly be determined to be onerous.  Because the factors considered in imposing a bond have been met here, Plaintiffs respectfully request that the Court enter the requested appeal bond.

## II.     ARGUMENT

**A.     The Palmer Objectors' Response Confirms That the Factors Weigh In Favor of Imposing an Appeal Bond**

As previously noted, in determining whether an appeal bond is necessary, courts in this circuit have considered several factors "including: (1) the appellant's financial ability to post a bond; (2) the risk of nonpayment of appellee's costs if the appeal is unsuccessful; (3) the merits

1

of the appeal; and (4) bad faith or vexatious conduct on the part of the appellants." *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11–MD–2247 ADM/JJK, 2012 WL 3984542, at *2 (Minn. Dist. Ct. Sept. 11, 2012).[1] The Palmer Objectors' response confirms that each of these factors call for entry of an appeal bond.

1.  **The Court Should Presume the Palmer Objector's Financial Ability to Post a Bond**

First, regarding the appellant's financial ability to post a bond, the Palmer Objectors do not deny that they have the financial capacity to post a bond or otherwise demonstrate in any way that they lack the ability to post a bond. Instead, they punt, stating incorrectly that "[t]he ability to pay question can only be posed after an honest examination of what costs are likely to be incurred by appellees." Palmer Resp. at 4. As a result, the Palmer Objectors have failed to meet their burden. *See, e.g., Adsani v. Miller,* 139 F.3d 67, *76, 79 (2d Cir. 1998) ("[W]e find that without any showing of her financial hardship, the bond imposed on Adsani is not an impermissible barrier to appeal" as "there must be some showing that the bond requirement actually impedes the appellant financially"); *Heekin v. Anthem, Inc.*, 1:05-CV-01908-TWP-TAB, 2013 WL 752637, at *2 (S.D. Ind. Feb. 27, 2013) (granting $250,000 appeal bond in another case involving two objectors, including one apparently represented by Mr. Palmer, where

---

[1] The *Uponor* court ordered a $170,000 appeal bond, however, in an unpublished order provided to the Court by the Palmer Objectors and not available on Lexis or Westlaw, the Eighth Circuit entered an order directing succinctly that "the requirement that Appellants post an appeal bond in excess of $25,000 is stayed pending appeal." Dkt. # 374-2. The Eighth Circuit effectively affirmed the district court's decision to impose an appeal bond, including its analysis of the factors courts consider in determining whether to impose an appeal bond, but reduced the bond in a case where the appellants/objectors that filed the motion conceded that $25,000 was an appropriate amount for a bond. Kurowski Decl., Ex. 1 at 17 (Appellants' Motion for an Immediate Stay of Appeal bond). Notably, the Palmer Objectors were not a party to the motion seeking the elimination or reduction of the bond amount. *See id.* And, after the Palmer Objectors apparently failed to post any bond, the *Uponor* plaintiffs/appellees moved to dismiss for their failure to file an appeal bond or for lack of standing. *See* Kurowski Decl., Ex. 2. The Eighth Circuit granted the motion to dismiss. *See* Kurowski Decl., Ex. 3.

objectors did not "submit[] to the Court that they are unable to financially sustain a bond")[2]; *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) ("Objectors have not presented any evidence demonstrating that they lack the financial ability to post a bond. Accordingly, the Objectors' ability to do so is presumed."). Accordingly, this factor weighs in favor of imposing a bond.

2. **The Palmer Objectors Concede The Factor Inquiring Into The Risk Regarding Nonpayment of Costs**

Second, there is no dispute regarding the risk of nonpayment of appellee's costs if the appeal is unsuccessful. Here, even the Palmer Objectors concede that this factor weighs in favor of imposing an appeal bond. *See* Palmer Resp. at 4 ("While there is no indication that objectors would refuse to pay costs, it is true they are not citizens of this district…and arguably this factor leans in favor of imposition of an appeal bond."). This factor is met without dispute.

3. **It Is Proper for the Court to Consider the Merits of the Appeal and The Palmer Objectors' Justifications Regarding the Merit of their Appeal Do Not Withstand Scrutiny**

Next, regarding the merits of the appeal, the Palmer Objectors incorrectly assert that the issue of "[w]hether an appeal is frivolous is solely within the purview of the appellate court, not the district court." Palmer Resp. at 5. However, Fed. R. App. P. 7 directs that the district court determine whether to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. This determination includes consideration of the merits of an appeal. *See, e.g., Uponor,* 2012 WL 3984542, at *2 (considering the merits of the appeal as a factor in deciding whether an appeal bond is appropriate); *Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 WL 945267, at *1

---

[2] The district court's bond order was stayed by the Seventh Circuit pending resolution of the appeal. However, this does not obviate the need for a bond to reimburse for the costs resulting from the Palmer Objectors' spurious appeal.

3

(W.D. Wash. Mar. 11, 2013) (same); *Heekin,* 2013 WL 752637 at *2 (same); *Yingling v. eBay, Inc.,* No. C 09-01733 JW, 2011 WL 2790181, at *1 (N.D. Cal. July 5, 2011) (same); *Paladino v. DHL Express (USA), Inc.,* No. 07 CV 1579(DRH)(ARL), 2011 WL 1344009, at*1 (E.D.N.Y. Apr. 8, 2011) (same).  Thus, district courts regularly reject the notion that they cannot inquire into the merits of an appeal.  *See, e.g., Heekin,* 2013 WL 752637 at *2 ("As an initial matter, the trial Court recognizes that it is its place to determine whether an appeal is frivolous."); *In re Initial Pub. Offering Sec. Litig*., 728 F. Supp. 2d at 293 ("[T]he Objectors contend as an initial matter that it is not for the district court to decide whether an appeal has merit.  However, in upholding a district court's order for a Rule 7 bond, the Second Circuit unequivocally rejected the argument that a district court may not forecast the merits of the appeal") (internal citation omitted).

In declaring that their appeal has merit, the Palmer Objectors cite to: (1) their objection, and (2) a few sections cut and pasted from the Third Circuit's decision in *In re Baby Products Antitrust Litigation,* 708 F.3d 163 (3d Cir. 2013), contending without any analysis that this case "is on point" with that decision.  Palmer Resp. at 5-7.  However, neither item demonstrates the merits of their appeal.

First, Plaintiffs previously demonstrated why their objections were meritless.  *See generally* Dkt. # 346 (Plaintiffs' Response to Objections).  As the Court is aware, after filing their objections, the Palmer Objectors did not support their objections at the fairness hearing.  Indeed, they did not even attend the fairness hearing.  After a careful analysis of all the issues and arguments, the Court overruled the Palmer Objectors' arguments and granted Plaintiffs' motions for final approval of the settlement and for attorneys' fees and costs in their entirety.  *See* Dkt. # 355 to 356-1.  On appeal, the Eighth Circuit will review the arguments that the

Palmer Objectors submitted to this Court (and only the arguments they submitted to the Court), and apply the deferential abuse of discretion standard.  Given the generic nature of the objections, Plaintiffs believe the appeal is meritless, serving only to impose a costly delay in the final resolution of this action.

Second, the *Baby Products* decision does not support the Palmer Objectors' appeal.  In *Baby Products*, the Third Circuit considered the use of cy pres distributions in class action settlements arising out of a $35 million dollar consumer antitrust settlement.  While this decision is not binding on this Court, the Third Circuit "join[ed] other courts of appeals in holding that a district court does not abuse its discretion by approving a class action settlement agreement that includes a *cy pres* component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury." *Baby Products,* 708 F.3d  at 172.  The Third Circuit, however, cautioned "that direct distributions to the class are preferred over cy pres distributions." *Id*. at 173.

Here, the concerns voiced by the Third Circuit are inapplicable.  As the Third Circuit noted, "[t]hough the parties contemplated that excess funds would be distributed to charity after the bulk of the settlement fund was distributed to class members through an exhaustive claims process," the actual allocation in that case appeared to "be just the opposite," with only approximately $3 million being directly distributed to class members, with approximately $18.5 million, less administrative expenses, to be distributed to one or more cy pres recipients. *Id*. at 169.  As a result, that Court remanded to permit the district court to "consider whether [the] settlement provides sufficient direct benefit to the class before giving its approval." *Id*. at 170.

While this case involves the use of *cy pres* to distribute unclaimed settlement funds, the disparity between direct distribution to class members and the *cy pres* present in *Baby Products*

5

is not found here.  Moreover, *Baby Products* is inapplicable for other reasons too.  For example, the minimum payment involved here, $10.00, was twice that of the $5 award found in *Baby Products.  Baby Products*, 708 F.3d at 176.  As another example, the settlement here is more favorable in terms of percentage of recovery, representing between 1369% to 34% of damages under a benefit of the bargain theory (*see generally* Dkt. # 316 at 17), far in excess of the 10% of damages recovered for minimum payment awards in *Baby Products.  Id.*

Clearly, neither their objection nor *Baby Products* provides the Palmer Objectors protection from a finding that their appeal is without merit.

> **4.  While the Palmer Objectors Seek to Categorize Plaintiffs' Legitimate Concerns as "*Ad Hominem*" Attacks, Documented Serial Objector Behavior Is Relevant in Analyzing the Bad Faith and Vexatious Factor**

The fourth factor courts look to in considering bond requirement involves the issue of bad faith or vexatious conduct on the part of the appellants.  Despite Plaintiffs' argument that this factor weighs heavily in favor of a bond, the Palmer Objectors devote a mere six lines in their brief to this factor, citing a Ninth Circuit decision and a pronouncement that their appeal is "undertaken in good faith."  Palmer Resp. at 7.   This is not enough to carry their burden.

Notably, the Palmer Objectors attempt to portray Plaintiffs' research into their prior objections as *ad hominem* attacks.  *See* Palmer Resp. at 1-2, 7-9.  However, this evidence shows relevant inquiries considered by courts in determining whether to issue a bond.  *See Heekin*, 2013 WL 752637 at *3 (finding evidence of bad faith or vexatious conduct, in part where "Plaintiffs have produced evidence that Mr. Palmer is likely a serial objector and other courts have recognized similar behavior"); *Uponor,* 2012 WL 3984542 at *3 (finding "that the Palmer Objectors have evidenced bad faith and vexatious conduct," noting "[m]ost critically, the Palmer Objectors are not class members").

Additional evidence supporting a finding of bad faith includes the Palmer Objectors' failure to comply with this Court's order to provide pertinent, basic identification information to determine whether the Palmer Objectors are in fact actually class members. *See* Preliminary Approval Order at ¶ 16 (Dkt. # 321). *Compare id. with Uponor,* 2012 WL 3984542 at *3. The Preliminary Approval Order provided unambiguous directives, *id.*, and the Palmer Objectors failed to follow them. *See* Dkt. # 377. Thus, an appeal bond is necessary and appropriate.

**B.     The Amount of the Bond Sought is Proper and Supported by Case Law and the Evidence.**

Plaintiffs seek a $115,000 appeal bond, comprised of three categories: appeal costs, settlement administration costs, and attorneys' fees. In addition to disputing whether a bond should be imposed, the Palmer Objectors also challenge the amount of the bond sought, which they believe should be limited to $2,500 or less. However, the Palmer Objectors' proclamation that Plaintiffs' requests lack logical or legal support is incorrect.

Regarding the first category, Plaintiffs requested that the Court impose a $25,000 bond of costs under Fed. R. App. P. 39 because that amount is consistent with what other courts in class action objection appeals have imposed. Indeed, Plaintiffs indicated that $25,000 was an objectively reasonable amount and a routine amount entered as appeal bonds for these costs. *See* Dkt. # 369 at 10 (collecting multiple cases imposing $25,000 bonds for costs related to appeals). Thus, the Palmer Objectors' statement that such a request reflects a misrepresentation or is otherwise inconsistent with other cases should be rejected.

Next, Plaintiffs requested that up to $40,000 be added to the bond amount to compensate the class for delays in the administration of the class funds which will result in increased administration costs due to the appeal filed by the Palmer Objectors. Again, the Palmer Objectors' statement that Plaintiffs lack precedent or rationale for such a request is contradicted

7

by the evidence and precedent.  Consistent with the approach taken by other courts, Plaintiffs requested administration expenses be included in the bond amount, providing the Court with a declaration by a representative of the claims administrator used in this case supporting the request.  *See* Dkt. # 370-5.  Notably, in *Dennings*, 2013 WL 945267 at *2, a court recently entered a bond order along similar lines:

> Plaintiffs' request for $39,150.00 in administrative fees is also reasonable. As explained above, courts have interpreted Rule 7 broadly to include increased expenses in settlement administration and administrative costs. *See Cardizem,* 391 F.3d at 815, 817. Plaintiffs calculated their figure of $39,150.00 by multiplying the estimated monthly increase in settlement administration costs ($2,250.00) by the median length of a Ninth Circuit appeal (17.4 months) to arrive at a total of $39,150.00.  This is a sound methodology that is supported by evidence.  Once again, Mr. Morgan and Mr. De La Garza present no evidence whatsoever to rebut it.

*Id.* at *2.  Like Mr. Morgan and Mr. De La Garza in *Dennings,* the Palmer Objectors provide no evidence to rebut the amounts.  *See also Heekin*, 2013 WL 752637 at *4 (requiring bond be posted which included "$235,000 for the administrative costs of the delay caused by the appeal," noting further that "[t]his amount is also within the range given in other class action cases that include excess administration costs").

    Lastly, Plaintiffs requested that the Court include $50,000 in attorney's fees to compensate the class for additional fees paid to their attorneys in order to defend the appeal. Dkt. # 369 at 12.  As with their cost request, Plaintiffs requested that amount consistent with amounts provided in other cases, including after noting a circuit split regarding whether to include attorney fees in appeal bonds.[3]  *Id.* at 12-13.  The Palmer Objectors do not challenge this

---

[3] Plaintiffs also noted that there is a circuit split regarding whether to include attorneys' fees, with the majority of circuit courts of appeal to consider the issue permitting the practice.  Dkt. # 369 at 12.  The Palmer Objectors make no reference to such cases.

8

amount as unreasonable, nor could they.  Indeed, the $50,000 attorney fee amount would reflect a mere 76 hours of work by co-lead counsel Don Downing, or 95 hours of work by co-lead counsel Elizabeth Fegan, using their ordinary billing rates that were previously submitted to the Court.  *See* Dkt. # 333-2, 333-3.  If anything, the fee request will be too low.  This does not include any other attorneys' time, which inevitably will be incurred.

Accordingly, the amounts comprising Plaintiffs' bond request are entirely reasonable.

### III.　CONCLUSION

For the reasons provided above and it their opening motion, Plaintiffs respectfully request that the Court enter a $115,000 appeal bond to be posted by the Palmer Objectors within 14 days of entry of the Court's order.  Plaintiffs further request all such other relief that the Court deems necessary and appropriate.

Dated: May 6, 2013                                        Respectfully submitted,

/s/ Daniel J. Kurowski_____
Elizabeth A. Fegan
Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 W. Lake Street, Suite 400
Oak Park, IL 60301
Telephone:  (708) 628-4949
Fax: (708) 628-4950
E-mail: beth@hbsslaw.com
E-mail: dank@hbsslaw.com

Don M. Downing
Gretchen Garrison
Thomas Neill
GRAY, RITTER & GRAHAM, P.C.
701 Market Street, Suite 800
St. Louis, MO 63101-1826
Telephone:  (314) 241-5620
Facsimile:  (314) 241-4140

*Counsel for Plaintiffs*

9

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on May 6, 2013, a true and correct copy of the foregoing, together with all exhibits, was filed electronically via CM/ECF, which caused notice to be sent to all counsel of record.

/s/ Daniel J. Kurowski